# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Armando Alonso, Melaquiades Rodriguez, | § | |
| Rogelio Sanchez, Santos Martinez as next | § | |
| Friend of G.M., Hugo Martinez, | § | |
| Jose Aguilon, and Higinio Sanchez-Ramos | § | Civil Action No. B-04-005 |
| | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | |
| | § | |
| Agrigenetics, Inc. d/b/a Mycogen Seeds, | § | Jury Trial Requested |
| Pablo Martinez and Eugene Martell | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT AGRIGENETICS, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND SUPPORTING BRIEF

Agrigenetics, Inc. d/b/a Mycogen Seeds ("Mycogen Seeds"), Defendant, moves the

Court, pursuant to Federal Rule of Civil Procedure 12, to dismiss this action for lack of personal

jurisdiction and/or improper venue or, in the alternative, and in accordance with 28 U.S.C. §

1404(a), to transfer venue of this action to the Rock Island Division of the Central District of

Illinois for the convenience of the parties and witnesses and in the interests of justice.

## I. INTRODUCTION

Plaintiffs, migrant farm workers, assert claims against Mycogen Seeds for breach of

contract and alleged pay, housing, and other statutory violations of the Migrant and Seasonal

Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, et seq.; the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 et seq.; the Illinois Wage Payment and Collection Act ("IWPCA"),

820 ILCS 115/1 et seq.; the Illinois Farm Labor Contractor Certification Act ("IFLCCA"), 225

ILCS 505/1 et seq.; the Illinois Field Sanitation Act ("IFSA"), 210 ILCS 105/1 et seq.; and

common law.  The claims are based on work performed by the Plaintiffs in Henderson and

Mercer Counties, Illinois, which are located in the Rock Island Division of the Central District of Illinois. No discovery has taken place, and no scheduling order has been entered. This Motion incorporates by reference the Affidavit of Allison McDonald, attached as **Exhibit A.**

This case should either be dismissed for lack of personal jurisdiction and/or improper venue or transferred to the Rock Island Division of the Central District of Illinois on *forum non conveniens* grounds. Neither Defendant nor any of Defendant's witnesses nor any material non-party fact witnesses reside in Brownsville, almost none of the alleged wrongs arose there, and none of the relevant business or employment records or physical evidence are located there. Although Plaintiffs may have tactical reasons for filing their action in this division, Brownsville has almost no connection to this case other than the fact that some, but not all, of the Plaintiffs reside in that division. Moreover, because Plaintiffs are migrant workers, their true residency in the division may be for only brief portions of the year. Consequently, this case should either be dismissed or transferred to the division that has the most factual connections to the case and that is most convenient for non-party witnesses: the Rock Island Division of the Central District of Illinois.

## II. FACTS

On January 12, 2004, Plaintiffs brought suit alleging breach of contract and violations of the Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*; the Illinois Farm Labor Contractor Certification Act ("IFLCCA"), 225 ILCS 505/1 *et seq.*; the Illinois Field Sanitation Act ("IFSA"), 210 ILCS 105/1 *et seq.*; and common law. Plaintiffs allege that they were engaged in agricultural employment

with Defendant in Illinois in the summer of 2002.[1]  Plaintiffs' only work for Mycogen Seeds was

in Illinois.[2]  The allegedly sub-standard housing, alleged to be owned by Mycogen Seeds, is

located in Iowa approximately an hour's drive from Rock Island.[3]  Most of the non-party

witnesses in this matter reside and work in or near Illinois.[4]  None of the documentary or

physical evidence is located in Texas, let alone the Brownsville Division.[5]  The majority of the

Plaintiffs' claims are based on violations of Illinois state law.  In addition, the Plaintiffs were

never employed by Mycogen Seeds, but instead worked for an independent contractor of

Mycogen Seeds.  That independent contractor handled all aspects of recruiting the Plaintiffs to

work in Illinois in the summer of 2002 and Mycogen Seeds had no contact of any kind with the

Plaintiffs until they reached the work site in Illinois.  Furthermore, Mycogen Seeds did not enter

into any agreement with the independent contractor regarding how or where the contractor was

to engage in the recruiting.

### III. ARGUMENT AND AUTHORITIES

A.   **The Court Should Dismiss This Action for Lack of Jurisdiction and/or Improper Venue.**

Plaintiffs cannot satisfy their burden of establishing that Defendant Mycogen Seeds has

minimum contacts with Texas sufficient to confer on this Court personal jurisdiction over the

Defendant.[6]  Because the AWPA is silent with regard to personal jurisdiction, this Court may

---

[1] Plaintiffs' Original Complaint, ¶¶ 4.5, 4.12.

[2] Plaintiffs' Original Complaint, ¶¶ 4.7, 4.12.

[3] Plaintiffs' Original Complaint, ¶ 4.12.

[4] McDonald Affidavit, ¶ 8.

[5] McDonald Affidavit, ¶ 9.

[6] *See Bullion v. Gillespie,* 895 F.2d 213, 216-17 (5th Cir. 1990).

exercise personal jurisdiction over only those defendants who are subject to the jurisdiction of Texas courts.[7]  To determine whether a nonresident defendant is subject to jurisdiction, the Court must first determine whether the Texas long-arm statute permits the exercise of jurisdiction over that defendant.[8]  The Court must then determine whether such exercise comports with due process.[9]

Due process requires (1) that the defendant have established "minimum contacts" with the forum state; and (2) that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."[10]  To establish "minimum contacts" with a forum state, a nonresident defendant "must have purposefully availed himself of the benefits and protections of the forum state . . . ."[11]

In order to demonstrate specific jurisdiction, Plaintiffs must show that Defendant has "purposefully directed" its activities at the residents of the forum.[12]  Secondly, Plaintiffs must show that the litigation resulted from the alleged injuries that "arise out of or relate to" a defendant's activities directed at the forum.[13]  Finally, the Court must examine the relationship

---

[7] *Aviles v. Kunkle,* 978 F.2d 201, 203-04 (5th Cir. 1992).

[8] *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir. 1993).

[9] *Id.*

[10] *Ham,* 4 F.3d at 415 (*citing Asahi Metal Indus. v. Superior Court,* 480 U.S. 102 (1987), and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)).

[11] *Marathon Oil Co. v. A.G. Ruhagas,* 182 F.3d 291, 294-95 (5th Cir. 1999) (quoting *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994)).

[12] *Burger King Corp.,* 471 U.S. at 472.

[13] *Id.* (*citing Helicopteros,* 466 U.S. at 414, 104 S. Ct. at 1872).

**DEFENDANT AGRIGENETICS, INC.'S MOTION TO**
**TRANSFER VENUE AND SUPPORTING BRIEF — Page 4**

between the defendants, the forum, and the litigation to determine whether maintaining the suit offends "traditional conceptions of fair play and substantial justice."[14]

It is not the number, but the quality and nature of the non-resident defendant's contacts with the forum that are important.[15]  For example, a defendant should not be subject to the jurisdiction of a foreign court based on "random," "fortuitous," or "attenuated" contacts.[16]  The defendant's activities, whether they consist of direct acts within the forum or conduct outside the forum, should be such that he or she reasonably should anticipate being haled into court there.[17]  The defendant's acts must be substantial enough to give clear notice that he or she would be subject to suit in the forum state.[18]

In this case, Mycogen Seeds did not recruit the Plaintiffs, had no contact with the Plaintiffs prior to their arrival at the Illinois worksite, and did not enter into any agreement with the labor contractor regarding how or where the labor recruiting was to be conducted.  In these circumstances, Mycogen Seeds has not taken any acts that would subject it to suit in Texas. Accordingly, the lawsuit should be dismissed pursuant to Fed. R. Civ. P. 12(b) for lack of personal jurisdiction and/or improper venue.[19]

---

[14] *Id.* at 464, 476-77 (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

[15] *See D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547-48 (5th Cir. 1985) (*quoting Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)).

[16] *Burger King Corp.*, 471 U.S. at 475-76.

[17] *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

[18] *Id.*

[19] *See Flores v. A.C., Inc.*, 2003 U.S. Dist. LEXIS 3693 (W.D. Tex. 2003).

### B.   In Lieu of Dismissal, the Court Should Transfer this Action to Illinois.

In the alternative, the Court should transfer this action to the Rock Island Division of the Central District of Illinois in accordance with 28 U.S.C. § 1404(a) for the convenience of the parties and the witnesses and in the interests of justice.

The federal change of venue statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or *division* where it might have been brought.

