*15*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

MAY 0 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Armando Alonso, Melaquiades Rodriguez, | § | |
| Rogelio Sanchez, Santos Martinez as next | § | |
| friend of G. M., Hugo Martinez, | § | |
| Jose Aguillon, and Higinio Sanchez-Ramos | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| *versus* | § | Civil Action No. B-04-005 |
| | § | |
| Agrigenetics, Inc. d/b/a Mycogen Seeds, | § | |
| Pablo Martinez and Eugene Martell | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT AGRIGENETICS, INC.'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO TRANSFER VENUE AND SUPPORTING BRIEF**

Table of Contents

Page

Table of Contents . . . . . . . . . ii

Table of Authorities . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . 1

    A.    Statement of the Issues to be Ruled Upon . . . . 2

    B.    Summary of the Argument . . . . . . 2

II. STATEMENT OF RELEVANT FACTS . . . . . 4

III. JURISDICTION . . . . . . . . . 6

    A.    Burden of Proof . . . . . . . . 6

    B.    Mycogen had Minimum Contacts with Texas . . . 7

    C.    Plaintiffs' Claims Arise out of and Relate to Mycogen's Contacts
        with Texas . . . . . . . . 10

    D.    Mycogen is Subject to General Jurisdiction in Texas . . 12

IV. VENUE . . . . . . . . . . 13

    A.    Special Venue Under the AWPA . . . . . 14

    B.    Transfer of Venue Is Not Proper . . . . . 15

        i.    Mycogen has not met its burden of showing that the case
                should be transferred . . . . . 16
        ii.   Plaintiffs' choice of forum . . . . 17
        iii.  Convenience for parties and witnesses . . 19
        iv.  Costs . . . . . . . 20

V. CONCLUSION . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . 24

EVIDENTIARY APPENDIX . . . . . . . Tabs A to E

Table of Authorities

**CASES**                                                                          <u>Page</u>

<u>Americas Ins. Co. v. Engicon, Inc.</u>, 894 F. Supp. 1068 (S.D. Tex. 1995)    .    17

<u>Asahi Metal Industry Co. v. Superior Court</u>, 480 U.S. 102 (1987)   .    .    7

<u>Aguero v. Christopher</u>, 481 F. Supp. 1272 (S.D. Tex. 1980) .    .    .    15, 16, 21

<u>Astorga v. Conleaf Inc.</u>, 962 F. Supp. 93 (W.D. Tex 1996)  .    .    .    15

<u>Brown v Flowers Indus., Inc.</u>, 688 F.2d 328 (5th Cir. 1982) .    .    .    8

<u>Bullion v. Gillespie</u>, 895 F.2d 213, 216 (5th Cir. 1990)    .    .    .    7, 8

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462 (1985)    .    .    .    8, 9, 10

<u>Continental Airlines, Inc. v. American Airlines, Inc.</u>, 805 F. Supp. 1392
    (S.D. Tex 1992)    .    .    .    .    .    .    .    20

<u>Data Disc, Inc. v. Systems Technology Assocs., Inc.</u>, 557 F.2d 1162
    (5th Cir. 1985) .    .    .    .    .    .    .    6

<u>D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.</u>,
    754 F.2d 542 (5th Cir. 1985)  .    .    .    .    .    6

<u>El Aguila Food Prods., Inc. v. Gruma Corp.</u>, 167 F. Supp. 2d 955
    (S.D. Tex. 2001)    .    .    .    .    .    .    16

<u>Guidry v. U.S. Tobacco Co., Inc.</u>, 188 F.3d 619, 628 (5th Cir. 1999)    .    8

<u>Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.</u>,
    844 F. Supp. 1163 (S.D. Tex 1994)    .    .    .    .    16

<u>Gurrola v. Griffin & Brand Sales Agency</u>, 524 F. Supp. 115 (S.D. Tex. 1980)    15, 19

<u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408 (1984).    .    8, 10

<u>Henderson v. AT&T Corp.</u>, 918 F. Supp. 1059 (S.D. Tex. 1996)    .    .    17

<u>Holmes v. Energy Catering Servs., LLC</u>, 270 F. Supp. 2d. 882
    (S. D. Tex. 2003)    .    .    .    .    .    .    16

<u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773 (5th Cir. 1986),
    cert. denied, 481 U.S. 1015 (1987)    .    .    .    .    7

International Shoe Co. v. Washington, 326 U.S. 310 (1945) .    .    .    7

Jones v Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061
    (5th Cir. 1992), cert. denied, 506 U.S. 867 (1992)    ..    .    .    7, 12

Lajaunie v. L&M Bo-Truc Rental, Inc., 261 F. Supp. 2d 751 (S.D. Tex. 2003)    16

Martinez, et al. v. Agrigenetics, Inc., d/b/a Mycogen Seed, C.A. No.
    DR00CA44 (W.D. Tex – 2000)    .    .    .    .    .    3, 12-14

Martinez v. City of Fort Worth, No. 3:02-CV-2286-M, 2003 U.S. Dist.
    LEXIS 8949 (N.D. Tex. May 28, 2003)    .    .    .    .    17-18

Micromedia v. Automated Broadcast Controls, 799 F.2d 230  (5th Cir. 1986)    8

Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590    .    .    .    14

Neizil v. Williams, 543 F. Supp. 899 (M.S. Fla. 1982)    .    .    .    21

Peteet v. Dow Chem. Co., 868 F.2d 1428 (5th Cir. 1989)    .    .    .    16

Piper Aircraft Co. v. Reyno 454 U.S. 235 (1981)    .    .    .    .    17

Point Landing, Inc. v. Omni Capital International Ltd., 795 F.2d 415
    (5th Cir. 1986) .    .    .    .    .    .    .    .    7

Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir. 1974)    .    8

Rock Bit Int'l v. Smith Int'l, 957 F.Supp. 843 (E.D. Tex. 1997)    .    .    17

Salem Radio Reps., Inc. v. Can Tel Market Support Group,
    114 F. Supp. 2d. 553 (N.D. Tex. 2000)    .    ..    .    .    16, 20

Schlobohm v. Schapiro, 784 S.W.2d 355 (Tex. 1990)    .    .    .    7

Shaffer v. Heitner, 433 U.S. 186 (1977)    .    .    .    .    .    8

SMI-Owen Steel Co. v. St. Paul Fire and Moving, 113 F. Supp. 1101
    (S.D. Tex. 2000)    .    .    .    .    .    .    16

Stewart v. Woods, 730 F. Supp. 1096 (M.D. Fla. 1990)    .    .    .    14, 15

Thompson v. Chrysler Motors Corp., 755 F.2d 1162 (5th Cir. 1985).    .    6

Travelers Health Ass. V. Virginia, 399 U.S. 643 (1950)    .    .    .    8

<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980) .     .     9

**STATUTES AND RULES**

7 U.S.C. §2041 et seq.     .     .     .     .     .     .     .     15

28 U.S.C. §1391(b)   .     .     .     .     .     .     .     22

28 U.S.C. §1404(a)   .     .     .     .     .     .     .     16, 22

29 U.S.C. §§ 201 et seq.     .     .     .     .     .     .     1

29 U.S.C. §§ 1801 et seq.     .     .     .     .     .     .     1

29 U.S.C. § 1822(a)   .     .     .     .     .     .     .     11

29 U.S.C. § 1822(c)   .     .     .     .     .     .     .     10

29 U.S.C. § 1841(b)(1)(A)     .     .     .     .     .     .     11

29 U.S.C. § 1842     .     .     .     .     .     .     .     11

29 U.S.C. §1854(a)   .     .     .     .     .     .     .     14

Tex. Civ. Prac. & Rem. Code Ann. § 17.042(3) (Vernon 1986)     .     .     9

210 ILCS 105/1 et seq.     .     .     .     .     .     .     .     1

225 ILCS 505/1 et seq.     .     .     .     .     .     .     .     1

820 ILCS 115/1 et seq.     .     .     .     .     .     .     .     1

Fed. R. Civ. P. 4(e)     .     .     .     .     .     .     .     7

**MISCELLANEOUS**

Federal Register Vol 69 No. 47, Wednesday, March 10, 2004, at 11433     .     13

H.R. Rep. No. 885, at 4560, 97th Cong., 2d Sess. (1982)     .     .     .     10

Wright & Miller, Federal Practice and Procedure § 1351 at 248
          (2nd Ed. 1990) .     .     .     .     .     .     .     6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **Armando Alonso, Melaquiades Rodriguez,** | § | |
| **Rogelio Sanchez, Santos Martinez as next** | § | |
| **friend of G. M., Hugo Martinez,** | § | |
| **Jose Aguillon, and Higinio Sanchez-Ramos** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| *versus* | § | **Civil Action No. B-04-005** |
| | § | |
| **Agrigenetics, Inc. d/b/a Mycogen Seeds,** | § | |
| **Pablo Martinez and Eugene Martell** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT AGRIGENETICS, INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE AND SUPPORTING BRIEF**

