UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 4 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| Armando Alonso; Melaquiades Rodriguez; Rogelio Sanchez; Santos Martinez, as next friend of G.M.; Hugo Martinez; Jose Aguilon; and Higinio Sanchez- Ramos, <br><br> Plaintiffs, <br><br> vs. <br><br> Agrigenetics, Inc. d/b/a Mycogen Seeds; Pablo Martinez; and Eugene Martell, <br><br> Defendants. | § § § § § § § § § § § § § § § § Civil Action No. B-04-005 |

**DEFENDANT MYCOGEN SEEDS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS AGAINST PRO SE DEFENDANTS
PABLO MARTINEZ AND EUGENE MARTELL AND MOTION TO SET
AMOUNT OF RULE 37(a)(4)(A) ATTORNEYS' FEES**

Comes now Agrigenetics, Inc., d/b/a Mycogen Seeds ("Mycogen"), and files this Opposition to Plaintiffs' Motion for Sanctions Against Pro Se Defendants Pablo Martinez and Eugene Martell and Plaintiffs' Motion to Set Amount of Rule 37(a)(4)(A) Attorneys' Fees, and would show:

**I.
INTRODUCTION**

Mycogen files this Opposition to protect its own interest in having this case fairly determined on the merits. Plaintiffs seek to have certain evidence and testimony excluded under Federal Rule of Civil Procedure 37 on grounds that Martinez and Martell have failed to comply with the Court's November 15, 2004 Order. The exclusion of this evidence would severely prejudice Mycogen's ability to defend itself in this trial, thereby

violating Mycogen's constitutional due process rights. Additionally, Mycogen files this Opposition to emphasize that Plaintiffs' Motion for Sanctions and Motion to Set Attorneys' Fees lack merit and should be denied in all respects.

## II.
## FACTUAL BACKGROUND

Defendant Pablo Martinez is a farm labor contractor. As an independent contractor, Martinez hired Plaintiffs to travel to Illinois in 2002 to detassel[1] corn in fields operated by Mycogen. Martinez, not Mycogen, employed Plaintiffs. Plaintiffs sued Martinez, Eugene Martell (Martinez's assistant), and Mycogen in 2004, claiming violations of the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et. seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C §§ 201 *et seq.*; and Illinois statutes and common law.

Defendant Martinez is 49 years old and has worked in the fields, harvesting crops, since he was 16.[2] Martinez speaks, reads, and writes only minimal English.[3] His highest level of education is the sixth grade, which he attended in Mexico.[4] Unfortunately, three Florida hurricanes in 2004 seriously hindered his ability to work in the fields.[5] Martinez cannot afford to hire an attorney and is proceeding *pro se* in this lawsuit.[6]

Martell is 55 years old and was hired by Martinez as his assistant to help with farm labor contracting work. Martell's primary job was to do the paperwork necessary

---

[1] Remove the tassel of corn to enhance fertilization.
[2] Martinez Deposition, p. 136 (attached as **Exhibit A**).
[3] *Id.* at pp. 7, 136.
[4] *Id.* at p. 18.
[5] *Id.*
[6] *Id.*

for the operation.[7] Martell made less than $4,000.00 in 2004.[8] Like Martinez, Martell is unable to afford an attorney and is proceeding *pro se* in this lawsuit.[9]

### III.
### PLAINTIFFS' CLAIMS AGAINST MARTINEZ AND MARTELL

Plaintiffs make vague and conclusory allegations against Martinez and Martell but, despite exhaustive discovery, have come forward with no evidence of any harm that they caused to Plaintiffs. Unable to establish any actual harm suffered by Plaintiffs, Plaintiffs' counsel seek to establish technical AWPA violations and bury Martinez and Martell in a mountain of paperwork.

A. **Contrary to Plaintiffs' vague and conclusory assertions, Plaintiffs were provided adequate job information, transportation, and housing, and were paid wages in accordance with state and federal law.**

Plaintiffs' non-specific complaints of wrongdoing are not supported by the evidence. To the contrary, the evidence shows:

1) Plaintiffs were provided with written materials, in both English and Spanish, accurately disclosing the terms and conditions of their employment prior to traveling to Illinois.[10] As required by the AWPA, this information included wages, location of work, existence of workers' compensation and unemployment insurance, and the availability of transportation to and from the fields.[11]

2) Plaintiffs were housed in a public motel in rooms that had two double beds, hot and cold water, television, daily towel service, daily maid service, a microwave oven, a small refrigerator, and adequate lighting and furnishings.[12]