28 U.S.C. § 1404(a) (emphasis added). In deciding whether to transfer a lawsuit, courts consider the following factors: (i) the convenience of the parties; (ii) the convenience of material witnesses; (iii) the availability of process to compel the presence of unwilling witnesses; (iv) the cost of obtaining the presence of witnesses; (v) the relative ease of access to sources of proof; (vi) calendar congestion; (vii) where the events in issue took place; and (viii) the interests of justice in general.[20] The relevant factors in this case weigh heavily in favor of transfer to the Rock Island Division of the Central District of Illinois.

### 1.   The convenience of the parties.

Brownsville is especially inconvenient for Defendant. Most of Defendant's witnesses live and/or work in or near Henderson or Mercer Counties, Illinois, a distance of approximately 1,400 miles from Brownsville.[21] Witnesses from those counties would have to fly from Moline, Illinois to Brownsville, more than six hours, with connections in Chicago and Houston. It would

---

[20] *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642, 646 (N.D. Tex. 2001); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994) (both setting out the criteria weighed by a court in deciding a § 1404(a) motion to transfer venue).

[21] McDonald Affidavit, ¶ 8. Defendant asks the Court to take judicial notice that the distance between Keithsburg, Illinois (near the intersection of Mercer and Henderson Counties) and Brownsville is 1,406 miles.

take the Indianapolis witnesses over four hours to fly to Brownsville. Flights from Indianapolis to Moline are shorter, more frequent, and cheaper than flights from Indianapolis to Brownsville.

The plaintiff's choice of forum should be given only "minimal consideration" when the location of the evidence, witnesses, and the alleged wrong all point to a venue other than the one selected.[22] Although the plaintiff's choice of forum is usually entitled to significant weight, it is given considerably less weight in two circumstances: when the forum selected is not the plaintiff's place of residence,[23] and when the operative facts occurred in another jurisdiction.[24]

In this case, some Plaintiffs reside in the Brownsville Division but others do not. Some Plaintiffs reside in Hidalgo County,[25] which is located within the McAllen Division of the

---

[22] See Martinez v. City of Fort Worth, No. 3:02-CV-2286-M, 2003 U.S. Dist. LEXIS 8949, at *5 (N.D. Tex. May 28, 2003); Greiner v. American Motor Sales Corp., 645 F. Supp. 277, 279 (E.D. Tex. 1986) (giving only "minimal consideration" to the plaintiff's choice of forum where "all the witnesses, evidence and locus of operative facts" were situated in a different district); Andrade v. Chojnacki, 934 F. Supp. 817, 832 (S.D. Tex. 1996) (explaining that the plaintiff's choice of forum is not a significant factor where "the action was relatively little relationship to the chosen forum"); Henderson v. AT&T Corp., 918 F. Supp. 1059, 1068 (S.D. Tex. 1996) (holding that the plaintiff's choice of forum was subject to close scrutiny where the case bore little connection to the district); Mortensen v. Maxwell House Coffee Co., 879 F. Supp. 54, 57; (E.D. Tex. 1995) ("[A] plaintiff's choice of forum is afforded less deference when the plaintiff does not reside in the forum chosen or when none of the operative facts occurred within the forum selected by plaintiff.").

[23] See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 266 (1981) (explaining that a plaintiff's choice of forum is not subject to a presumption of convenience when the plaintiff does not file suit within his or her home forum); Henderson v. AT&T Corp., 918 F. Supp. 1059, 1068 (S.D. Tex. 1996) (giving plaintiff's choice of forum "close scrutiny" where the plaintiff did not live within the district and the case bore little connection to the district); Americas Ins. Co. v. Engicon, Inc., 894 F. Supp. 1068, 1075 (S.D. Tex. 1995) (subjecting the plaintiff's choice of forum to "close scrutiny" where the case occurred in a different jurisdiction, plaintiff's choice of forum is "given reduced significance"); Rock Bit Int'l v. Smith Int'l, 957 F. Supp. 843, 844 (E.D. Tex. 1997) ("[T]he usual deference accorded the plaintiff's choice of forum is of minimal value when none of the parties reside in this division of this District."); Martinez, 2003 U.S. Dist. LEXIS 8949, at *5 (transferring venue where neither party resided in the division where suit was filed).

[24] See Fletcher v. Southern Pac. Transp. Co., 648 F. Supp. 1400, 1404 (E.D. Tex. 1986) ("[W]here none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration"); Lindoff v. Schenectady Int'l, 950 F. Supp. 183, 185 (E.D. Tex. 1996) (noting that because almost all the operative facts in the plaintiff's case occurred in a different jurisdiction, plaintiff's choice of forum is "given reduced significance"); Mortensen, 879 F. Supp. at 56 (affording the plaintiffs' choice of forum less deference where the plaintiffs did not reside in the forum and none of the operative facts occurred within the forum); Martinez, 2003 U.S. Dist. LEXIS 8949, at *5 (stating that a plaintiff's original choice of forum is entitled to little weight when the locus of operative facts points to a different venue).

[25] Plaintiffs' Original Complaint, ¶ 3.2.

Southern District.  Thus, some Plaintiffs will reside outside the trial court's venue no matter where the case is tried.  Moreover, the majority of the alleged wrongs occurred in Illinois, not in Brownsville.  These factors weigh heavily in favor of transferring the case.

### 2.    The convenience of material witnesses.

Courts have ranked the convenience of the witnesses as "probably the most important factor in passing on a motion to transfer under 28 U.S.C. § 1404(a)."[26]  In this case, virtually every material non-party witness will be outside the 100-mile subpoena range.  Even if these witnesses were willing to travel to Brownsville to offer testimony without a subpoena, the inconvenience of making witnesses travel to Brownsville weighs in favor of transfer.

Convenience of witnesses is particularly important to Mycogen Seeds because Defendant's potential witnesses include several employees who reside and/or work in or near Illinois.  These employees cannot be expected to travel approximately 1,400 miles to Brownsville in order to attend trial.  These Mycogen employees include:

Jim Sheriff[27]          Mr. Sheriff served as Field Activities Coordinator for the Mt. Pleasant, Iowa Mycogen plant in the summer of 2002 with respect to the fields operated by Defendant in Henderson and Mercer Counties, Illinois.  He has information regarding the independent contractor agreement between Defendant and the individual Defendants and the work performed by Plaintiffs.  During the summer of 2002, Mr. Sheriff worked out of Defendant's Mt. Pleasant, Iowa plant.  Mr. Sheriff now works out of his home near Oquawka, Illinois, but continues to manage fields in the same vicinity as the work performed in the summer of 2002.

---

[26] *Whistler Group v. PNI Corp.,* No. 3:03-CV-1536-G, 2003 U.S. Dist. LEXIS 21968, at *8 (N.D. Tex. Dec. 5, 2003); *Fletcher,* 648 F. Supp. at 1401-02; *Henderson,* 918 F. Supp. at 1066; *Gundle Lining Constr. Corp.,* 844 F. Supp. at 1166 (all stating that the relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion to transfer under § 1404(a)).

[27] McDonald Affidavit, ¶ 8.

Mike Zecher[28]  Mr. Zecher worked as Site Leader for Defendant in the summer of 2002 with respect to the fields operated by Defendant in Henderson and Mercer Counties. He has information regarding the management of the site worked by the Plaintiffs in the summer of 2002. Mr. Zecher now works in Marshalltown, Iowa, but continues to manage fields in the same vicinity as the work performed in the summer of 2002.

Kenny Stevens[29]  Mr. Stevens worked for Defendant in the summer of 2002 with respect to the fields operated by Defendant in Henderson and Mercer Counties, Illinois. He has information regarding the operation of the site worked by the Plaintiffs in the summer of 2002. Mr. Stevens resides in Salem, Iowa, and will be working part-time for Defendant in 2004, at least in part, in the same general vicinity as the work performed in the summer of 2002.

### 3.    The availability of process for unwilling witnesses.

Federal Rule of Civil Procedure 45(b)(2) sets a 100-mile limit on a court's subpoena power over witnesses residing outside the district. Defendant's key witnesses and almost all of the relevant non-party witnesses live outside Texas and outside this Court's 100-mile subpoena range. Because almost none of the relevant witnesses are within the 100-mile subpoena range of this Court, the availability-of-process factor weighs in favor of transfer to the Central District of Illinois, Rock Island Division.