Plaintiffs', Armando Alonso, et al., file this Response to Defendant Agrigenetics, Inc.'s

Motion to Dismiss, or in the alternative, to Transfer Venue, and respectfully show the Court the

following:

## I.  INTRODUCTION

Plaintiffs are seven migrant farmworkers from Cameron and Hidalgo Counties, Texas.

They brought this action against their former employer, Agrigenetics, Inc., d/b/a Mycogen Seeds

and their former farm labor contractors, Pablo Martinez and Eugene Martell, for violations of the

Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq., the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the Illinois Wage Payment and Collection Act

("IWPCA"), 820 ILCS 115/1 et seq., the Illinois Farm Labor Contractor Certification Act

("IFLCCA"), 225 ILCS 505/1 et seq., the Illinois Field Sanitation Act ("IFSA"), 210 ILCS 105/1

1

et seq., and common law.

A.  Statement of the Issues to be Ruled Upon by the Court

Defendant Agrigenetics does business as Mycogen Seeds and it is a subsidiary of Dow

AgroSciences, which in turn is a wholly owned subsidiary of The Dow Chemical Company.  This

defendant, which will be referred to as "Mycogen", moves to dismiss or transfer this case by

claiming that this Court lacks personal jurisdiction over it and that venue is not proper in the

Southern District of Texas.  In the alternative, Mycogen argues that this case should be

transferred for the convenience of the parties to Illinois.  For the reasons explained below,

Mycogen's motion should be denied it its entirety.

B. Summary of the Argument

This Court has personal jurisdiction over Mycogen because Mycogen purposefully

established minimum contacts with Texas by recruiting Plaintiffs in the Rio Grande Valley

through its Texas agents, Pablo Martinez and Eugene Martell, and because many of the statutory

violations alleged occurred in whole or in part in Texas, during the course of this recruitment.

For example, Mycogen violated the AWPA by providing the Plaintiff farmworkers with false and

misleading information about the work it was offering.  Mycogen also violated the AWPA by

failing to comply with the disclosure provisions of the AWPA.  Both of these AWPA statutory

violations arise entirely out of Defendant's contacts with the state of Texas. Therefore, this Court

has specific personal jurisdiction over Mycogen and its motion to dismiss should be denied.

Even if the Court did not have specific jurisdiction over Mycogen, it has general

jurisdiction over Mycogen because the Defendant's business activities in Texas are sufficiently

continuous, systematic and substantial such that the exercise of personal jurisdiction does not

2

offend traditional notions of fair play and substantial justice. In this respect, Mycogen has used Texas farm labor contractors for a number of years to recruit Texas migrant workers; over a several year span Mycogen has employed Texas migrant workers recruited by these Texas farm labor contractors; Mycogen has previously been sued in Texas by some of the these migrant workers who have alleged claims similar to the ones at bar; and Mycogen has other cases similar to the one at bar that are currently pending. Mycogen also maintains agricultural operations in Texas, conducts business in Texas, and maintains a registered agent for service of process in Texas. Mycogen has purposefully availed itself of the benefits and protections of the forum state and the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Therefore, this Court also has general jurisdiction over Mycogen and its motion to dismiss this case should be denied.

Venue is proper in the Southern District of Texas because the AWPA has a special venue provision that allows farm workers to file AWPA suits in any United States District Court that has jurisdiction over the parties.[1] This court has both specific and general personal jurisdiction over Mycogen; therefore, this case is properly brought in the Southern District of Texas. Venue is also proper under 28 U.S.C. §1391(b) because many of the claims arose in this judicial district.

To show that personal jurisdiction and venue are proper, Plaintiffs rely on the allegations in their Original Complaint, the allegations in <u>Ignacio Martinez et al., v. Agrigenetics, Inc., d/b/a Mycogen Seed</u>, C.A. No. DR00CA44 (W.D. Tex – 2000), the Affidavit of Non-party Witnesses Jose Aguillon and Enrique Rodriguez[2], the Affidavit of Defendant Eugene Martell, Defendant Mycogen's website, the Dow AgroSciences website, a demand letter sent to Mycogen on behalf

---

[1] 29 U.S.C. §1854(a).
[2] These witnesses will be joined in this lawsuit.

3

of two separate groups of non-party migrant farm workers, and the relevant case and statutory authority.

## II.  STATEMENT OF RELEVANT FACTS[3]

In 2002, Mycogen employed Defendant Pablo Martinez ("Martinez") and Defendant Eugene Martell ("Martell") to recruit and hire farmworkers from the Rio Grande Valley region of Texas to perform agricultural work for Mycogen in Illinois.[4]  Martell resides in Weslaco, Texas.[5]  Martinez owns a house in Mercedes Texas where he resides for part of the year.[6]  Martinez uses his Mercedes, Texas residence as a base of operations to meet and recruit Texas farm workers for employment with Mycogen in Illinois.[7]  Martinez and Martell, acting as agents of Mycogen, and using documents and information provided by Mycogen, recruited and entered into working agreements with the Plaintiffs and other farmworkers, in the Rio Grande Valley to perform agricultural work for Mycogen in Illinois.[8]  The work agreements, entered into in the Rio Grande Valley of Texas, called for the farmworkers to leave their homes in Cameron and Hidalgo Counties and to travel to Illinois to work for Mycogen.[9]

Mycogen through its agents, Martinez and Martell, made promises to the Plaintiffs, in Texas, in order to induce them to accept employment and travel to Illinois.[10]  Martinez and Martell made these promises and explained the work being offered to the Plaintiffs, by reviewing documents and explaining information provided to them by Mycogen.[11]  Several Plaintiffs had

---

[3] In the interest of shortening this response, the Plaintiffs will only cite facts that are relevant to the motion to dismiss.
[4] Plaintiffs' Original Complaint at ¶ 4.7.
[5] Affidavit of Eugene Martell, Tab A at ¶ 1; Plaintiffs' Original Complaint at ¶ 3.6.
[6] Affidavit of Eugene Martell, Tab A at ¶ 4; Plaintiffs' Original Complaint at ¶ 3.7.
[7] Affidavit of Eugene Martell, Tab A at ¶¶ 4, 5.
[8] Plaintiffs' Original Complaint at ¶¶ 3.6, 3.8, 4.37, 4.38; Affidavit of Eugene Martell, Tab A at ¶¶ 3, 5.
[9] Plaintiffs' Original Complaint at ¶ 4.12.
[10] Plaintiffs' Original Complaint at ¶ 4.13.
[11] Affidavit of Eugene Martell, Tab A at ¶ 5.