3) Plaintiffs were paid the greater of $6.50 per hour or $70.00 per acre for detasseling as promised. The number of hours that Plaintiffs worked were

---

[7] Martell Deposition, p. 57 (attached as **Exhibit C**).
[8] Martell Affidavit, ¶ 2 (attached as **Exhibit D**).
[9] *Id.*
[10] **Exhibit A**, pp. 75-76, Exh. 5.
[11] *Id.*
[12] **Exhibit A**, pp. 164-67.

      properly kept, and payroll records reflect that Plaintiffs were properly paid.[13]

    4) Plaintiffs were transported to and from Mycogen's fields in a new air-conditioned bus, which was rented by Martinez and driven by an employee of Martinez who held a commercial drivers' license. The bus was properly registered and safety-inspected in Illinois.[14]

**B.   Plaintiffs' allegation of a technical transportation violation**

Plaintiffs' counsel seek to establish technical AWPA violations in the absence of any actual harm to Plaintiffs. For instance, Plaintiffs' counsel suggests that Martinez's Farm Labor Contractor license did not authorized him to "transport" agricultural workers. It is unclear whether Martinez "transported" workers within the meaning of the AWPA.[15] Regardless, Plaintiffs suffered no harm by being transported in the new air-conditioned bus provided by Martinez.

**C.   Plaintiffs' allegation of a technical housing violation**

Plaintiffs argue that Martinez's farm labor contractor license did not authorize him to provide "housing" to workers. The wording of the AWPA suggests that the AWPA is concerned about housing at work camps or farms, not public accommodations.[16] But regardless of whether Martinez should have obtained a "housing" license, it is clear that Plaintiffs were housed in a state-licensed public inn, which included many modern amenities.

---

[13] **Exhibit A, pp. 142-43.**
[14] **Exhibit A, pp. 163-64.**
[15] Martinez transported workers to and from fields, but did not transport them from Texas to Illinois. Case law suggests that "transporting" within the meaning of the AWPA definition does not refer to an element that is inevitable during agricultural employment, such as transportation of migrants from one field to another, but applies to activities such as providing bus tickets to bring workers to the farm. *See Calderon v. Witvoet,* 999 F.2d 1101 (7th Cir. 1993).
[16] The AWPA specifically excludes public innkeepers: "…any person who, in the ordinary course of that person's business, regularly provides housing on a commercial basis to the general public and who provides housing to migrant agricultural workers of the same character and on the same or comparable terms and conditions as is provided to the general public." 29 U.S.C. § 1823(c).

D. **Plaintiffs' allegation that Martell engaged in "farm labor contracting activity" does not comport with the AWPA.**

Martell worked as Martinez's bilingual assistant whose primary duty was to make certain that required paperwork, in English, was properly prepared. For instance, Martell helped migrant workers, most of whom spoke only Spanish, fill out their W-2 withholding statements and the worker registration forms required by Mycogen.[17] Also, Martell provided payroll information to a Florida payroll company hired by Martinez to withhold taxes and issue payroll checks to Plaintiffs.[18] Plaintiffs' suit against Martell lacks merit. Plaintiffs' counsel argue that Martell's employment with Martinez caused him to engage in "farm labor contracting activity," which is defined by 28 U.S.C § 1802(7) as "recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker."[19] Martell's assistance with paperwork did not constitute "farm labor contracting activity." No farm labor contractor could hire an assistant to help with paperwork if doing so would cause the unlicensed employee to engage in "farm labor contracting activity."

### IV.
### PLAINTIFFS HAVE UNDERTAKEN TO WEAR DOWN THESE PRO SE DEFENDANTS AT EVERY STEP OF THIS LITIGATION

A. **Martinez and Martell have consistently and extensively cooperated with Plaintiffs since the inception of this lawsuit.**

Upon being sued, Martinez and Martell immediately went to Plaintiffs' counsel and provided them with information and documents related to the case.[20] Without representation of counsel, Martell supplied Plaintiffs with an Affidavit concerning his

---

[17] **Exhibit C,** p. 57.
[18] *Id.* at 40.
[19] 29 U.S.C. § 1802(6).
[20] **Exhibit C,** pp. 113-14; **Exhibit A,** pp. 154-56.

involvement in the case.[21] Martell and Martinez again met with Plaintiffs' counsel in June 2004 and answered every question asked of them.[22] Martinez and Martell have given depositions, each lasting more than nine hours. Neither Martinez nor Martell has ever refused to answer questions asked by Plaintiffs' counsel in meetings or at their depositions.