### 4.    The cost of obtaining the attendance of witnesses.

As stated above, almost all of the material nonparty witnesses reside and/or work in or near the Rock Island Division of the Central District of Illinois. Requiring the material witnesses to travel to Brownsville, a distance of approximately 1,400 miles from Henderson and Mercer Counties, would cause both parties to incur significant and otherwise unnecessary travel

---

[28] McDonald Affidavit, ¶ 8.

[29] McDonald Affidavit, ¶ 8.

expenses, thus increasing the cost of obtaining the attendance of those witnesses.[30] The cost of travel for testifying experts would also be less if the case were transferred to Rock Island.

### 5.    The relative ease of access to sources of proof.

Mycogen Seeds does not maintain any store or administrative office within the Brownsville Division. None of the documents relevant to the Plaintiffs' claim are located within the Brownsville Division; the documents are located in the Rock Island Division or in Indianapolis.[31] The housing that Plaintiffs allege is substandard and owned by Mycogen Seeds is in Iowa near Rock Island, not Brownsville. Because the relevant documents are located in the Rock Island Division, because most if not all of the non-party witnesses work and/or reside near that division,[32] and because the housing which is at issue in the lawsuit is located near there, the access-to-proof factor supports transfer to that division.

### 6.    Calendar congestion.

No scheduling order has been entered in this case, and no discovery has been conducted. There is, therefore, no reason to believe that the parties will suffer prejudice or delay from a transfer to a more appropriate forum.[33] The calendar congestion in the Brownsville Division actually prejudices both Plaintiffs and Defendant. According to the Clerk of the Federal District

---

[30] *See Greiner*, 645 F. Supp. at 279 (transferring case after observing that a transfer would decrease "cost and travel expense for witnesses"); *Kettler v. Presstek, Inc.*, No. 3:03-CV-0846-D, 2003 U.S. Dist. LEXIS 13292, at *7-9 (N.D. Tex. July 31, 2003).

[31] McDonald Affidavit, ¶ 9.

[32] McDonald Affidavit, ¶ 8.

[33] *Delce v. AMTRAK*, 180 F.R.D. 316, 321 (E.D. Tex. May 15, 1998) (transferring and severing case would not prejudice the plaintiff where parties had stipulated that discovery in one case was applicable to the other); *Mortensen*, 879 F. Supp. at 56 (transferring the case where the case was "in its early stages, so there is little chance that a transfer of venue would create appreciable delay or prejudice"); *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 126 (S.D. Tex. 1971) (rejecting the plaintiff's argument that the litigation had progressed too far in the forum for the defendant to make a motion to transfer venue where only discovery issues had been litigated and the case was "neither ready for trial nor even a meaningful pretrial").

Court, in the year 2003 alone, 1,070 criminal cases and 237 civil cases were filed in the Brownsville Division. The calendar congestion in Brownsville supports transfer to the Rock Island Division.

### 7.   Where the events in issue took place.

Plaintiffs' claims arise out of both their contractual arrangement with Mycogen Seeds and the working and housing conditions encountered in Illinois and Iowa. The place of the alleged wrong is the location where the Plaintiffs worked when the alleged wrongdoing occurred.[34] The Plaintiffs were engaged to work at Mycogen Seeds locations in Henderson and Mercer Counties, Illinois. There is no claim that they worked for Defendant in the Brownsville Division.[35] Nothing about this action has any connection with the Brownsville Division other than the fact that some of the Plaintiffs may reside there for a part of the year.[36]

The law's preference for venue at the place of the alleged wrong is not a technicality. The citizens of the Brownsville Division who would be summoned to serve as jurors in this action would have no real interest in its resolution.[37] They should not be burdened with service in such a case, especially when the Court's docket is full of other important actions that do affect

---

[34] *See, e.g., Henderson*, 918 F. Supp. at 1067 (noting that, for purposes of an employment discrimination case, the place of the alleged wrong is the location at which the plaintiff worked when the alleged unlawful employment practice occurred).

[35] *See, e.g., Mortensen*, 879 F. Supp. at 56 (transferring the case from the Eastern District to the Southern District where the employee was employed in Houston during his 31-year career and was at no time employed within the Eastern District).

[36] *See In re Ethicon, Inc. and Johnson & Johnson*, No. 95-40546 (5th Cir. July 12, 1995) (granting a writ of mandamus instructing the court to transfer the case (copies of the writ petition [the index materials and signature page are omitted] and the order granting the writ are attached as **Exhibit B**); *In re Cooper Tire and Rubber Co.*, No. 78-2105 (5th Cir. Aug. 31, 1978) (granting a writ of mandamus instructing the district court to grant defendant's motion to transfer where "every person, thing, and event involved" was outside the court's district) (a copy of the order granting the writ is attached as **Exhibit C**).

[37] *See Wise v. CB Richard Ellis, Inc.*, No. 3:03-CV-1597-D, 2003 U.S. Dist. LEXIS 22597, at *18 (N.D. Tex. Dec. 9, 2003); *Mortensen*, 879 F. Supp. at 56-57 (discussing the unfairness of asking residents to serve as jurors on a case that bears no relation to the district).

their interests.  Suits involving persons who, like the Plaintiffs, worked and were allegedly injured in another judicial district, delay resolution of the disputes of resident litigants.[38]

It is appropriate for a court to transfer a case to the venue where the alleged wrong occurred.[39]  In *Balawajder v. Scott*, the magistrate judge transferred the plaintiff's lawsuit from the Eastern District to the Southern District because the plaintiff's claims arose out of events that occurred while he was in a prison located within the Southern District of Texas.[40]  The Fifth Circuit rejected the plaintiff's claim that the court erred in transferring the case, noting that it was not an abuse of discretion for a district court to transfer a case to the venue where the alleged wrong occurred.[41]

### 8.   The interests of justice in general.

Defendant has no facilities in Brownsville.  The alleged wrongs did not occur there.  The majority of the relevant non-party witnesses do not reside there.  The relevant documents are not located there.  This case has little or no factual connection to Brownsville.  Trying this case in Brownsville would create the very problems that § 1404(a) was designed to prevent:  it would waste time, energy, and money and subject the parties, witnesses, and the public to unnecessary inconvenience and expense.[42]  The interests of justice require that this case be transferred to the

---

[38] *Americas Ins. Co.*, 894 F. Supp. at 1075 (granting an intra-district transfer after observing that "the Court's docket is extremely crowded, and suits involving plaintiffs who live and were injured in another judicial district work to delay the trial of the resident plaintiffs").

[39] *See id.* at 1067 (ruling that the district court did not err in transferring a case to a district where the alleged wrong occurred).

[40] 160 F.3d 1066 (5th Cir. 1998).

[41] *See id.*

[42] *Whistler*, 2003 U.S. Dist. LEXIS 21968, at *4; *Gundle*, 844 F. Supp. at 1165 (noting that the purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense").

division that has the most factual connection with the case and that, due to its geographical location, is the most convenient for all parties: Rock Island, Illinois.

In circumstances such as these, the Fifth Circuit has held that a transfer is appropriate. In one case, the Fifth Circuit ordered a transfer from the Eastern District of Texas because the accident that formed the basis of the lawsuit occurred in the Northern District, the hospital where the plaintiff was treated and her treating physicians were located in the Northern District, and the vendors of the allegedly defective product were in the Northern District.[43] To do otherwise, the Fifth Circuit reasoned, "would work a very obvious and unnecessary hardship on the defendant and at least impliedly put a stamp of approval on a rather blatant example of forum shopping."[44] The Fifth Circuit also ordered a transfer from the Brownsville Division to the Northern District where the events the plaintiff complained of all occurred in San Angelo, the plaintiff resided in San Angelo, the bulk of the witnesses and sources of proof were located in San Angelo, and no witness, fact or expert, resided within the Brownsville Division.[45]

Based on the factors discussed above and the Fifth Circuit's decisions in *In re Cooper Tire and Rubber* and *In re Ethicon*, this Court should transfer this case to the Rock Island Division.

## IV. CONCLUSION

For the reasons stated, Mycogen Seeds asks the Court to transfer this case to the Rock Island Division of the United States District Court for the Central District of Illinois.

Dated: __April 9__, 2004.

---

[43] *In re Cooper Tire and Rubber Co.*, No. 78-2105 (5th Cir. Aug. 31, 1978) (attached as **Exhibit C**).

[44] *Id.*

[45] *See In re Ethicon, Inc. and Johnson & Johnson*, No. 95-40546 (5th Cir. July 12, 1995) (attached as **Exhibit B**).