4

worked for Mycogen and Martinez in previous years after being recruited in the Rio Grande Valley.[12]  Martinez and Martell promised some of the Plaintiffs work on the same terms that were provided by Defendants the previous year.[13]

Pablo Martinez and Eugene Martell recruited Plaintiffs and other migrant workers for Mycogen at Pablo Martinez's house in Mercedes, Texas.[14]  This recruitment was done in Mercedes, Texas with materials provided by Defendant Mycogen.[15]  Martinez and Martell arranged for Plaintiffs' travel to Illinois at Martinez's house in Mercedes, Texas.  Martinez and Martell gave cash advances to workers at Martinez's house in Mercedes, Texas so that they could make the trip to Illinois.[16]  Plaintiffs and other workers met at Martinez's house in Mercedes, Texas and loaded themselves into vehicles arranged for by Martinez.[17]  Martinez later deducted the money he loaned to workers from the worker's pay.[18]

Plaintiffs were transported to Mt. Pleasant, Iowa where they were housed in substandard housing provided by Defendants.[19]  Later, the workers were taken to the Mycogen work site where they filled out various Mycogen employment documents.[20]  The Plaintiffs worked in Mycogen's corn fields.[21]  While performing this work, the workers were employed by

---

[12] Plaintiffs' Original Complaint at ¶¶ 4.12, 4.19; Affidavit of Eugene Martell, Tab A at ¶¶ 5, 8; Affidavit of Jose Aguillon, Tab B at ¶ 5.
[13] Plaintiffs' Original Complaint at ¶ 4.19.
[14] Affidavit of Eugene Martell, Tab A at ¶¶ 4,5; Affidavit of Jose Aguillon, Tab B at ¶¶ 2, 3; Affidavit of Enrique Rodriguez, Tab C at ¶¶ 2, 3.
[15] Id.
[16] Affidavit of Eugene Martell, Tab A at ¶ 7; Affidavit of Jose Aguillon, Tab B at ¶ 3; Affidavit of Enrique Rodriguez, Tab C at ¶ 3.
[17] Affidavit of Jose Aguillon, Tab B at ¶ 3; Affidavit of Enrique Rodriguez, Tab C at ¶ 3.
[18] Id.
[19] Plaintiffs' Original Complaint at ¶¶ 4.28, 4.29; Affidavit of Jose Aguillon, Tab B at ¶ 3; Affidavit of Enrique Rodriguez, Tab C at ¶ 3.
[20] Affidavit of Eugene Martell, Tab A at ¶ 6.
[21] Plaintiffs' Original Complaint at ¶ 4.5.

Mycogen.[22]

Once their work with Mycogen ended, the Plaintiffs returned to the Rio Grande Valley of Texas. The Plaintiffs did not receive their final paychecks until after the Plaintiffs returned to their home in Texas, and only after they complained about not having been paid.[23] Approximately two weeks after they returned to South Texas, the Plaintiffs and other workers met with Eugene Martell at a bank in Mercedes where he handed the Plaintiffs' their final checks.[24] This payment did not completely compensate the Plaintiffs for their work, and the Plaintiffs are still owed part of their wages.[25]

### III. JURISDICTION

#### A. Burden of Proof

The Plaintiff farmworkers bear the initial burden of establishing the district court's jurisdiction over Mycogen. Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985). However, the amount of proof required to meet that burden will vary depending on the method used by the district court to determine the issue. Wright & Miller, Federal Practice and Procedure § 1351, p. 248 (2nd Ed. 1990); Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). If the district court decides the merits of the motion to dismiss without an evidentiary hearing, as in the case at bar, the farmworkers "need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." D.J. Investments, Inc. v. Metzeler Motocycle Tire Agent Gregg, Inc., 754 F.2d 542, 545-546 (5th Cir. 1985). "[U]ncontroverted allegations in the Plaintiff's complaint must be taken

---

[22] Plaintiffs' Original Complaint at ¶ 4.6(a).
[23] Affidavit of Eugene Martell, Tab A at ¶ 9.

6

as true," Id at 546, and "conflicts between the facts as established by the respective parties'

appropriate affidavits, and other proper summary judgment type evidence, must be resolved in

Plaintiff's favor." Jones v Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1067 (5th Cir.

1992).

At this early stage in the litigation, the factual evidence presented in the attached

affidavits and exhibits establishes a prima facie case that Mycogen is subject to the personal

jurisdiction of this district court.

### B. Mycogen had Minimum Contacts with Texas

Where the district court has federal question jurisdiction, Federal Rule of Civil Procedure

4(e) permits the federal court to exercise personal jurisdiction over any defendant who is subject

to the jurisdiction of the courts of the state in which it sits.  Point Landing, Inc. v. Omni Capital

International Ltd., 795 F.2d 415, 519 (5th Cir. 1986).  Since the Texas long-arm statute extends

personal jurisdiction to the limits of due process, the determination of personal jurisdiction

compresses into a due process assessment.  Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777

(5th Cir. 1986), cert denied, 481 U.S. 1015 (1987); Jones v. Petty-Ray Geophysical Geosource,

Inc., 954 F.2d 1061-1068 (5th Cir. 1992), cert. denied, 506 U.S. 867 (1992); Schlobohm v.

Schapiro, 784 S.W.2d 355, 357 (Tex. 1990).  To exercise personal jurisdiction consistent with

due process, the Court must conclude that the Defendant established "minimum contacts" with

Texas, and that the exercise of personal jurisdiction would not offend "traditional notions of fair

play and substantial justice" Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) (citing Asahi

Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987) and International Shoe Co. v.

---

[24] Id.; Affidavit of Jose Aguillon, Tab B at ¶ 4; Affidavit of Enrique Rodriguez, Tab C at ¶ 4.
[25] Plaintiffs' Original Complaint at ¶¶ 5.2(e), 6.3, 7.3.

Washington, 326 U.S. 310 (1945)).

The minimum contacts analysis has been separated into two types of personal jurisdiction: general and specific. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 411 n. 8-9 (1984). Plaintiffs in this case first rely on specific personal jurisdiction, which arises when the controversy is related to the Defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414. To establish specific jurisdiction, the relationship "among the Defendant, the forum, and the litigation" should be analyzed. Shaffer v. Heitner, 433 U.S. 186, 204 (1977). It is well established "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting Travelers Health Ass. v. Virginia, 399 U.S. 643, 647 (1950)). Even a single purposeful contact related to the cause of action may be sufficient to invoke specific jurisdiction, Micromedia v. Automated Broadcast Controls, 799 F.2d 230, 234 (5th Cir. 1986); Brown v Flowers Indus., Inc., 688 F.2d 328, 333 (5th Cir. 1982), and the nonresident Defendant himself need not have set foot upon the forum soil. Bullion, 895 F.2d at 216 (citing Burger King, 471 U.S. at 476). When the Defendant commits an act outside a state that causes injury within that state, that conduct amounts to sufficient contacts with the state to permit courts within the state to exercise personal jurisdiction. Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 628 (5th Cir. 1999); Brown, F.2d at 333.

The conduct of an authorized agent binds the principal on the jurisdictional issue, just as in other issues. See, e.g., Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 492 (5th Cir. 1974) ("an agency relationship may justify finding that a parent corporation 'does business' in a

8

jurisdiction through its subsidiary's local activities"). This concept is well illustrated by the Texas long-arm statute, which provides that "a nonresident does business in this state if the nonresident: . . . recruits Texas residents, directly or *through an intermediary located in this state*, for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(3) (Vernon 1986) (emphasis added). Mycogen recruited the Plaintiffs through farm labor contractor intermediaries Martinez and Martell, and its conduct is exactly the sort of conduct intended to be covered by the Texas long-arm statute.

In determining whether the assertion of jurisdiction over a Defendant who has minimum contacts with a state would comport with "traditional notions of fair play and substantial justice," the court may consider "the burden on the Defendant," "the forum state's interest in adjudicating the dispute," "the Plaintiffs' interest in obtaining the more efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 177 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). These considerations can sometimes be used to establish jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King, 471 U.S. at 477.

By recruiting Texas farmworkers in Texas to work for its Illinois seed corn company, misrepresenting the terms of the job offer to workers it was recruiting in Texas, and violating various provisions of the AWPA in Texas, Mycogen established minimum contacts with the State of Texas and brought itself within the jurisdiction of this Court with respect to any controversies related to that recruitment. Therefore, Mycogen's motion to dismiss this case should be denied.

9

<u>C. Plaintiffs' Claims Arise out of and Relate to Mycogen' Contacts with Texas</u>

The requirements of due process are satisfied and a court may exercise personal

jurisdiction over a nonresident Defendant if that Defendant's purposeful contacts with the forum

state are related to the cause of action. <u>Burger King</u>, 471 U.S. at 472 (quoting <u>Helicopteros</u>, 466

U.S. at 414). The cause of action alleged by the Plaintiffs in this case includes several violations

of the law that occurred entirely in Texas, thus conferring jurisdiction over Defendant Mycogen.