B.  **Plaintiffs have taken advantage of Martinez's and Martell's *pro se* status by bombarding them with paper discovery and complaints.**

Martinez and Martell are at a tremendous disadvantage when it comes to responding to Plaintiffs' "paper discovery." Martinez can barely speak English, and both Martinez and Martell are unfamiliar with the legal process. Plaintiffs' counsel are well aware of these limitations and attempt to shamelessly exploit their advantage. A careful analysis of Plaintiffs' Motion for Sanctions shows that it lacks merit and should be denied.

## V.
## THE LEGAL STANDARD

It is well recognized that *pro se* pleadings are to be construed liberally.[23] When parties proceed without counsel, "[c]ourts entertain some reasonable leniency towards such parties."[24]

> A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." A court is expected to exercise "common sense" in interpreting these frequently diffuse pleadings, . . . and is to accord them a "liberal yet realistic construction."[25]

---

[21] Exhibit D, ¶ 5.
[22] *Id.* at 7.
[23] *Alexander v. Johnson*, 217 F. Supp. 2d 780, 795 (S.D. Tex. 2001).
[24] *Hite v. PQ Corp.*, No. 98-2088-JWL, 1998 U.S. Dist. LEXIS 19933, *1 (D. Kan. 1998).
[25] *Alexander*, 217 F. Supp. 2d at 795 (citations omitted).

Likewise, when considering the imposition of discovery sanctions, courts should be concerned that "the litigant does not unknowingly lose his right of access to the courts because of a technical violation."[26]

## VI.
## THE COURT'S DISCOVERY ORDER WAS FOLLOWED

### A. Defendants filed an appropriate answer.

Martell and Martinez filed an answer admitting or denying each averment made in Plaintiffs' Amended Complaint as required by this Court's November 15, 2004 discovery Order. Plaintiffs' counsel erroneously state that "Defendants made no response at all to paragraphs 4.2 through 4.20 of the complaint."[27] Either Martinez and Martell, or Plaintiffs' counsel, must have lost page three of the Defendants' Answer to Plaintiffs' Amended Complaint, which contains the purported missing responses.[28] Plaintiffs' counsel could easily have resolved this issue by simply asking undersigned counsel for the missing page.

It appears that Martinez, who is unable to read or write English, signed only the certificate of service line on Defendants' Amended Answer to Plaintiffs' First Amended Pleading. However, Federal Rule of Civil Procedure 8(f) states that "all pleadings shall be so construed as to do substantial justice." Rather than capitalize on the mistake of an illiterate man, Plaintiffs' counsel should accept the pleading as Martinez's good faith effort to comply with the federal rules.

---

[26] *Hite*, 1998 U.S. Dist. LEXIS 19933, at *2 (citation omitted).
[27] Plaintiffs' Motion for Sanctions, p. 2 (attached as **Exhibit E**).
[28] Defendants' Answer to Plaintiffs' Amended Complaint, p. 3 (attached as **Exhibit F**).

**B.     Martinez and Martell complied with the Court's November 15, 2004 Order with respect to Plaintiffs' Requests for Production.**

Plaintiffs' counsel feign confusion because Martinez and Martell failed to take each of the 141 pages of documents they produced and indicate which of Plaintiffs' 50 requests for production they were responsive to. But Plaintiffs' briefing proves that there is no confusion. After pointing out that documents DEF 0093 through DEF 0105 are payroll records created by Martinez's payroll company, Plaintiffs' counsel deftly remark that "many of [Plaintiffs'] requests have nothing to do with pay or pay records."[29] So, where is the confusion? At their depositions, Plaintiffs' counsel examined Martinez and Martell at length about the documents in question. As reflected in the Document Index to Martinez's and Martell's depositions, these documents—payroll records, independent contractor agreements, applications to the Illinois Department of Labor, Field Worker Safety Guidelines, Workers' Compensation Insurance, etc.—are self-explanatory.