Respectfully submitted,

By: _____
    Frank J. Hill
      State Bar No. 09631500

    Regina C. Williams
      State Bar No. 21606100

THOMPSON & KNIGHT LLP
1900 San Jacinto Center
98 San Jacinto Blvd.
Austin, Texas 78701
(512) 469-6100
FAX (512) 469-6180

ATTORNEYS FOR AGRIGENETICS, INC.
d/b/a MYCOGEN SEEDS

OF COUNSEL:

Kenneth J. Yerkes
Indiana State Bar No. 2084-49
Mark W. Clark
Indiana State Bar No. 18578-02
BARNES & THORNBURG
11 South Meridian Street
Indianapolis, Indiana 46204
(317) 236-1313
FAX (317) 231-7433

## CERTIFICATE OF CONFERENCE

I hereby certify that, as counsel for defendants, I attempted to contact Plaintiffs' counsel of record, Nathaniel Norton, on the _9th_ day of _April_, 2004, with respect to the foregoing motion; but he was not available.

_Regina C. Williams_

Regina C. Williams

## CERTIFICATE OF SERVICE

I hereby certify that on _April 9_, 2004, a true and correct copy of the foregoing document was served on Plaintiffs by first class U.S. mail to their attorneys of record, Nathaniel Norton and Rodolfo D. Sanchez, at Texas Rio Grande Legal Aid, Inc., 300 South Texas, Weslaco, Texas 78596.

_Regina C. Williams_

Regina C. Williams

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Armando Alonso, Melaquiades Rodriguez, Rogelio Sanchez, Santos Martinez as next friend of G.M., Hugo Martinez, Jose Aguilon, and Higinio Sanchez-Ramos | § § § § | |
| | § | Civil Action No. B-04-005 |
| Plaintiffs, | § § | |
| versus | § § | Jury Trial Requested |
| Agrigenetics, Inc. d/b/a Mycogen Seeds, Pablo Martinez and Eugene Martell | § § § | |
| Defendants. | § § | |

## DECLARATION OF ALLISON MCDONALD

I, Allison McDonald, being duly sworn upon my oath, depose and state:

1.      I am the Human Resources Manager for Global Operations for Dow AgroSciences LLC ("DAS") and Agrigenetics, Inc. d/b/a Mycogen Seeds ("Mycogen"), two affiliated companies.

2.      I have been employed by DAS or one of it subsidiaries or affiliates for approximately 15 years.

3.      I currently serve as Human Resources Manager for Global Operations in Indianapolis, Indiana.  I reside in Carmel, Indiana.

4.      I have read Plaintiffs' Complaint.  It is my understanding that the Plaintiffs named in the Complaint worked for an independent contractor of Mycogen in the Summer of 2002 on a field operated by Mycogen in Henderson and Mercer Counties, Illinois (the "Illinois Field").

5.     It is my understanding that the independent contractor handled all aspects of recruiting the Plaintiffs and that Mycogen had no contact of any kind with the Plaintiffs until they reached the work site in Illinois. It is my further understanding that Mycogen did not enter into any agreement with the independent contractor regarding how or where the independent contractor was to conduct the recruiting, except for representations that the contractor would comply with all applicable laws.

6.     The Illinois Field was managed out of a Mycogen office in Mt. Pleasant, Iowa -- roughly seventy miles from the field site. Mycogen corporate records regarding the work performed at the field site that summer are maintained at storage facilities in Oquawka, Illinois -- roughly 25 miles from the work site -- and at offices in Indianapolis, Indiana.

7.     Based on public maps, Mercer County is only approximately 30 miles from the federal court in Rock Island, Illinois. Rock Island is one of the four "Quad Cities" along the northern Illinois/Iowa border.

8.     To the best of my knowledge, most of Defendant's witnesses work and/or reside near the field site in Illinois. These individuals include:

<u>Jim Sheriff</u>

Mr. Sheriff served as Field Activities Coordinator for the Mt. Pleasant, Iowa, Mycogen plant in the Summer of 2002 with respect to the fields operated by Mycogen in Henderson and Mercer Counties, Illinois. He has information regarding the independent contractor agreement between Mycogen and the individual Defendants and the worked performed by the Plaintiffs. During the summer of 2002, Mr. Sheriff worked out of Mycogen's Mt. Pleasant, Iowa plant. Mr. Sheriff now works out of his home near Oquawka, Illinois, but continues to manage fields in the same vicinity as the work performed in the Summer of 2002.

<u>Mike Zecher</u>

Mr. Zecher worked as Site Leader for DAS in the Summer of 2002 with respect to the fields operated by Mycogen in Henderson and Mercer Counties, Illinois. He has information regarding the management of the site worked by the Plaintiffs in the Summer

of 2002. Mr. Zecher now works in Marshalltown, Iowa, but continues to oversee the management of fields in the same vicinity as the work performed in the Summer of 2002.

<u>Kenny Stevens</u>

Mr. Stevens worked for Mycogen in the Summer of 2002 with respect to the fields operated by Mycogen in Henderson and Mercer Counties, Illinois. He has information regarding the operation of the site worked by the Plaintiffs in the Summer of 2002. Mr. Stevens resides in Salem, Iowa, and will be working part-time for Mycogen in 2004, at least in part, in the same general vicinity as the work performed in the Summer of 2002.

9.    None of the documentary or physical evidence of Defendant Mycogen related to claims in this lawsuit is located in Texas. Rather, all such information is contained either in Indianapolis or at storage facilities in Illinois. Similarly, most of Defendant's witnesses are located in Illinois and/or Iowa near the site of the work performed by the Plaintiffs in the Summer of 2002.

10.    Defendant may call other personnel from Mycogen and DAS at their Indianapolis headquarters as witnesses in this action.

11.    DAS and Mycogen personnel frequently drive between Indianapolis and Iowa, Illinois, and the Quad Cities area for business purposes.

I affirm under penalties of perjury that the foregoing representations are true and accurate to the best of my knowledge and belief.

Date: _4/1/04_____          Signed: _____
                                                 Allison McDonald

INDS02 MWC 640072v1

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

U.S. COURT OF APPEALS
**FILED**

JUL 12 1995

No. 95-40546

CHARLES R. FULBRUGE III
CLERK

IN RE:  ETHICON, INC. and
JOHNSON & JOHNSON,

Petitioners.

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas

Before JOLLY, DAVIS and EMILIO M. GARZA, Circuit Judges.

BY THE COURT:

The petition for writ of mandamus seeking an order vacating the district court's June 6, 1995 order declining to transfer this case under 28 U.S.C. § 1404(a) is GRANTED.

A writ of mandamus will issue directing the district court to transfer the case under 28 U.S.C. § 1404(a) to the Northern District of Texas, San Angelo Division.

EXHIBIT B

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. _____

*U.S. COURT OF APPEALS RECEIVED JUL 0 7 1995 NEW ORLEANS, LA.*

IN RE ETHICON, INC. AND JOHNSON & JOHNSON,

Petitioners.

PETITION FOR WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

Stephen F. Fink, Attorney
  State Bar No. 07013500
Marc H. Klein, Attorney
  State Bar No. 11563012

THOMPSON & KNIGHT, P.C.
1700 Pacific Avenue
Suite 3300
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

U.S. COURT OF APPEALS

FILED

JUL 7 1995

CHARLES R. FULBRUGE III
CLERK

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. _____

---

IN RE ETHICON, INC. AND JOHNSON & JOHNSON,

Petitioners.

---

PETITION FOR WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

---

Stephen F. Fink, Attorney
   State Bar No. 07013500
Marc H. Klein, Attorney
   State Bar No. 11563012

THOMPSON & KNIGHT, P.C.
1700 Pacific Avenue
Suite 3300
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

## CERTIFICATE OF INTERESTED PERSONS

The undersigned, counsel of record for petitioners Ethicon, Inc. and Johnson & Johnson certifies that the following persons have an interest in the outcome of the case:

1. Ethicon, Inc. and Johnson & Johnson, petitioners.

2. Thompson & Knight, P.C., attorneys for Ethicon, Inc. and Johnson & Johnson.

3. The Honorable Filemon B. Vela, District Judge, United States District Court for the Southern District of Texas, Brownsville Division, respondent.