Plaintiffs allege that Defendant Mycogen, through its agents Martinez and Martell, failed

to provide them with a written disclosure of the terms and conditions of employment at the time

of recruitment.[26]  Plaintiffs were recruited in South Texas at the home of Pablo Martinez.[27]

Plaintiffs were not provided with written disclosures, but rather, using documents and

information provided to him by Mycogen, Martinez orally described the work being offered.[28]

Plaintiffs also claim that Defendant Mycogen knowingly provided them with false and

misleading information about the work being offered.[29]  The AWPA specifically required that

Defendant provide truthful disclosures to workers it recruited, yet it failed to do so.[30]  These

violations of the AWPA not only arise out of the Defendant's recruitment of Plaintiffs in Texas,

they occurred entirely in Texas.

Plaintiffs also claim that Defendant Mycogen violated 29 U.S.C. § 1822(c) by failing to

---

[26] Plaintiffs' Original Complaint, ¶ 5.2(a).

[27] Affidavit of Eugene Martell, Tab A at ¶ 5.

[28] Id.

[29] Plaintiffs' Original Complaint, ¶ 5.2(b).

[30] Plaintiffs' Original Complaint, ¶¶ 5.2(a), 5.2(b). Mycogen' recruitment of the Plaintiffs occurred in Texas. In enacting the AWPA, Congress intended to "ensure that workers to the greatest have full information about where they are going and what the conditions will be when they arise, before they begin their journey." H.R. Rep. No. 885, at 4560, 97th Cong., 2d Sess. (1982), in U.S. Code Cong. & Ad. News 4547 *et seq.*

10

comply with the terms of the working arrangement.[31] This claim arises from and relates to Mycogen' contacts with the state of Texas because the working arrangement was entered into in Texas and required Plaintiffs to take certain action in Texas. It required them to prepare to leave their homes and the state.[32] It required some Plaintiffs and other workers to take on debt in Texas to pay their way to the work in Illinois.[33]

Several of the other claims alleged in this lawsuit arose or partly occurred in Texas. Plaintiffs claim that Defendant Mycogen caused their transportation from Texas to Iowa without ensuring that the vehicles they were transported in complied with federal safety standards, in violation of 29 U.S.C. § 1841(b)(1)(A)[34]; that Defendant Mycogen utilized, in Texas, the services of farm labor contractors without taking reasonable steps to determine if these contractors had valid certificate of registration authorizing that contractor was being utilized by Defendant Mycogen, in violation of 29 U.S.C. § 1842[35]; that Defendant Mycogen breached the contracts it entered into in Texas with workers[36]; and that the Defendant Mycogen violated 29 U.S.C. § 1822(a) by failing to pay wages owed to Plaintiffs when they were due. This final claim occurred in part in Texas because the Plaintiffs did not receive their final paycheck until after they had returned to Texas, and only after they complained about not being paid.[37] Also, the Plaintiffs' were not paid all they were owed.[38] Similarly, Plaintiffs' minimum wage claim under the FLSA partly arose in Texas, because at the issuance of their final paycheck here, Plaintiffs' total

---

[31] Plaintiffs' Original Complaint, ¶ 5.2(d).
[32] Plaintiffs' Original Complaint, ¶¶ 4.12, 4.19.
[33] Affidavit of Eugene Martell, Tab A at ¶ 7; Affidavit of Jose Aguillon, Tab B at ¶ 3; Affidavit of Enrique Rodriguez, Tab C at ¶ 3.
[34] Plaintiffs' Original Complaint, ¶ 5.2(j).
[35] Plaintiffs' Original Complaint, ¶ 5.5(a).
[36] Plaintiffs' Original Complaint, ¶¶ 4.18 – 4.22, 10.1 – 10.5.
[37] Affidavit of Eugene Martell, Tab A at ¶ 9.
[38] Plaintiffs' Original Complaint, ¶¶ 5.2(e), 6.3, 7.3; Affidavit of Jose Aguillon, Tab B at ¶ 4; Affidavit of Enrique Rodriguez, Tab C at ¶ 4.

11

compensation fell below $5.15 per hour worked.[39]

### D.  Mycogen is Subject to General Jurisdiction in Texas

Even if this Court finds that there is an insufficient relationship between Defendant's actions and Plaintiffs' causes of action, the Court still has general personal jurisdiction over Defendant Mycogen because Mycogen's contacts with Texas are continuing, systematic, and ongoing.  Jones v. Petty-Ray Geophysical, Geosource, Inc., 954 F.2d 1061, 1068 (5th Cir.), cert denied, 506 U.S. 867 (1992).

In this respect, Mycogen has used Texas farm labor contractors, including Martinez and Martell for a number of years to recruit Texas migrant workers.  In 2002, at a single facility, Mycogen employed approximately 60 migrant workers as part of the crew supervised by Martell and Martinez.[40]  Mycogen has also provided seasonal employment to South Texas migrant workers, including several of the Plaintiffs, over the course of several years.[41,42]  Because of its use of Texas migrant workers, Mycogen has been sued in Texas by other Texas migrant workers who have alleged claims similar to the ones at bar.[43]  Also, because of its use of Texas migrant workers, Mycogen has other cases from different seasons similar to the one at bar that are currently pending.[44]

Mycogen also conducts agricultural operations in Texas and conducts business in Texas. Mycogen's has appointed a registered agent for service of process in Texas because its Texas

---

[39] Plaintiffs' Original Complaint, ¶ 6.3.
[40] Affidavit of Eugene Martell, Tab1 at ¶ 5.
[41] Affidavit of Eugene Martell, Tab1 at ¶¶ 3-5, 7-8.
[42] Mycogen operates hybrid seed corn operations in several states. If the Court does not find sufficient  systematic and continuous contacts, the Plaintiffs request the opportunity to conduct discovery regarding the scope of Mycogen's Texas contacts, particularly it's use of Texas migrant laborers throughout its agricultural operation.
[43] Martinez et al., v Agrigenetics, Inc., d/b/a Mycogen Seed,C.A. No. DR00CA44 (W.D. Tex. 2000).
[44] See letter attached at Tab D.  This letter outline complaints of two other sets of Texas workers employed by Mycogen and Pablo Martinez in Illinois.  One group worked in the 2002 sorting season and one group worked in the

12

presence is continuous, systematic, and ongoing.[45]  For example, as noted in the Federal Register,

Mycogen Seeds seeks to extend an existing experimental use permit (EUP) issued by the

Environmental Protection Agency for the testing and breeding of maize through from 2004

through 2006.[46]  In pertinent part, the notice provides that for "Mycogen Seed/Dow AgroSciences

LLC, 1,177 acres are proposed during the 2004 season and 7,687 acres are proposed for the 2005

season under [experimental use permit] 68467-[experimental use permit] –7 for testing" in

various states including Texas.[47]  In addition, as evidenced by a lawsuit filed against Mycogen

Seed in 2000 by another group of migrant farmworkers, Mycogen has maintained a Texas

agricultural presence and employed Texas migrant farmworkers since at least 1998.[48]  In addition

to growing agricultural commodities in Texas since at least 1998, Mycogen has also recruited

and hired workers from South Texas for at least six or seven years.[49]

Mycogen has purposefully availed itself of the benefits and protections of the forum state

and the exercise of personal jurisdiction does not offend traditional notions of fair play and

substantial justice.  Therefore, even if this determines that it is does not have specific jurisdiction

over Mycogen, this Court has general jurisdiction over Mycogen and its motion to dismiss this

case should be denied.

---

2003 sorting season.  The letter has been redacted, but the redacted information can be supplied to the Court should the Court request the information.

[45] See copy of Franchise Tax Certification of Account Status for Agrigenetics, Inc. at Tab E.

[46] Federal Register Vol 69 No. 47, Wednesday, March 10, 2004, at 11433.

[47] Id.