Further, Plaintiffs' counsel complain, for the first time, that Martinez and Martell failed to produce tax returns in response to Plaintiffs' Request For Production No. 44. However, Plaintiffs' August 17, 2004 and August 18, 2004 letters to Martinez and Martell, seeking to resolve the discovery dispute, did not even mention tax returns or Request for Production 44.[30] Further, Plaintiffs' Motions to Compel Discovery, which were served on September 1, 2004, mention only that Martinez and Martell failed to respond to Request for Production Nos. 10, 11, 12, 13, 20, 42, and 50, but make no specific reference to Request for Production No. 44 or to tax returns.[31] Plaintiffs' counsel never bothered to ask a single question about tax returns at the depositions of Martinez

---

[29] **Exhibit E**, p. 3.
[30] *See* August 17 and 18, 2004 Letters (attached as **Exhibit G**).
[31] *See* Plaintiffs' Motions to Compel Discovery (attached as **Exhibit H**).

and Martell. These actions indicate that Plaintiffs' newly-raised complaint about tax returns is a make-weight complaint.

Plaintiffs' counsel make blanket and unsubstantiated assertions that Martinez and Martell identified existing documents at their deposition that were not produced.[32] Simply stated, these assertions are false.[33]

C.  **Martinez and Martell complied with the Court's November 15, 2004 Order with respect to Plaintiffs' Interrogatories.**

Contrary to Plaintiffs' assertion, Martinez and Martell have amended their discovery responses to provide detailed answers to each of Plaintiffs' Interrogatories. Many of the interrogatories are improperly directed at one or both of these Defendants, and the Defendants have indicated that they cannot respond to those interrogatories. This does not make their responses "incomplete" or "inaccurate" as urged by Plaintiffs.

For example, Plaintiffs claim that Martell's response to Interrogatory No. 3 is incomplete. That interrogatory asks Martell to identify each document that he kept concerning the hiring and employment of Plaintiffs. In response, Martell states that he did not employ Plaintiffs, and therefore cannot identify any responsive documents. He volunteers, without being asked, that Martinez is in the process of obtaining documents that might be responsive to this request. Martell then states that he is unaware of any other existing documents that have not been produced. Plaintiffs now complain, with respect to Interrogatory No. 3, that "as one can identify documents whether or not they currently exist, your response is incomplete." But whether responsive documents currently exist is beside the point—Martell has responded that he did not employ Plaintiffs. If he did not employ Plaintiffs, it logically follows that there are no

---

[32] **Exhibit E, pp. 4-5.**
[33] **Exhibit B, ¶ 7; Exhibit D, ¶ 8.**

documents—previously or currently existing—relating to his employment of Plaintiffs. This is just one example of a nonsensical complaint lodged by Plaintiffs solely for the purpose of harassing these *pro se* defendants.

## VII.
## MYCOGEN'S INTEREST

Mycogen files this opposition to protect its own interest in having this case fairly determined on the merits. Plaintiffs seek to have certain evidence and testimony excluded under Federal Rule of Civil Procedure 37 on grounds that Martinez and Martell have failed to comply with the Court's November 15, 2004 Order. As stated previously, the responses of Martinez and Martell are complete and accurate, and no sanctions of any kind are appropriate in this case. Nevertheless, Mycogen files this Motion to bring the importance of Martinez's and Martell's factual testimony to the Court's attention, and to emphasize that Mycogen does not want to see this testimony excluded by the unfair and abusive tactics used against parties who cannot afford counsel.

A.  **The rendering of a default judgment or exclusion of evidence are drastic remedies that should only be imposed where a party has acted in flagrant bad faith and with callous disregard of the rules.**

Rendering a default judgment against a defendant or refusing to admit evidence that was not disclosed in discovery, both of which Plaintiffs urge here, are "drastic remedies" that should be imposed only in situations where the failure to disclose represents flagrant bad faith and a callous disregard of the rules.[34] Generally, courts have required a finding of bad faith or willful misconduct to support the severest remedies under Rule 37.[35] It is important to note that Rule 37 provides several remedies to a

---

[34] *Johnson Elec. N. Am. Inc. v. Mabuchi Mot. Am. Corp.*, 77 F. Supp. 2d 446, 459 (S.D. N.Y. 1999); *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).
[35] *Pressey*, 898 F.2d at 1021.

district judge who is faced with violations of discovery orders. The rule specifically states that "in lieu of this sanction [of total exclusion of evidence], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions."[36] It is clear that Rule 37 does not compel the district court to exclude testimony in its entirety.[37] Rather, courts should consider whether a less drastic remedy would be more tailored to the misconduct and would therefore better serve the purposes of Rule 37 and the truth-seeking function of the courts.[38]

### B. The Due Process Clause limits the imposition of drastic sanctions under Rule 37.

There are constitutional limits, stemming from the Due Process Clause of the Fifth and Fourteenth Amendments, on the imposition of sanctions. Before imposing a penalty under Rule 37, a court must determine (1) whether there is a sufficient connection between the discovery and the merits sought to be foreclosed by the sanction to justify depriving a party of the opportunity to litigate the merits, and (2) whether the party who has failed to provide discovery was *unable* to comply with the discovery.