4. Joe Michael Luther, real party in interest.

5. Adams & Graham, L.L.P., attorneys for Joe Michael Luther.

_____
Stephen F. Fink

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . .   i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . .   ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . .   iii

I.   STATEMENT OF JURISDICTION . . . . . . . . . . . . . . .   1

II.  STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . .   1

III. RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . .   1

IV.  STATEMENT OF THE CASE  . . . . . . . . . . . . . . . .   1

     A.   Course of Proceedings and Disposition in Court
          Below . . . . . . . . . . . . . . . . . . . . . .   1
     B.   Statement of Facts  . . . . . . . . . . . . . . .   3

V.   SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . .   4

VI.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .   4

     A.   Availability and Convenience of Witnesses and
          Parties . . . . . . . . . . . . . . . . . . . . .   9
     B.   Possibility of Delay or Prejudice . . . . . . . .  10
     C.   Plaintiff's Choice of Forum . . . . . . . . . . .  11
     D.   Failure to Consider Other Factors . . . . . . . .  13

VII. CONCLUSION  . . . . . . . . . . . . . . . . . . . . .  14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . .  15

## TABLE OF AUTHORITIES

**CASES**                                                                     Page

Akers v. Norfolk & W. Ry., 378 F.2d 78 (4th Cir. 1967)   . .   5

Anchor Sav. Bank v. Transamerica Ins. Co., 634 F. Supp.
        398 (S.D.N.Y. 1986) . . . . . . . . . . . . .   12

Bell v. K Mart Corp., 848 F. Supp. 996 (N.D. Ga. 1994)  . . .  12

Burbank Int'l, Ltd. v. Gulf Consol. Int'l Inc.,
        441 F. Supp. 819 (N.D. Tex. 1977) . . . . . . . . . .  11

Chicago, R.I. & P.R.R. v. Igoe, 220 F.2d 299
        (7th Cir.), cert. denied, 350 U.S. 822 (1955) . . . .  6-8

Continental Grain Co. v. Barge F.B.L.-585,
        364 U.S. 19 (1960) . . . . . . . . . . . . . . .   9

Cook v. Atchison, T. & S.F. Ry., 816 F. Supp. 667
        (D. Kan. 1993)   . . . . . . . . . . . . . . . .  12

Garner v. Wolfinbarger, 433 F.2d 117 (5th Cir. 1970)  . .  1, 14

General Instrument Corp. v. Mostek Corp.,
        417 F. Supp. 821 (D. Del. 1976) . . . . . . . . . .  12

General Tire & Rubber Co. v. Watkins, 373 F.2d 361
        (4th Cir.), cert. denied, 286 U.S. 960 (1967) . . . . .  5

Gulfstream Aerospace Corp. v. Mayacamas Corp.,
        485 U.S. 271 (1988) . . . . . . . . . . . . . . .   5

Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,
        725 F. Supp. 317 (S.D. Miss. 1989)  . . . . . . . . .  12

In re Cooper Tire & Rubber Co., No. 78-2105
        (5th Cir. 1978), cert. denied,
        440 U.S. 950 (1979) . . . . . . . . . . . . .  6-7, 11

In re First S. Sav. Ass'n, 820 F.2d 700 (5th Cir. 1987) . . .  5

In re McDonnell-Douglas Corp., 647 F.2d 515
        (5th Cir. 1981) . . . . . . . . . . . . . . . .   5

In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293
        (7th Cir. 1995) . . . . . . . . . . . . . . . .   5

Krupp Int'l, Inc. v. Yarn Indus., Inc.,
        615 F. Supp 1103 (D. Del. 1985) . . . . . . . . . .  12

Levitt v. Maryland Deposit Ins. Fund Corp.,
        643 F. Supp. 1485 (E.D.N.Y. 1986) . . . . . . . . .  12

<u>Morgan v. Illinois Cent. R.R.</u>, 161 F. Supp. 119
    (S.D. Tex. 1958) . . . . . . . . . . . . . . . 11

<u>Mortensen v. Maxwell House Coffee Co.</u>, 879 F. Supp. 54
    (E.D. Tex. 1995) . . . . . . . . . . . . . . 11

<u>New Image, Inc. v. Travelers Indem. Co.</u>,
    536 F. Supp. 58 (E.D. Pa. 1981) . . . . . . . . 12

<u>Paul v. International Precious Metals Corp.</u>,
    613 F. Supp. 174 (S.D. Miss. 1985) . . . . . . . 12

<u>Roche v. Evaporated Milk Ass'n</u>, 319 U.S. 21 (1943) . . . . . 4

<u>Turner & Newall, PLC v. Canadian Universal Ins. Co.</u>,
    652 F. Supp. 1308 (D.D.C. 1987) . . . . . . . . 12

<u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964) . . . . . . . . 1, 9

<u>Vivadent (USA), Inc. v. Darby Dental Supply  Co.</u>,
    655 F. Supp. 1359 (D.N.J. 1987) . . . . . . . . 12

<u>Waller v. Burlington N.R.R.</u>, 650 F. Supp. 988
    (N.D. Ill. 1987) . . . . . . . . . . . . . . 12

<u>Williams v. Cigna Fin. Advisors, Inc.</u>, 1995 WL 366226
    (5th Cir. June 19, 1995) . . . . . . . . . . . 11

<u>Windmere Corp. v. Remington Prods., Inc.</u>,
    617 F. Supp. 8 (S.D. Fla. 1985) . . . . . . . . 12


**STATUTES AND RULES**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . 5, 10

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . 1

FED. R. CIV. P. 26(d) . . . . . . . . . . . . . . . 2

Local Rule 47.5.3 . . . . . . . . . . . . . . . . . 6


**MISCELLANEOUS**

15 C. Wright, A. Miller & E. Cooper,
    <u>Federal Practice and Procedure</u> (2d ed. 1986) . . . . . . 6

—

## I.   STATEMENT OF JURISDICTION

The Court has jurisdiction of this petition because orders from a district court under the change of venue statute, 28 U.S.C. § 1404(a), are reviewable and correctable by mandamus.  <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 n.3 (1964); <u>Garner v. Wolfinbarger</u>, 433 F.2d 117, 120 (5th Cir. 1970); <u>see</u> 28 U.S.C. § 1651.

## II.   STATEMENT OF THE ISSUE

The district court found that the Magistrate Judge's decision to deny petitioners' motion to transfer venue to the San Angelo Division of the Northern District of Texas was neither clearly erroneous nor contrary to law.  Was this ruling an abuse of discretion?

## III.  RELIEF SOUGHT

Petitioners seek a writ of mandamus directing the district court to set aside its order overruling the objection to the Magistrate Judge's order denying the motion to transfer venue and to transfer this action to the San Angelo Division of the Northern District of Texas.

## IV.  STATEMENT OF THE CASE

**A.   Course of Proceedings and Disposition in Court Below.**

Joe Michael Luther ("Luther") sued petitioners Ethicon, Inc. ("Ethicon") and Johnson & Johnson ("J&J") in the Brownsville Division of the Southern District of Texas.  Luther bases his claims on petitioners' alleged misappropriation of a machine Luther purportedly invented as an Ethicon employee in its San Angelo facility.

On May 10, 1995, petitioners moved to transfer venue under 28 U.S.C. § 1404(a) to the San Angelo Division of the Northern

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 1

District of Texas because the action has no relationship with the Brownsville Division.  Appendix ex. B.[1]  Luther filed a response on May 16, 1995, to which defendants replied on May 22, 1995.  Id. exs. D, F.  Luther filed a supplemental response on May 31, 1995. Id. ex. G.

The Magistrate Judge conducted an initial pretrial conference on June 1, 1995.  At that time, he set a pretrial schedule and entertained the parties' pending motions.[2]  On June 6, 1995, the Magistrate Judge denied the motion to transfer venue because "[t]he Defendants have not shown the Court, with any specificity, that the Brownsville Division is so inconvenient as to militate in favor of a transfer to San Angelo."  Id. ex. I, at 4.

---

[1]    For the Court's information and in accordance with Rule 21(a) of the Federal Rules of Appellate Procedure, petitioners have separately filed with the Clerk a document entitled, Appendix to Petition for Writ of Mandamus ("Appendix").  The Appendix contains orders, pleadings, motions, and other relevant documents. Each document has been assigned a letter and tabbed accordingly.

[2]    In addition to the motion to transfer venue, the Magistrate Judge heard argument on defendants' motion for extension of time to respond and object to plaintiff's discovery requests.  See Appendix ex. C. In addition to the pending motion to transfer venue, Ethicon and J&J requested an extension in part because Luther served seven separate discovery requests on them in apparent violation of Rule 26(d) of the Federal Rules of Civil Procedure, which states:

> Except when authorized under these rules or by local
> rule, order, or agreement of the parties, a party may not
> seek discovery from any source before the parties have
> met and conferred as required by subdivision (f).