[48] Martinez et. al., v. Agrigenetics, Inc., d/b/a Mycogen Seed, C.A. No. DR00CA44 (W.D. Tex. 2000). The complaint was filed with the United States Clerk's Office for the Western District of Texas and incorporated by reference.

[49] Affidavit of Eugene Martell, Tab A at ¶¶ 3-5, 7-8; see also, Martinez et. al., v. Agrigenetics, Inc., d/b/a Mycogen Seed, C.A. No. DR00CA44 (W.D. Tex. 2000).

13

## IV.  VENUE

Mycogen also argues that the lawsuit should be dismissed for improper venue or, in lieu

of dismissal, should be transferred to the United States District Court for the Central District of

Illinois, Rock Island Division.  As described in detail below, if the Court finds that it has

personal jurisdiction over Defendant Mycogen, then venue is also proper in the Brownsville

Division pursuant to the special venue provision of the AWPA, 29 U.S.C. §1854(a).

Furthermore, venue should not be transferred to Illinois for the following reasons: 1) the special

venue provision of the AWPA reflects a strong Congressional intent to enable migrant workers to

file suit near their homes and 2) Mycogen has not met its burden of showing that the balance of

inconveniences and costs for all parties favor a transfer of venue.


A.  Special Venue Under the AWPA

In their Original Complaint, Plaintiffs alleged that venue is proper in the Brownsville

Division pursuant to the special venue provision of the AWPA, which states, "[a]ny person

aggrieved by a violation of this Act or any regulation under this Act by [an] …agricultural

employer…may file suit *in any district court of the United States* having jurisdiction of the

parties…" 29 U.S.C. §1854(a) (emphasis added).  This section makes venue coextensive with

personal jurisdiction.  See Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590, 597 (W.D. Tex.

2002); Stewart v. Woods, 730 F. Supp. 1096, 1097 (M.D. Fla. 1990)(stating that 29 U.S.C.

§1854(a) "confers venue co-extensive with personal jurisdiction.").

In enacting this special venue provision, Congress expanded the venue choices available

to migrant farmworkers and codified the significant policy interests behind ensuring that migrant

14

farmworkers have access to the judicial system.[50] <u>Stewart v. Woods</u>, 730 F.Supp. at 1097; and

<u>Astorga v. Conleaf Inc.</u>, 962 F. Supp. 93, 96 (W.D. Tex 1996).  One court acknowledged this

Congressional purpose by stating, "persons whose occupation is, by definition, migrant would be

placed at considerable disadvantage in redressing their rights if they were forced to return to the

judicial district in which the offending party resides." <u>Stewart</u>, 730 F. Supp. at 1097, n.1.

Requiring farmworkers to prosecute their claims in the Central District of Illinois would

seriously dilute the Congressional effort to protect migrant farmworkers.  This is especially true

because Congress has recognized that migrant farmworkers lack the financial resources necessary

to prosecute a claim hundreds of miles away from home.  <u>Gurrola v. Griffin & Brand Sales</u>

<u>Agency, Inc.</u>, 524 F. Supp. 115, 118; <u>Aguero v. Christopher</u>, 418 F. Supp. 1272, 1275 (S.D. Tex

1980).  Because all of the Plaintiffs reside in the Southern District of Texas, the policy

considerations dictate that this action should remain in this District and Division.

 As explained below, in all cases where a Defendant seeks to transfer venue, the Plaintiff's

choice of forum is entitled to great deference and the Plaintiff's choice of forum is rarely

disturbed.  Given the Congressional intent to offer migrant workers effective and accessible

remedies under the AWPA, courts should afford particular deference to a migrant farmworker's

choice of forum.

---

[50] A court in the Southern District has ruled that the Congressional intent to protect migrant farm workers weighed against changing venue even under the predecessor to the AWPA, the Farm Labor Contractor Registration Act, 7 U.S.C. §2041 *et seq.,* which had no special venue provision.  "[I]t is apparent that public interest, as evidenced by congressional action in this area, dictates that the court ensure that Plaintiff's legal remedies are not diluted by an indiscriminate transfer that would impose serious financial burdens on them." <u>Gurrola v. Griffin & Brand Sales Agency</u>, 524 F. Supp. 115, 117 (S.D. Tex. 1980).

B.  Transfer of Venue Is Not Proper

**i. Mycogen has not met its burden of showing that the case should be transferred**

A court is permitted to transfer venue "for the convenience of parties and witnesses" and when such a transfer would be "in the interest of justice." 28 U.S.C. §1404(a).  The burden for showing that the case should be transferred rests on the Defendant. Holmes v. Energy Catering Servs., LLC, 270 F. Supp. 2d 882, 886 (S.D. Tex. 2003).  Although the court should consider a variety of factors in determining whether to transfer venue, Plaintiffs choice of forum is generally afforded great deference. Id. at 886; SMI-Owen Steel Co. v. St. Paul Fire and Moving, 113 F. Supp. 1101, 1104 (S.D. Tex. 2000).  In order for the party moving for transfer of venue to prevail, it "must show that the balance of convenience and justice weighs heavily in favor of the transfer." Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1165 (S.D. Tex 1994); See also El Aguila Food Prods., Inc. v. Gruma Corp., 167 F. Supp. 2d 955, 961 (S.D. Tex. 2001)(citing Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989);  Aguero v. Christopher, 481 F. Supp. 1272, 1275 (S.D. Tex. 1980).  A court should not transfer a case unless "a transfer would make it substantially more convenient for the parties to litigate the case." Gundle Lining Constr. Corp., 844 F. Supp. at 1165.  When considering factors such as the convenience of parties and witnesses or costs to the parties, courts will not transfer venue where the practical effect is to shift the inconvenience or costs from the moving party to the non-moving party.  See Salem Radio Reps., Inc. v. Can Tel Market Support Group, 114 F. Supp. 2d. 553, 558 (N.D. Tex. 2000) and Lajaunie v. L&M Bo-Truc Rental, Inc., 261 F. Supp. 2d 751, 754 (S.D. Tex. 2003).

16

ii.    **Plaintiffs' Choice of Forum**

Defendant Mycogen argues that the Plaintiffs' choice of forum should be given less

weight because all of the Plaintiffs do not reside in the Division where the suit was brought.[51]  As

plead in Plaintiffs' Original Complaint, all seven of the Plaintiffs reside in the Southern District

of Texas -- five in Cameron County, which is in the Brownsville Division, and two in

neighboring Hidalgo County, which is in the McAllen Division.  On a motion to transfer the case

from the Brownsville Division to a court 1,400 miles away, it is disingenuous for Defendant to

argue that the Hidalgo County Plaintiffs' choice to bring the claim in nearby Brownsville should

not be entitled to deference.[52]  The Defendants admit that the same problem would arise for the

Cameron County Plaintiffs, if the Plaintiffs chose to bring the lawsuit in the McAllen Division.

If this reasoning were accepted, the Plaintiffs would have to bring separate lawsuits in order to be

able to file suit in the forum of their choice.  This is unacceptable because it deprives the

Plaintiffs of the right to choose their forum.  This is also unacceptable because it is a waste of

judicial resources to require two lawsuits to adjudicate claims and controversies involving the

same parties and the same operative facts.  Some of the Plaintiffs reside in the Brownsville

Division and the fact that some of the Plaintiffs do not, should not weigh in favor of transferring

the case.  This is especially true because the Plaintiffs who live in nearby Hidalgo County have

---

[51] Defendant Agrigenetics, Inc.'s Motion to Dismiss or, in the alternative, to Transfer Venue and Supporting Brief (hereinafter "Defendant's Motion to Dismiss") at p. 7.

[52] Mycogen cites several cases to support its position that Plaintiffs choice of forum should not be entitled to deference.  None of the cases cited by Mycogen involve a scenario, like in the case at bar, where all of the Plaintiffs reside within the district, and several Plaintiffs reside in a division in the District where the lawsuit was filed but several Plaintiffs reside in a neighboring division.  See e.g. Piper Aircraft Co. v. Reyno 454 U.S. 235 (1981)(all of the Plaintiffs were Scottish citizens/residents and the claim was brought in California); Henderson v. AT&T Corp., 918 F. Supp. 1059 (S.D. Tex. 1996)(Plaintiffs resided in five different cities in four different states, and court refused to transfer Houston plaintiffs' cases to Houston from Galveston Division because of the close proximity of Houston and Galveston); Americas Ins. Co. v. Engicon, Inc., 894 F. Supp. 1068 (S.D. Tex. 1995) (none of the parties resided in the Division where the suit was filed); Rock Bit Int'l v. Smith Int'l, 957 F.Supp. 843 (E.D. Tex.