Sanctions under Rule 37(b) are predicated upon the presence of willful disobedience, gross indifference to the right of the complaining party, deliberate callousness, or gross negligence. The sanctions are not predicated on a party's failure to fully satisfy a discovery order when the failure "was due to inability fostered neither by its own conduct nor by circumstances within its control."[39] Rule 37 was designed to empower courts to compel the production of evidence through reasonable sanctions; it

---

[36] FED. R. CIV. P. 37(c)(1); *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 784 (6th Cir. 2003).
[37] *Roberts*, 325 F.3d at 784.
[38] *Pressey*, 898 F.2d at 1021; *Johnson*, 77 F. Supp. 2d at 459.
[39] *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970).

was not designed to enable the court "to go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior."[40]

Here, Plaintiffs have demonstrated no willful disobedience, gross indifference, deliberate callousness, or gross negligence on the part of Martinez and Martell. These Defendants have responded to every discovery request propounded by Plaintiffs. Defendants cannot answer every interrogatory or produce documents in response to every request for production not because they are willfully disobedient, but because they have no information responsive to these requests. To foreclose Martinez and Martell from presenting evidence in their defense, or to render a default judgment against them for failure to answer unanswerable discovery requests, would violate the Due Process Clause of the Constitution.

C. **The testimony of Martinez and Martell is central to this case, and the exclusion of their testimony would unjustly and severely prejudice Mycogen—who has committed no sanctionable conduct.**

Mycogen has committed no sanctionable conduct, and Plaintiffs do not urge that they have. But if the Court were to exclude factual testimony of Martinez and Martell, it would effectively gut Mycogen's defense—thereby imposing a sanction on Mycogen where none is warranted. Rule 37 allows sanctions to be imposed only against the parties who actually disregard discovery orders or rules. Here, sanctions are not appropriate against Martinez and Martell, and are certainly not appropriate against Mycogen. This Court should consider Mycogen's due process rights in determining whether to impose sanctions on Martinez and Martell, and if it finds that sanctions are justified, to tailor them to protect Mycogen's right to adequately defend itself.

---

[40] *Id.* at 860-61.

## VIII
## OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Mycogen opposes an award of attorneys' fees to Plaintiffs on grounds that the incurrence of these fees was unnecessary. Martinez and Martell have been forthright with Plaintiffs' counsel since the inception of this case. They have visited Plaintiffs' counsel on two separate occasions and have provided them with documents and information. They have answered every question that was asked of them during their meetings with Plaintiffs' counsel and during their depositions.[41]

Furthermore, Martinez and Martell do not have even a rudimentary knowledge of legal procedure. Martinez reads and writes only minimal English. Any failure on the part of Martinez and Martell to comply with Plaintiffs' discovery requests is due not to a lack of diligence, but to a lack of skill.[42] It was not reasonable, necessary, nor fair for Plaintiffs' counsel to launch a paper discovery war against these *pro se* Defendants who lack the skills to respond to such a maneuver.

## IX.
## CONCLUSION AND PRAYER

In light of the foregoing, Mycogen prays that this Court deny Plaintiffs' Motion for Sanctions and Motion to Set Amount of Attorneys' Fees, and for such other and further relief as this Court deems just and proper.

---

[41] *See* Frank Hill Affidavit, ¶ 3(A) (attached as **Exhibit I**).
[42] *Id.* at ¶ 3(B).

Respectfully submitted,

By: *Gretchen Hensel*
TX Bar No. 24037170 (by permission)
Frank L. Hill
State Bar No. 09631500

THOMPSON & KNIGHT LLP
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701
Tel.: (512) 469-6100
Fax: (512) 469-6159

ATTORNEYS FOR DEFENDANT
AGRIGENETICS, INC.

### CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2005, a true and correct copy of this document was sent via certified United States mail to:

Nathaniel Norton
Texas Rio Grande Legal Aid, Inc.
300 S. Texas Blvd.
Weslaco, Texas 78596

and via regular mail to:

Pablo Martinez
c/o Country Store
1800 E. Canal Street
Belle Glade, Florida 33430

Eugene Martell
620 N. Nevada
Weslaco, Texas 78596

*Gretchen Hensel*
Frank L. Hill