FED. R. CIV. P. 26(d).  Petitioners noted that the San Angelo Division of the Northern District of Texas, the venue to which Ethicon and J&J sought transfer, follows Rule 26.  Although the Southern District of Texas has no local rule overriding Rule 26(d) and there was no court order or agreement to that effect, the Magistrate Judge, on June 1, 1995, denied the motion and required Ethicon and J&J to deliver their objections by June 8, 1995, and their responses by June 16, 1995.  Appendix ex. H.  Ethicon and J&J have complied with that order.

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 2

On June 13, 1995, in accordance with Rule 72(a) of the Federal Rules of Civil Procedure, petitioners objected to the Magistrate Judge's decision.  Id. ex. J.  By order dated June 27, 1995, the district court overruled petitioners' objections.  Id. ex. M.

**B.    Statement of Facts.**

Luther, a current employee of Ethicon, alleges that he invented a "unique machine ('the Luther machine')," which drastically improved petitioners' production of drilled-hole needles.  Appendix ex. A, ¶ IV(A).  He claims that he allowed petitioners to use the "Luther machine" based on their promise to pay for the invention.  Id.  Because petitioners allegedly failed to pay Luther an acceptable amount for the use of his invention, Luther sued for (i) breach of contract, (ii) wrongful conversion of property rights, (iii) fraud, and (iv) intentional infliction of emotional distress.  Id. ¶ V.

Luther resides in Tom Green County, which is part of the San Angelo Division of the Northern District of Texas.  See Declaration of Ted Steans ¶ 5 ("Steans Decl.").[3]  Throughout his employment with Ethicon, Luther has worked only at Ethicon's San Angelo facility, which is located at 3348 Pulliam, San Angelo, Texas 76902.  Id. ¶ 4.  Most of the sources of proof, including the "Luther machines" and the majority of documents likely to bear any relevance to the action are located at Ethicon's San Angelo plant.  Id. ¶ 7; see Appendix ex. A, ¶ IV(B).  In addition, most of the primary witnesses in this matter -- Luther and his former

---

[3]    The declaration of Ted Steans was filed as Exhibit A to Defendants' Motion to Transfer Venue and Supporting Brief, which is included in the Appendix as exhibit B.

supervisors and co-employees -- reside and work in a county within the San Angelo Division.  See Steans Decl. ¶ 6.

Neither Ethicon nor Johnson & Johnson has an office in any of the counties in the Brownsville Division.  Id.  Ethicon's headquarters and principal place of business is in Somerville, New Jersey.  Id. ¶ 3.  J&J's headquarters and principal place of business is in New Brunswick, New Jersey.  Id.

## V.  SUMMARY OF THE ARGUMENT

This action has no relationship whatsoever with any county in the Brownsville Division of the Southern District of Texas.  The alleged events of which Luther complains all occurred in San Angelo, Luther resides in San Angelo, and the bulk of the witnesses and sources of proof, including the "Luther machines," are located in San Angelo, which is nearly 500 miles away from Brownsville.  No witness, fact or expert, resides in the Brownsville Division. Because the district court misconstrued and misapplied the change-of-venue statute, and failed to consider all of the relevant factors, it legally abused its discretion by refusing to set aside the Magistrate Judge's decision and transfer the case to the San Angelo Division of the Northern District of Texas.

## VI.  ARGUMENT

The purpose of a writ of mandamus is "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943).  Where the challenged ruling, as here, is one subject to the discretion of the district court, mandamus requires a showing of "a clear and undisputable abuse of discretion amounting to a judicial usurpation

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 4

of power." In re First S. Sav. Ass'n, 820 F.2d 700, 707 (5th Cir.
1987); see In re McDonnell-Douglas Corp., 647 F.2d 515, 517
(5th Cir. 1981). To meet this legal "abuse of discretion"
standard, a petitioner must show that the district court's order
"far exceeds the proper bounds of judicial discretion as to be
legitimately considered usurpative in character, or in violation of
a clear and indisputable legal right, or, at the very least,
patently erroneous." In re Rhone-Poulenc Rorer, Inc., 51 F.3d
1293, 1295 (7th Cir. 1995); see Gulfstream Aerospace Corp. v.
Mayacamas Corp., 485 U.S. 271, 289 (1988). In other words, the
test is simply whether the district court got it seriously wrong.

The factors considered by the Fifth Circuit to determine
whether to mandate a venue transfer include whether the district
court failed to construe and apply the statute correctly and
whether the relevant factors incident to a motion of transfer were
considered. In re McDonnell-Douglas Corp., 647 F.2d at 517
(5th Cir. 1981). Here, the district court not only misapplied the
three factors it addressed, but also overlooked many other venue-
related facts, all of which confirm that San Angelo is the correct
forum. Mandamus thus is appropriate because the district court
overstepped the bounds of its discretion and patently erred by
declining to transfer the case to San Angelo.

Appellate courts have granted writs of mandamus holding that
a district court had abused its discretion in refusing to transfer
an action to another venue "[f]or the convenience of parties and
witnesses, in the interest of justice." 28 U.S.C. § 1404(a); E.g.,
Akers v. Norfolk & W. Ry., 378 F.2d 78, 80 (4th Cir. 1967) (per
curiam); General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 369-70

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 5

(4th Cir.) (en banc), <u>cert. denied</u>, 386 U.S. 960 (1967); <u>Chicago,</u>

<u>R.I. & P.R.R. v. Igoe</u>, 220 F.2d 299, 302-05 (7th Cir.) (en banc),

<u>cert. denied</u>, 350 U.S. 822 (1955). Although the Fifth Circuit has

never published a decision ordering a district court to set aside

an order denying a transfer under 28 U.S.C. § 1404(a), it has done

so in an unpublished opinion on at least one occasion.[4]  <u>See</u> <u>In re</u>

<u>Cooper Tire & Rubber Co.</u>, No. 78-2105 (5th Cir. 1978) (per curiam),

<u>cert. denied</u>, 440 U.S. 950 (1979).[5]  There, the court first

described the venue-related facts:

> The accident which is the basis of this law suit occurred
> in the Northern District of Texas.  The plaintiff lived
> in the Northern District of Texas.  The hospital where
> plaintiff was treated and all attending physicians were
> in the Northern District of Texas.  The vendors of the
> allegedly defective tire were in the Northern District of
> Texas.  <u>Every person, thing, and event involved in the</u>
> <u>accident and injury of plaintiff was in the Northern</u>
> <u>District of Texas.</u>

<u>Id.</u> slip op. at 2 (emphasis added).  It then dismissed the

plaintiff's choice of forum and the location of the plaintiff's

expert witnesses as meaning "very little in the context of this

total situation." <u>Id.</u> Because the interests of justice compelled

a transfer, the Fifth Circuit instructed the district court to

grant the defendant's motion. <u>Id.</u> Otherwise, it proclaimed, "we

. . . work a very obvious and unnecessary hardship on defendant and

---

[4]  "Whether there are other cases in which the Fifth Circuit has granted mandamus behind a veil of secrecy is not known."  15 C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> § 3855, at 489 n.63 (2d ed. 1986).

[5]  A copy of the order granting the writ of mandamus in <u>In re Cooper Tire & Rubber Co.</u> is included in the Appendix as Exhibit N. Rule 47.5.3 of the Local Rules of the Fifth Circuit states that "[u]npublished opinions are precedent."

at least impliedly put a stamp of approval on a rather blatant example of forum shopping." Id.

In a published decision, the Seventh Circuit in Igoe addressed venue-related facts strikingly similar to those here and in Cooper, and reached the same conclusion as the Cooper court. There, a train struck the automobile driven by the plaintiff's husband, instantly killing him, in Avoca, Iowa, which is located in the Southern District of Iowa. 220 F.2d at 301. In her capacity as administratrix, the plaintiff filed a wrongful death action against the railroad in state court in Chicago, Illinois. Id. The railroad removed the action to the Northern District of Illinois, and moved to transfer the case to the Southern District of Iowa in either its Central Division at Des Moines or its Western Division at Council Bluffs. Id. After the district court denied the motion, the railroad petitioned for a writ of mandamus. Id.

In its review of the petition, the Seventh Circuit listed several undisputed facts:

- The plaintiff and her husband resided in Des Moines at the time of the fatal accident. Id.

- The district court of Polk County, Iowa, where Des Moines is located, issued the letters of administration to the plaintiff. Id.

- The plaintiff resided in Des Moines when she filed suit. Id.

- All of the witnesses reside in either Avoca or Des Moines. Id. at 303.