17

chosen a forum that is in the same judicial district in which they reside, and in a division that is nearby and convenient for them, their witnesses and other parties.

Mycogen also claims that the Plaintiff's choice of forum is entitled to less deference when "the operative facts occurred in another jurisdiction."[53] Defendants fail to acknowledge that several of the Plaintiffs' claims arise out the farm labor contracting activity performed by Mycogen's farm labor contractors, Pablo Martinez and Eugene Martell, in Texas in Hidalgo and Cameron Counties. Specifically, the Plaintiffs alleged the following in their complaint: 1) the Defendants recruited Plaintiffs in Texas and offered employment to them[54]; 2) Defendants Martell and Martinez engaged in this recruitment activity in Texas when they were not properly licensed to do so[55]; 3) the Defendants failed comply with the disclosure provisions of the AWPA at the time they recruited Plaintiffs in Texas[56]; 4) the Defendants knowingly provided false and misleading information to the Plaintiffs at the time of their recruitment in Texas;[57] and 5) Plaintiffs left their places of residence and traveled 1,400 miles to Iowa/Illinois based on the promises made to them by Defendants in Texas.[58]  In addition, several of the other claims arising after Plaintiffs began work in Illinois have to do with a breach of the promises the Defendants made to Plaintiffs in Texas.[59] This recruitment activity occurred in the Rio Grande Valley of Texas.[60] The Plaintiffs and other workers also incurred expenses in preparation for their trip to Illinois and gave up any other opportunities for employment in order to travel to and work in

---

1997)(neither party had an office or place of business in the Division) and Martinez v. City of Fort Worth, No. 3:02-CV-2286-M, 2003 U.S. Dist. LEXIS 8949 (N.D. Tex. May 28, 2003)(neither party resided in the Division).
[53] Defendant's Motion to Dismiss at page 7.
[54] Plaintiffs' Original Complaint ¶ 4.7.
[55] Plaintiffs' Original Complaint ¶¶ 4.35, 4.36, 5.3(a), 5.4(a), 5.5(a)
[56] Plaintiffs' Original Complaint ¶¶ 4.8, 5.2(a), 8.2(g), 8.4(g).
[57] Plaintiffs' Original Complaint ¶¶ 4.13, 4.20 , 5.2(b) and 11.1-11.8.
[58] Plaintiffs' Original Complaint ¶¶ 4.12, 4.14, 4.19, 4.21, 11.6.
[59] Plaintiffs' Original Complaint ¶¶ 4.15, 4.22, 5.2(b), 8.2(c), 8.4(c) and 10.1-10.5.

18

Illinois.[61]  Defendant's assertion that "nothing about this action has any connection with the Brownsville Division,"[62] is inaccurate and ignores the significance of this recruitment activity to Plaintiffs' case.  In determining that venue was proper in the Brownsville Division in a similar case, this court found it "significant that the effect of the Defendants' alleged misrepresentations and breach of contract was felt within this district in the homes of respective Plaintiffs." Gurrola, 524 F. Supp. at 117.

### iii.    Convenience for Parties and Witnesses

Defendant Mycogen also argues that it is more convenient for Mycogen's witnesses to travel to Rock Island, Illinois than to Brownsville because the four witnesses named by Mycogen reside in towns in Iowa, Illinois and Indiana.  Mycogen makes no reference to the convenience of the other parties or witnesses in the case.  Defendant Eugene Martell resides in Weslaco, Texas, which is approximately 45 miles from Brownsville but approximately 1,444 miles from Rock Island, Illinois.[63]  Similarly, Defendant Pablo Martinez maintains a residence in Mercedes, Texas – approximately 40 miles from Brownsville, and the seven Plaintiffs all reside within Cameron and Hidalgo Counties near Brownsville.[64]

In addition, the Plaintiffs intend to call non-party witnesses who reside in the Texas Rio Grande Valley.  For example, Mycogen employed approximately 60 South Texas migrant workers.  In addition to the seven Plaintiffs, the Plaintiffs know of at least eight other farm workers who were recruited in Texas by Martinez and Martell to work alongside Plaintiffs for

---

[60] Affidavit of Eugene Martell, Tab A at ¶¶ 4-5, 7; Affidavit of Jose Aguillon, Tab B at ¶ 2; Affidavit of Enrique Rodriguez, Tab C at ¶ 2.
[61] Affidavit of Jose Aguillon, Tab B at ¶ 3; Affidavit of Enrique Rodriguez, Tab C at ¶ 3.
[62] Defendant's Motion to Dismiss at p. 11.
[63] Plaintiffs' Original Complaint ¶3.7; http://www.mapquest.com.
[64] Plaintiffs' Original Complaint, ¶¶3.6, 3.1, 3.2; http://www.mapquest.com.

Mycogen in Illinois. These eight witnesses are also residents of Cameron or Hidalgo Counties.[65]
These other workers are material witnesses to many of the events upon which this lawsuit is
based.[66] Plaintiffs may also call workers' family members who may have been present at the
time of recruitment. Most, if not all, of these are non-party witnesses reside in Cameron and
Hidalgo Counties, beyond the subpoena power of an Illinois Court, and these witnesses are not
subject to the same control as Mycogen's non-party witness employees.

Mycogen also claims that this case should be transferred because many of its witnesses
live outside Texas and beyond this Court's subpoena power.[67] However, Mycogen implies in its
motion that it employs most, if not all, of these witnesses. Mycogen has not explained why it
will not be able to get trial or deposition testimony from its own employees.[68]

In arguing that its motion should be granted, Mycogen is trying to shift the
inconvenience, burden, and cost of participating in this case onto the other parties in the suit.
This is an improper reason for transferring venue, and Mycogen's motion should be denied.
Salem Radio Reps., Inc., 114 F. Supp. 2d. at 558.

iv.    **Costs**

Even though Mycogen is in a much better position than the other parties to bear the costs
of trying a case far from home, Mycogen is also trying to shift the costs associated with the case
to the Plaintiffs and the other defendants.

Plaintiffs are low-wage migrant farmworkers who do not have the financial resources

---

[65] See, for example, Affidavit of Jose Aguillon, Tab B at ¶ 6; Affidavit of Enrique Rodriguez, Tab C at ¶ 6.
[66] Affidavit of Jose Aguillon, Tab B; Affidavit of Enrique Rodriguez, Tab C.
[67] Defendant's Motion to Dismiss at p. 9.
[68] See Continental Airlines, Inc. v. American Airlines, Inc., 805 F. Supp. 1392, 1397 (S.D. Tex 1992)("Where, as
here, the key witnesses are (at least allegedly) employees of the party seeking transfer, their convenience is entitled
to less weight because the party will be able to compel their testimony at trial.")

20

necessary to cover the costs of prosecuting this matter in Illinois.[69]  Requiring migrant farmworkers "to prosecute an action in a distant district where the breach of the agreement occurs, rather than where the agreement was entered into and where the performance began, would impose upon Plaintiffs an intolerable financial burden, chilling their desires to vindicate statutorily created right, if not effectively destroying their ability to do so." Gurrola, 524 F. Supp. at 118.  This would "seriously dilute the Congressional effort to protect migrant workers". Aguero v. Christopher, 481 F. Supp. 1272, 1275 (S.D. Tex. 1980); accord, Neizil v. Williams, 543 F. Supp. 899, 904 (M.S. Fla. 1982).