- Avoca is 459 miles from Chicago, but only 33 miles from Council Bluffs and 104 miles from Des Moines. Id. at 301.

In opposition of transfer, the plaintiff asserted that she had since moved to Illinois, the railroad's main offices are located in

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 7

Chicago, and her attorney resides in Chicago. Id. at 302. The court gave little weight to those contentions, and specifically found immaterial the plaintiff's claim that she would be "required to hire an Iowa attorney if the transfer is ordered." Id. at 304. It also announced that the plaintiff's choice of forum has minimal value because none of the operative events occurred in the Northern District of Illinois and "[b]oth parties must rely upon evidence entirely removed from that District." Id. The court further stressed that "the burden of a jury trial should not be imposed upon the Northern District of Illinois, an area which has no relation to the litigation." Id. The court concluded:

> The balance of convenience of the parties is so overwhelmingly in favor of the defendant that we hold the denial by respondent of the motion to transfer this case to the Southern District of Iowa was so clearly erroneous that it amounted to an abuse of discretion.

Id. at 305. Accordingly, it issued a writ of mandamus directing the district court to enter an order transferring the case to the Southern District of Iowa. Id.

In overruling petitioners' objections to the Magistrate Judge's order, the district court discussed only three factors: (1) availability and convenience of witnesses and parties; (2) possibility of delay or prejudice; and (3) plaintiff's choice of forum. Petitioners submit that Judge Vela misapplied each factor he discussed, but also failed to consider many relevant venue-related facts. And as in Cooper and Igoe, the undisputed facts here establish that the district court's refusal to transfer the case to San Angelo was sufficiently wrong to demand correction by this Court.

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 8

A.    Availability and Convenience of Witnesses and Parties.

The district court acknowledged that "nearly all witnesses and parties will be employees of the Defendants." Appendix ex. M, at 2. But it found that factor actually "weighs heavily against transferring venue because the Movants can compel those witnesses and parties to attend trial." Id. The court's observation reflects a far too narrow view of the statute's purpose. Although most witnesses being Ethicon employees may reduce the problem of obtaining compulsory process for witnesses -- one material consideration -- it creates a far more significant, and relevant, problem:  The inconvenience and expense to Ethicon of having many of its employees leave their jobs in San Angelo and travel almost 500 miles[6] to attend trial in Brownsville.

Moreover, by refusing to transfer the case to San Angelo, the district court has also increased the litigation expenses of Luther, a San Angelo resident.  Luther's admission that "he is willing to make the trip to Brownsville for hearings, depositions, or other matters," Appendix ex. D, at 4, establishes that San Angelo is objectively more convenient for him as well.

Transfers under section 1404(a) are made "to prevent the waste 'of time, energy and money,' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen, 376 U.S. at 616 (quoting Continental Grain Co. v. Barge F.B.L.-585, 364 U.S. 19, 26,27 (1960)).  Despite recognizing that most persons likely to be witnesses work and reside in and around

---

        [6]    See Appendix ex. P (map of federal district court jurisdictions and mileage chart listing distance from San Angelo to Brownsville).

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 9

San Angelo, the district court declined to transfer the case. From all that appears in its order, the district court simply gave no weight to the cost and inconvenience both to Ethicon and to most witnesses of allowing the case to be heard in Brownsville. The court therefore failed to construe and apply the statute correctly. See 28 U.S.C. § 1404 ("For the convenience of parties and witnesses . . . .") (emphasis added).

B.    **Possibility of Delay or Prejudice.**

The district court also held that "because Plaintiffs already have made significant discovery efforts . . . a transfer of venue at this juncture will unduly delay and prejudice the parties' interest in a speedy trial." Appendix ex. M, at 3. Petitioners find this reason for denying a change of venue easily the most difficult to understand or accept. Together, the Magistrate Judge and the district court denied one motion for extension of time to respond and object to plaintiff's discovery requests, one motion to postpone initial pretrial conference, and a motion to stay discovery by petitioners. See id. exs. C, E, H, K, L. In all of those motions, petitioners requested a delay in the proceedings because of the unresolved venue issue. The district court now suggests that because it denied all of petitioners' motions, a transfer would "unwind[] the progression" and prejudice the plaintiff. Id. ex. M, at 3.

Petitioners moved promptly for a transfer of venue and responded to Luther's discovery requests only when the district court ordered them to do so. See id. ex. H. Because of the pending motion to transfer venue, they did not serve any discovery on plaintiff. Petitioners did everything in their power to avoid

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 10

substantially invoking the judicial process, precisely so as not to prejudice their attempts to transfer venue to San Angelo.  Cf. Williams v. Cigna Fin. Advisors, Inc., 1995 WL 366226, at 4-5 (5th Cir. June 19, 1995) (right to seek arbitration not waived where district court denied defendant's motion to stay discovery).[7] If petitioners' efforts were not enough, any motion to transfer could be defeated unless the moving party were prepared to risk sanctions or even contempt by declining outright to participate in the normal preliminary proceedings after an action commences.

In any event, it does not follow that a transfer would delay the proceedings simply because some discovery already has occurred. Discovery can and will continue with the case transferred to the San Angelo Division of the Northern District, and nothing in or outside the record would support the conclusion that justice is swifter in Brownsville than in San Angelo.  In fact, the further a federal court in Texas sits from the border, with its well-known legal problems, the less congested and back-logged the court docket tends to be.

C.   Plaintiff's Choice of Forum.

The district court also erred by incorrectly attaching "great weight" to plaintiff's choice of forum.  See Appendix ex. M, at 3. "Where . . . none of the operative facts occur within the forum of original selection, the plaintiff's choice is entitled to only minimal consideration."  Morgan v. Illinois Cent. R.R., 161 F. Supp. 119, 120 (S.D. Tex. 1958); accord Mortensen v. Maxwell House Coffee Co., 879 F. Supp. 54, 57 (E.D. Tex. 1995); Burbank

---

[7]  A copy of Williams v. Cigna Fin. Advisors, Inc. is included in the Appendix as Exhibit O.

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 11

<u>Int'l, Ltd. v. Gulf Consol. Int'l Inc.</u>, 441 F. Supp. 819, 823 (N.D. Tex. 1977).[8] Moreover, "where the plaintiff has not brought suit on its 'home turf,' the convenience to plaintiff in litigating in its choice of forum is not as great as it would be were it litigating at or near its principal place of business or the site of the activities at issue in the lawsuit." <u>General Instrument Corp. v. Mostek Corp.</u>, 417 F. Supp. 821, 822-23 (D. Del. 1976).

Like the circumstances in <u>Cooper</u>, Luther's choice of forum means "very little in the context of this total situation." <u>Cooper</u>, slip op. at 2. It is undisputed that Luther himself resides in San Angelo and that none of the incidents of which Luther complains occurred in the Brownsville Division. <u>See Steans Decl.</u> ¶ 5. Throughout his employment with Ethicon, Luther has worked only in San Angelo. <u>Id.</u> ¶ 4. The "Luther machines" were invented and allegedly misappropriated by petitioners in San Angelo. <u>Id.</u> ¶ 7. Moreover, neither Ethicon nor J&J operate plants or other facilities in the Brownsville Division. <u>Id.</u> ¶ 4.

_____

[8] Courts universally agree that the plaintiff's choice of forum is entitled to considerably less deference where the plaintiff is not a resident of the forum district or the operative facts did not occur there. <u>E.g.</u>, <u>Bell v. K Mart Corp.</u>, 848 F. Supp. 996, 1000 (N.D. Ga. 1994); <u>Cook v. Atchison, T. & S.F. Ry.</u>, 816 F. Supp. 667, 669 (D. Kan. 1993); <u>Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.</u>, 725 F. Supp. 317, 321-22 (S.D. Miss. 1989); <u>Vivadent (USA), Inc. v. Darby Dental Supply Co.</u>, 655 F. Supp. 1359, 1360 (D.N.J. 1987); <u>Turner & Newall, PLC v. Canadian Universal Ins. Co.</u>, 652 F. Supp. 1308, 1310 (D.D.C. 1987); <u>Waller v. Burlington N.R.R.</u>, 650 F. Supp. 988, 990 (N.D. Ill. 1987); <u>Levitt v. Maryland Deposit Ins. Fund Corp.</u>, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986); <u>Anchor Sav. Bank v. Transamerica Ins. Co.</u>, 634 F. Supp. 398, 399 (S.D.N.Y. 1986); <u>Krupp Int'l, Inc. v. Yarn Indus., Inc.</u>, 615 F. Supp 1103, 1106 (D. Del. 1985); <u>Paul v. International Precious Metals Corp.</u>, 613 F. Supp. 174, 179 (S.D. Miss. 1985); <u>Windmere Corp. v. Remington Prods., Inc.</u>, 617 F. Supp. 8, 10 (S.D. Fla. 1985); <u>New Image, Inc. v. Travelers Indem. Co.</u>, 536 F. Supp. 58, 59 (E.D. Pa. 1981).