There is nothing in the record to suggest that the other Defendants, Eugene Martell and Pablo Martinez, have the resources to defend this action in Illinois.  In fact, the limited evidence indicates just the opposite -- Eugene Martell submitted a pro-se letter answer in response to the Complaint and Defendant Pablo Martinez has yet to enter an appearance.  On the other hand, Mycogen, a large multi-national agricultural employer that operates facilities in various U.S. states, has the resources to defend this suit in Texas and will presumably continue to be represented by local counsel in Texas.[70]  Therefore, it is fair and reasonable to allow this case to move forward in this district.

---

[69] Affidavit of Jose Aguillon, Tab B at ¶ 7; Affidavit of Enrique Rodriguez, Tab C at ¶ 7.

[70] Mycogen Seed is a subsidiary and/or department of Dow AgroSciences.  According to the Dow AgroSciences website (www.dowagro.com), "Dow AgroSciences has approximately 6,000 people in over 50 countries dedicated to its business, and it has worldwide sales of approximately $3 billion (US dollars)., and it is a wholly-owned subsidiary of The Dow Chemical Company."  According the Mycogen Seed website, (www.mycogen.com) through its "affiliation with Dow AgroSciences, we conduct continual testing for product improvement and development."  Mycogen goes on to state that it operates corn-belt and international breeding and research facilities and according to its website, Mycogen maintains operations in the following locations:  several cities in Indiana (Indianapolis, Mount Vernon, and Windfall); various cities in Iowa (Belmond, Davenport, Huxley, DeWitt, and Marshalltown); various cities in Illinois (Sidney, Congerville, Grand Ridge, and Pontiac); two cities in Minnesota (Breckenridge and Olivia); Arlington Wisconsin; Molokai, Hawaii; Puerto Rico; York Nebraska; St. Mary's, Ontario (Canada); and Princeton, Ontario (Canada).

## V. CONCLUSION

This Court has personal jurisdiction over Mycogen because Mycogen purposefully established minimum contacts with Texas by recruiting Plaintiffs in the Rio Grande Valley through its Texas agents, Pablo Martinez and Eugene Martell, and because many of the statutory violations alleged occurred in whole or in part in Texas, during the course of this recruitment. Even if the Court did not have specific jurisdiction over Mycogen, it has general jurisdiction over Mycogen because the Defendant's business activities in Texas are sufficiently continuous, systematic, and substantial such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Therefore, this Court also has personal jurisdiction over Mycogen and its motion to dismiss this case should be denied.

Venue is proper in the Southern District of Texas because the AWPA has a special venue provision that allows farm workers to bring AWPA suits in any district court of the United States having jurisdiction over the parties. This court has both specific and general personal jurisdiction over Mycogen; therefore, this case is properly filed in the Southern District of Texas pursuant to the special venue provisions of the AWPA. Venue of this case is also proper in the Southern District of Texas pursuant to the 28 U.S.C. §1391(b) because actionable events or omissions occurred in whole or in part in this judicial district. Thus, Mycogen's motion to have this case dismissed on the basis of improper venue should be denied.

In addition, venue should not be transferred to the central district of Illinois because Mycogen has not met its burden of showing that this case should be transferred pursuant to 28 U.S.C. §1404(a). While transferring this case to Illinois might make it more convenient for Mycogen to defend this case, it would do this by making it less convenient or impossible for the

22

Plaintiffs to prosecute this case. Transferring this case would also make it difficult for the other defendants. Finally, transferring would also make it more difficult to secure the testimony of the Plaintiffs' co-workers who are likely to be non-party witnesses to the events that gave rise to this case. If a transfer for the convenience of the parties simply shifts the burden of participating in a lawsuit on the other parties and witnesses to the case, the request for transfer should be denied. Therefore, Mycogen's motion to have this case transferred for the convenience of the parties should be denied.

May 3, 2004

Respectfully submitted,

Nathaniel Norton
Texas Bar No. 24037196
S.D. No. 33422
TEXAS RIOGRANDE LEGAL AID, INC.
300 South Texas
Weslaco, TX 78596
Tel. 956-968-9574
Fax. 956-968-8823
Attorney-in-Charge for Plaintiffs

Rodolfo D. Sanchez
Texas Bar No. 17572100
S.D. No. 12600
TEXAS RIOGRANDE LEGAL AID, INC.
300 South Texas
Weslaco, TX 78596
Tel. 956-968-9574
Fax. 956-968-8823
Co-Counsel for Plaintiffs

23

CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2004, a true and correct copy of the foregoing document was served on Defendants as listed below by first class U.S. mail.

Frank L. Hill
Thompson & Knight
98 San Jacinto Blvd., Ste. 1900
Austin, TX 78701

Mark W. Clark
Kenneth Yerkes
Barnes & Thornburg
11 S. Meridian St.
Indianapolis, IN 46204

Eugene Martell
620 Nevada St.
Weslaco, TX 78596

Pablo Martinez
c/o Country Store
1800 E. Canal St.
Belle Glade, FL 33430

_____
Nathaniel Norton

24

State of Texas     )
                   )
County of Hidalgo   )

### Affidavit of Eugene Martell

My name is Eugene Martell. I am over the age of eighteen and I am competent to make this statement. This statement is based on personal knowledge and I am personally acquainted with the facts contained in this statement. I reside at 620 Nevada St., Weslaco Texas and I am a resident of Weslaco, Hidalgo County, Texas.

I am a Defendant in a lawsuit called Alonso et al., v. Agrigenetics, Inc., d/b/a Mycogen Seeds, Pablo Martinez, and Eugene Martell, Case No. B-04-005. The other Defendants are Pablo Martinez and Agrigenetics. Agrigenetics is also known as Mycogen Seeds.

I have worked on a seasonal basis with Pablo Martinez and Mycogen Seeds for the last 3 or 4 years. This includes 2002. I am paid a weekly salary and I have various job duties. As part of my work duties, I help Pablo Martinez meet with and talk to workers in Texas about the employment that they are being offered with Mycogen. I performed this job duty during the summer of 2002.

Pablo Martinez lives part of the year in Texas and part of the year in Florida. Pablo Martinez travels from Florida to South Texas to contact workers interested in working for Mycogen Seeds. Pablo Martinez owns a home in Mercedes, Texas. Pablo Martinez generally arrives no later than mid-June and he spends several weeks recruiting workers to work for Mycogen Seeds. Pablo Martinez did this in June 2002. Pablo Martinez recruits workers using information and documents provided to him by Mycogen Seeds.

In 2002, as in other years, many of the workers recruited by Pablo Martinez to work for Mycogen had worked for Pablo Martinez and Mycogen Seeds in previous years. These workers are migrant workers from South Texas. Normally, and in 2002, Pablo Martinez meets migrant farmworkers at his home in Mercedes Texas. When Pablo Martinez meets with workers at his home in Mercedes, Texas, Pablo Martinez verbally describes the work being offered by Mycogen Seeds. Mr. Martinez describes the work being offered with Mycogen by reviewing written documents provided to him by Mycogen Seeds. In 2002, Pablo Martinez lined up a crew of about 65 South Texas, ~~65~~ *30 and more showed up 6 his* migrant workers. *totaling about 60 from*

After leaving Texas the workers travel to the Mycogen work site. After arriving at Mycogen's Iowa work site, the workers fill out various Mycogen work documents.

While in Texas, and as part of the process of lining up workers, Pablo Martinez helps workers coordinate their transportation to Iowa. If a worker needs assistance getting to Iowa, Pablo Martinez will sometimes advance travel money here in Texas. I help Pablo with these activities. Before I worked with Pablo, there was another man

from the Valley who worked with him doing the same thing that I now do. Pablo has worked for Mycogen and Cargill for six or seven years.

Many of the workers recruited here in Texas are people that have previously worked with Pablo for Mycogen. Some of these workers have worked with Pablo for Cargill, a company that Mycogen bought out, in years previous to that.

In 2002, some workers complained about not getting their final paycheck check. After some of them complained, their last checks were mailed to Texas to Pablo Martinez and me. After we got the checks we distributed them to the workers in Texas.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _4/ 2 7/ 0 4_ .

_Eugene Martell_
Eugene Martell

State of Texas              )
                           )
County of Hidalgo          )

Affidavit of Jose Aguilon

1.    My name is Jose Aguilon.   I am over the age of eighteen and I am of sound mind.
This statement is based on personal knowledge and I am personally acquainted with the
facts in this statement.