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 12

Although the court found no "nefarious motive in Plaintiff's forum choice," Appendix ex. M, at 3, the absence of such a motive does not change the fact that this case bears no legally significant connection to the Brownsville Division.

**D.    Failure to Consider Other Factors.**

Judge Vela concluded that "the Magistrate Judge properly considered the relevant factors in his decision to retain venue in the Brownsville Division." Appendix ex. M, at 3. But the Magistrate Judge's opinion, id. ex. I, does not mention, much less consider, most of the relevant factors; without exception, those factors favor transferring the case to San Angelo:

- Luther himself resides in San Angelo. Steans Decl. ¶ 5.

- Throughout his employment with Ethicon, Luther has worked only in Ethicon's San Angelo plant. Id. ¶ 4.

- The incidents of which Luther complains all allegedly occurred at Ethicon's San Angelo plant. Id. ¶ 7.

- The "Luther machines" are located at Ethicon's San Angelo plant. Id.

- Luther formally requested under Rule 34 of the Federal Rules of Civil Procedure to inspect and videotape Ethicon's San Angelo plant. See Request for Entry upon Land for Inspection and Videotaping.[9]

- Neither Ethicon nor J&J has an office or a plant in the Brownsville Division. Steans Decl. ¶ 4.

- This action, involving San Angelo Division parties, is uniquely a matter of interest to San Angelo Division citizens. Conversely, the citizens of the

---

[9]    A copy of Plaintiff's Request for Entry upon Land for Inspection and Videotaping was filed as Exhibit B to Defendants' Motion to Transfer Venue and Supporting Brief, which is included in the Appendix as Exhibit B.

> Brownsville have no concrete interest in the resolution of this action.

The record is plain, therefore, that neither the district court nor the Magistrate Judge gave weight to all of the undisputed relevant factors. It is equally plain that all of those factors point to San Angelo as the proper forum. The district court's refusal to transfer the case to San Angelo consequently satisfies the definition of a legal "abuse of discretion."

## VII.   CONCLUSION

Unlike <u>Garner v. Wolfinbarger</u>, 433 F.2d 117, 121 (5th Cir. 1970), this is not a case where petitioners urge simply that "on balance the Northern District of [Texas] is a more convenient forum than the Southern District." Here, the Brownsville side of the scale is empty; the San Angelo side of the scale is full. If section 1404(a) means anything, it must mean that it is wrong to allow a plaintiff deliberately to choose, then keep, an inconvenient and expensive forum completely lacking in any connection with or interest in the outcome of the controversy. The Court should issue a writ of mandamus and order the district court to transfer this case to the San Angelo Division of the Northern District of Texas.

Dated:  July 6, 1995.

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 14

Respectfully submitted,

THOMPSON & KNIGHT
A Professional Corporation

By: _____
    Stephen F. Fink, Attorney
        State Bar No. 07013500
    Marc H. Klein, Attorney
        State Bar No. 11563012

1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201
(214) 969-1120
FAX (214) 969-1751

ATTORNEYS FOR PETITIONERS ETHICON,
INC. and JOHNSON & JOHNSON

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 1995, true and correct copies of the foregoing Petition for Writ of Mandamus to the United States District Court for the Southern District of Texas was served on the plaintiff by U.S. mail, postage prepaid, to his attorney of record, Tom Lockhart, Esq., Adams & Graham, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas 78551-1429, and to the Honorable Filemon B. Vela, United States District Court, Southern District of Texas, Brownsville Division, 500 East 10th Street, Room 206, Brownsville, Texas 78520.

_____
Stephen F. Fink

40752 09841 LERA 37230

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -- Page 15



H-1

In The
UNITED STATES COURT OF APPEALS
for the Fifth Circuit

NO. 78-2105

In Re:

COOPER TIRE AND RUBBER CO.

Petitioner.

Petition for Writ of Mandamus
to the United States District Court
for the Eastern District of Texas

Before BROWN, Chief Judge, COLEMAN and VANCE,
Circuit Judges.

Per Curiam:

On prior consideration of this petition for mandamus we disagreed with the district court's denial of petitioner's motion to transfer but such action did not appear to be such an abuse of discretion as would justify mandamus.

On consideration of the petition for rehearing, however, we conclude that we cannot allow the order of the district court to stand. The accident which is the basis of this law suit occurred in the Northern District of Texas. The plaintiff lived in the Northern District of Texas. The hospital where plaintiff was treated and all attending physicians were in the Northern District of Texas. The vendors of the allegedly defective tire were in the Northern

EXHIBIT C



H-1

In The
UNITED STATES COURT OF APPEALS
for the Fifth Circuit

NO. 78-2105

In Re:

COOPER TIRE AND RUBBER CO.

Petitioner.

Petition for Writ of Mandamus
to the United States District Court
for the Eastern District of Texas

Before BROWN, Chief Judge, COLEMAN and VANCE,
Circuit Judges.

Per Curiam:

On prior consideration of this petition for mandamus
we disagreed with the district court's denial of petitioner's
motion to transfer but such action did not appear to be
such an abuse of discretion as would justify mandamus.

On consideration of the petition for rehearing, how-
ever, we conclude that we cannot allow the order of the
district court to stand. The accident which is the basis
of this law suit occurred in the Northern District of Texas.
The plaintiff lived in the Northern District of Texas. The
hospital where plaintiff was treated and all attending
physicians were in the Northern District of Texas. The
vendors of the allegedly defective tire were in the Northern

EXHIBIT C

H-2

District of Texas. Every person, thing and event involved in the accident and injury of plaintiff was in the Northern District of Texas.

It is true that defendant is subject to suit in the Eastern District of Texas, that plaintiff's choice of forum is entitled to great weight and that some of the experts engaged by plaintiff's counsel since suit was filed are in the Eastern District of Texas. Having said that, however, we have said very little in the context of this total situation.

Our reconsideration of the issue brings us to the conclusion that the interests of justice compel a transfer in this case. We otherwise work a very obvious and unnecessary hardship on defendant and at least impliedly put a stamp of approval on a rather blatant example of forum shopping. This is precisely the type of situation Congress sought to avoid by adoption of 28 U.S.C. §1404 (a). Accordingly, we instruct the district court to grant defendant's motion for transfer.

WRIT GRANTED.





H-3

NO. 78-2105

In Re:

COOPER TIRE AND RUBBER COMPANY

COLEMAN, Circuit Judge, dissenting

I respectfully dissent.

I think that Cooper Tire is the forum shopper in this case. It is a Delaware Corporation. Admittedly, it is subject to suit in the Eastern District of Texas. The allegedly defective tire was not made in Texas. The first and second sellers of the tire live in Texas but they are not parties to the suit. They did not manufacture the tire. The doctors, under the rule of privilege, cannot be expected to appear as witnesses for Cooper. It is not shown that a jury inspection of the scene of the accident would have any relevancy.

In Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L.Ed. 1051 (1947), a *forums non conveniens* case, the Supreme Court pointed out that "unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum shall rarely be disturbed".

28 U.S.C., §1404 is written in purely discretionary terms. The statute says that "a district court *may* transfer" (emphasis added). As all the cases recognize, a failure to transfer may be overturned only for an abuse of judicial discretion.

We are not told how many witnesses Cooper has in the

H-4

Northern District of Texas. I doubt that it has any, for the tire was not manufactured there. In any event, if the plaintiff wishes to shoulder the burden of getting its witnesses to court in Marshall, Texas, I fail to see how that this should be any concern of Cooper's — or of this Court, for that matter. It certainly is not a matter upon which we, in the exercise of the extraordinary writ of mandamus, should sally forth proclaiming "abuse of judicial discretion".

I see nothing in this case to indicate that if Cooper had been sued in Wilmington, Delaware, it would have been sued in Wilmington, Delaware, it would have been clamoring for a change of venue to the Northern District of Texas. It simply does not want to stand trial in the Eastern District of Texas, and, by order of this Court, its forum shopping has been vindicated. If it had been left to me the Company would stand trial where it was sued.