2.    In the summer of 2002 I was recruited by Pablo Martinez to do detasseling work
for Mycogen Seeds.  Pablo recruited me along with about seven others at his house in
Mercedes, Texas.  Pablo Martinez told me the work would be in Illinois and that we
would live in a free apartment in Iowa.  He promised me that I would have good work for
about three weeks and that even the slowest worker would be guaranteed to earn at least
$2000.

3.    Pablo Martinez arranged for my transportation to Iowa and told me that he would
deduct $50 from my pay to pay for it.  The day we left for Iowa, the workers met at his
house in Mercedes, Texas and Pablo arranged for vehicles to take us to Iowa.  At this
time Pablo Martinez advanced me and other workers about $20.

4.    Two weeks after returning from Iowa, I and other workers met Eugene Martell at
a bank in Mercedes.  He handed me my last check.  It did not pay all of what I am owed.

5.    I worked detasseling with Pablo Martinez for Cargill in Iowa in approximately
1999.  I was recruited in Texas for that work.

6.    I and other workers are witnesses to the recruitment that took place in Texas and
we are all from South Texas.

7.    I am not part of the lawsuit against Mycogen, but I plan to join in and I do not
have the money to prosecute this case in Illinois.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on
April 29, 2004.

_____Jose F. Aguillon_____
Jose Aguillon

Certificate of Translation

I, Jose Torres, hereby affirm that I am fluent in both Spanish and English and that the
foregoing was translated to the best of my ability from English to Spanish for Jose
Aguillon on April 29, 2004.

Jose Torres

State of Texas        )
                      )
County of Hidalgo     )

                          Affidavit of Enrique Rodriguez

1.      My name is Enrique Rodriguez.  I am over the age of eighteen and I am of sound mind.  This statement is based on personal knowledge and I am personally acquainted with the facts in this statement.

2.      In the summer of 2002 I was recruited by Pablo Martinez to do detasseling work for Mycogen Seeds.  Pablo recruited me at his house in Mercedes, Texas.  Pablo Martinez told me the work would be in Illinois and that we would live in free housing.  He promised me that I would have good work seven days a week for about three weeks.

3.      Pablo Martinez arranged for my transportation to Iowa and told me that he would deduct $50 from my pay to pay for it.  The day we left for Iowa, the workers met at his house in Mercedes, Texas and Pablo arranged for me to be transported to Iowa in a van.

4.      Two weeks after returning from Iowa, I and other workers met Eugene Martell at a bank in Mercedes.  He handed me my a check.  It did not pay all of what I am owed.

6.      I and other workers are witnesses to the recruitment that took place in Texas and we are all from South Texas.

7.      I am not part of the lawsuit against Mycogen, but I plan to join in and I do not have the money to prosecute this case in Illinois.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 29, 2004.

                          _Enrique Rodriguez_
                          Enrique Rodriguez


                          Certificate of Translation

I, Jose Torres, hereby affirm that I am fluent in both Spanish and English and that the foregoing was translated to the best of my ability from English to Spanish for Enrique Rodriguez on April 29, 2004.

                          _Jose Torres_
                          Jose Torres



**LAW OFFICE OF**
**TEXAS RIOGRANDE LEGAL AID, INC.**
WESLACO
300 SOUTH TEXAS BLVD
WESLACO, TX 78596
TELEPHONE (956) 968-6574 TOLL FREE (800) 369-0574
FAX (956) 968-8823

Via fax (317-231-7433) and U.S. Mail

February 26, 2004

Mark Clark
Barnes & Thornburg
11 S. Meridian St.
Indianapolis, IN 46204

Dear Mr. Clark:

As you know, TRLA represents several workers, in addition to those we represent in the current lawsuit in district court in Brownsville, in relation to their employment with Mycogen Seeds, Pablo Martinez, and Eugene Martell. There are two groups of these workers: 1) four workers from the 2002 sorting season; and 2) two workers from the 2003 sorting season.

The first group consists of                                                          , and
                                  . These gentlemen were recruited in the Rio Grande Valley for work at Mycogen in Morton, Illinois by Pablo Martinez in the summer of 2002.

These clients suffered numerous violations of the AWPA, FLSA, Illinois Wage Payment and Collection Act, and Illinois Farm Labor Contractor Certification Act. For example, they received no written disclosures of the terms and conditions of employment, they received far less work than they were promised, the housing was overcrowded and otherwise substandard, Pablo Martinez was not properly licensed nor did he comply with other provisions of the AWPA and IFLCCA, they were paid improperly for the last week of work (though the extent of this is unclear as they never received a paystub), and they never received their bonus.

My clients' main complaint, however, about the disparity between the amount of work they were promised and the amount they received and about your client's failure to pay them their bonus. If your client will compensate them for the violation of the terms of the working arrangement and for the unpaid bonus, we may be able to resolve this dispute.

The second group of consists of                and his wife,                .  They were
recruited in Texas by Pablo Martinez and Eugene Martell for similar shed work in
2003.

Mr. and Mrs.        suffered violations of the law similar to those suffered by the
2002 workers.  Again, they received no written disclosures of the terms and
conditions of employment, the housing was overcrowded and otherwise
substandard, Pablo Martinez and Eugene Martell were not properly licensed nor
did they comply with other provisions of the AWPA and IFLCCA, they were not
paid at all for their last week of work, and they only received part of their bonus.

Of particular concern to Mr. and Mrs        is your client's failure to pay them
their last paycheck and the resulting hardship as they attempted to return to their
home in Texas.  Apparently, on the day the last checks were passed out, Eugene
Martell told them that he was keeping their final paychecks as payment on a loan
Pablo Martinez made to them in Texas.  This left my clients with no money to pay
for their return to Texas.  My clients had to beg for handouts from other Mycogen
employees in order to start their trip.  Once on the road, they encountered other
problems arising from the fact that they had not been paid.  In short, the failure to
ensure that Mr. and Mrs.        were paid resulted in a scary and humiliating
ordeal for my clients.

I hope that we can reach a mutually agreeable settlement with regard to both sets
of my clients.  As you know from my previous correspondence with you about
some of these clients, it is TRLA's policy to attempt to settle disputes wherever
possible without resorting to litigation.  You should also know, however, that
given the history of complaints raised by workers we represent against your client
and against these particular farm labor contractors, I and my clients are interested
in attempting to ensure that similar violations and harms are not visited upon
workers in future seasons.

Thank you for your attention to these matters.  I look forward to receiving a
response.

Sincerely yours,

Nathaniel Norton



WINDOW ON STATE GOVERNMENT                                CAROLE KEETON STRA.  .N   Texas Comptroller of Public Accounts

<u>Corporation Search Results</u>

# Franchise Tax Certification of Account Status

## This Certification Not Sufficient for Filings with Secretary of State

Do **not** include a certification from this Web site as part of a filing with the Secretary of State for dissolution, merger, withdrawal, or conversion. The Secretary of State will reject a filing that uses the certification from this site.

To obtain a certificate that is sufficient for dissolution, merger, withdrawal, or conversion, see Publication 98-336, Requirements to Change Corporate Status.

| Certification of Account Status | Officers And Directors Information |
|---|---|
| Company Information: | **AGRIGENETICS INC**<br>2030 DOW CENTER ATTN TAX DEPT<br>MIDLAND, MI 48674-0001 |
| Status: | **IN GOOD STANDING NOT FOR DISSOLUTION OR WITHDRAWAL through May 17, 2004** |
| Registered Agent: | CT CORPORATION SYSTEM<br>350 N. ST. PAUL ST.<br>DALLAS, TX 75201 |
| Registered Agent Resignation Date: | |
| State of Incorporation: | DE |
| File Number: | 0009904006 |
| Charter/COA Date: | March 3, 1994 |
| Charter/COA Type: | COA |
| Taxpayer Number: | 13305928635 |

---

Carole Keeton Strayhorn
Texas Comptroller of Public Accounts

<u>Window on State Government</u>
<u>Contact Us</u>
<u>Privacy and Security Policy</u>