# INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT (the "Agreement") is entered into and made effective as of the 28 day of June, 2002, by and between Agrigenetics, Inc., d/b/a Mycogen Seeds ("Company") whose address is 101 Elm St P.O. Box 180 Gladstone, IL 61427 AND _Pablo Martinez_ ("Contractor") whose address is _1800 E. Canal St. Belle Glade, FL 33430_ and whose Social Security or Employee Identification Number is listed with such Contractor's signature at the end of this Agreement.

The Contractor and Company hereby agree as follows:

1. **Contractor's Services and Responsibilities**:

    A. **Services**. Contractor, individually or through individuals selected by Contractor (its "Personnel") will provide each and every service to Company contracted for hereunder in accordance with the items checked (collectively the "Services"), by August, 15, 2002.

    ☐ **Roguing** - All rogues or off-type plants will be removed from within and between seed corn rows. Rogues or off-type plants which are different in height, color, shade of leaves, leaf blade width, silk color, shape of tassel, etc. will also be removed. These rogues will be completely cut off at the soil surface. The roguing work will not be complete until Company's inspector has given his or her approval that such work is satisfactory and complete.

    ☒ **Full Pull Detasseling (No Machines)** - All tassels from plants within the designated female rows, including tassels on tiller/sucker plants, will be pulled as they emerge and before shedding pollen. Contractor and its Personnel may be required to detassel on rainy days, Sundays, and holidays. Two or more trips through the field are necessary to pull all the tassels. The detasseling work will not be complete until Company's inspector has given his or her approval that such work is satisfactory and complete. Contractor and its Personnel will complete the detasseling work so as not to unduly injure or mutilate the plants by breaking stalks or pulling an excessive number of leaves.

    ☒ **Cleanup Detasseling (After Machines)** - All tassels or part tassels that remain from plants after detasseling machines have covered the designated female rows, including tassels on tiller/sucker plants, will be pulled as they emerge and before shedding pollen. Contractor and its Personnel may be required to provide such services on rainy days, Sundays, and holidays. Two or more trips through the field are necessary to pull all the tassels. The cleanup detasseling work will not be complete until Company's inspector has given his or her approval that such work is satisfactory and complete. Contractor and its Personnel will complete the cleanup detasseling work as not to unduly injure or mutilate the plants by breaking stalks or pulling an excessive number of leaves.

**EXHIBIT B**

Contractor warrants that the Services will be performed (1) in a competent and professional manner and (2) by individuals who are fully qualified to perform them.

B. **Location of Services.** Contractor agrees to perform the Services checked in Section 1A on approximately 800 acres, located in Henderson & Mercer Counties, State of Illinois.

C. **Compliance with Laws.**

1. If recruiting or hiring any migrant or seasonal workers, Contractor and each of its Personnel will obtain and maintain, if required by law, a valid Farm Labor Contractor Certificate of Registration ("Certificate"), as those terms are defined in 29 U.S.C. $1811 (the "Migrant and Seasonal Agricultural Worker Protection Act"), covering recruiting, hiring, housing, transportation, and other activities for which such a Certificate is required. Contractor warrants and represents that he has complied with all requirements under the laws of the United States and any state where such Certificates are required and that all persons engaged on his behalf in the soliciting, recruiting, hiring, employing, furnishing, or transporting of any worker pursuant to this Agreement have complied with all applicable licensing and registration requirements. If Contractor is subject to farm labor contracting licensing and certification requirements, attached hereto as Exhibit A are photocopies of Certificates issued by the United States Department of Labor for the Contractor and any other persons engaged in activities on Company's behalf pursuant to this Agreement for which Certificates are required. Contractor is using and will at all times use only employees in Contractor's workforce who are authorized to work in the United States.

2. Contractor will comply with all applicable Federal, State and local laws in performing its obligations under this Agreement, including, but not limited to, the Federal Wage and Hour Standards for Farmworkers, the Migrant and Seasonal Agricultural Worker Protection Act, the Fair Labor Standards Act, the Occupation Safety and Health Administration Field Sanitation Standards, any applicable state minimum wage and maximum hours standards. When recruiting workers to work for Contractor on the Company's property, Contractor will, as required by law, provide and read aloud to each such worker a worker disclosure document of the terms and conditions of their employment, in a form substantially in the form attached to this Agreement as Exhibit B and will obtain a signed and dated acknowledgment from each and every such worker stating that the worker received and reviewed the disclosure document. Contractor will provide to Company a copy of the signed and dated disclosure document for each worker. Contractor agrees to make no representation regarding the terms and conditions of the worker's services under this Agreement other than as described in the worker disclosure statement.

3. Contractor will, at all times, be in full and complete compliance with the employment verification procedures mandated by the Immigration Reform and Control Act of 1986, as amended, as to each of Contractor's Personnel who, at any time, provide services to Company hereunder, including, without limitation, completion and execution of I-9 Forms. Contractor represents that Contractor has complied with all of Contractor's obligations under this Section with respect to any Personnel who have already been retained by Contractor. Contractor agrees to

DEF 0004

indemnify the Company for any damages, penalties or other liability, including attorney's fees, arising out of Contractor breaching this Section 1.C.

D. **Transportation.**

1. <u>Generally</u>. Contractor will be solely responsible for transporting itself and any of its Personnel, including all costs associated with that transportation. In providing transportation to any Personnel who are migrant or seasonal workers, as those terms are defined in the Migrant and Seasonal Agricultural Worker Protection Act, Contractor will, to the extent required by law, comply with the requirements of the Migrant and Seasonal Agricultural Worker Protection Act and its regulations, including, but not limited to, the requirements for certification, driver and vehicle safety, and insurance.

2. <u>Use of Company-Leased Vehicles</u>. Contractor may request, in Contractor's sole discretion, to provide transportation to its Personnel performing the Services through certain buses leased by the Company that may be made available to Contractor for this purpose (the "Leased Buses"). To make use of any Leased Buses, Contractor must sign and return to the Company a copy of the "Mycogen Leased Vehicle Requirements" letter, attached hereto as <u>Exhibit D</u> and receive Company authorization prior to using the Leased Buses. Company reserves the right to refuse or revoke authorization to Contractor to use the Leased Buses at any time. Contractor's use of the Leased Buses shall be subject to all of the terms and conditions specified in <u>Exhibit D</u>, including without limitation that Contractor shall be responsible for all costs and expenses associated with Contractor's use of the Leased Buses.

3. <u>Indemnification for Transportation Services</u>. Contractor will be liable and hold harmless Company from any and all claims, damages or liabilities, including attorney's fees, arising from the transportation of Contractor and/or Contractor's Personnel to and from Company's fields including, but not limited to, transportation on the Leased Buses.

E. **Safety Training.** Contractor will provide management of the Personnel performing the Services, including training in all levels of field leadership, the Company's policies with regard to safety (including Workers' Protection Safety), and first aid, in accordance with Company policies and Environmental Protection Agency regulations.

F. **Record-keeping.** Contractor will provide proper record-keeping for all of its Personnel including names, addresses, social security numbers, W-4 forms, days and hours worked, OSHA records, worker' compensation records, proper tax withholding, payment of FICA and unemployment taxes, and end of the year W-2 forms. Contractor will, upon request, provide copies of those records to the Company at least once per month. Contractor will maintain those records for at least three (3) years following the end of each season of work under this Agreement.

G. **Rules and Regulations.** Contractor will be familiar with and responsible for enforcing Company's Temporary Agricultural Employee Safety Regulations, Field Safety Rules, and Hazard Communication Program.

DEF 0005

H. **Quality of Personnel.** All individuals selected by Contractor as Personnel to perform the Services shall bring sufficient useful skills and experiences to the Services as to be able to perform them in a competent and satisfactory manner. Without in any way assuming responsibility for any Personnel, Company reserves the right to approve or disapprove (including the right to withdraw such approval at any time) the assignment of any individual to perform the Services. Contractor shall cause all such Personnel performing Services under this Agreement to execute a Contractor Personnel Agreement, a copy of which is attached hereto as <u>Exhibit C</u>, prior to performing any such Services.

I. **Independent Contractor.** Contractor and each of its Personnel will be an independent contractor and not an employee, agent or representative of Company. Therefore, Contractor assumes all legal responsibility as the provider of the Personnel contributing to the performance of the Services, including (a) responsibility for payment of wages and other compensation, if any, due such Personnel and (b) compliance with all applicable Federal, state, and local tax requirements, including withholding of taxes, related to performance of Services by Contractor and its Personnel. Furthermore, Contractor and each of its Personnel shall not be considered to be Company's employees, under common law or otherwise, and shall not be entitled to participate in any plans, arrangements, or distributions by Company pertaining to or in connection with any benefit available to employees of Company. Accordingly, Company shall not withhold any taxes, including federal, state, and local income taxes, and FICA and FUTA tax on amounts paid to Contractor or its Personnel in exchange for their performance of Services, nor shall Company provide worker's compensation insurance on behalf of Contractor or its Personnel. No prior course of dealing between Company and Contractor shall be of any effect to modify in any respect the status of Contractor under this Agreement as an independent contractor. Any provision in this Agreement which may appear to give Company the right or ability to direct Contractor or its Personnel as to the means or details of doing the work or performing the Services or to exercise a measure of control over the work or Services shall mean only that Contractor and its Personnel shall follow the desires of Company in the results of the work or Services. Contractor has sole and exclusive responsibility for and control over the daily means by which Contractor and its Personnel fulfill the obligations under this Agreement.

2. **Indemnification and Insurance**

A. **Indemnification by Contractor.** Contractor agrees to indemnify and defend Company, its parents, Affiliated Companies (defined as any company that directly, or through one of its intermediaries, controls or is controlled by, or is under common control with, Company), and their respective officers, directors, employees and agents, from and against any and all claims, demands, suits, causes of action in law or in equity, expenses (including court costs and reasonable attorneys fees), and liability of any nature on account of (1) any actual or alleged damage or destruction of property or the environment, injury or death of its Personnel, agents, contractors, invitees, or visitors related in any way to Contractor's or its Personnel's performance of Services under this Agreement, unless such damage or destruction, injury, or death is caused solely by the Company's negligence or

DEF 0006

intentional misconduct, and (2) Contractor's breach of any obligation to Company under this Agreement.

B. **Indemnification by Company.** Company agrees to indemnify and defend Contractor and its officers, directors, Personnel, and agents, from and against any and all claims, demands, suits, causes of action in law or in equity, expenses (including court costs and reasonable attorneys fees), and liability of any nature on account of any actual or alleged damage or destruction of property or the environment, injury or death of persons, or action of any federal, state or local governmental agency arising out of (1) any negligent act or omission or intentional misconduct on the part of Company, its officers, employees, agents, contractors, invitees or visitors in conjunction with the performance of the Services under this Agreement by Contractor and its Personnel; or (2) breach of any obligation of Company under this Agreement.

C. **Insurance Provided by Contractor.**

1. <u>Worker's Compensation.</u>

(a) Contractor represents that Contractor carries any and all Workers' Compensation insurance that is legally required to perform Contractor's obligations under this Agreement.

(b) If Contractor carries Workers' Compensation insurance, Contractor will (i) provide Workers' Compensation insurance for Contractor and all Contractor's Personnel and supervisory Personnel in accordance with the laws of the State where the Services are to be performed and which shall have the minimum limits as required by applicable state law; and (ii) provide Company with a Certificate of Insurance as proof of such insurance.

(c) If Contractor is not required by applicable State law to provide Workers' Compensation insurance, Contractor assumes all responsibility for costs or losses associated with medical treatment and loss of wages in connection with Contractor, its Personnel, agents, contractors, invitees, or visitors related in any way to the performance of the Services by Contractor and its Personnel under this Agreement.

2. <u>General Liability Insurance.</u>

(a) Contractor shall furnish and maintain throughout the course of the Agreement Commercial General Liability insurance, including contractual liability and personal injury liability coverage, with combined single limits of not less than $1,000,000 for each occurrence.

(b) If Contractor breaches Contractor's obligation to carry Commercial General Liability insurance of the type and in the amounts described in paragraph (a) above, Contractor assumes all responsibility for costs associated with loss or damage related in any way to its or its Personnel's performance of Services under this Agreement which would otherwise be covered by such insurance.

DEF 0007

3. <u>Automobile Liability Insurance</u>. If driving while performing Services under this Agreement the Contractor will maintain automobile liability insurance on each and every unit of automobile equipment, whether owned, non-owned, hired, operated, or used by Contractor and/or its Personnel in the performance of Services under this Agreement covering injury, including death, and property damage, in an amount not less than $300,000 as a combined single limit per occurrence. This Section 2.C.3 shall not apply to Contractor's election to use the Leased Buses under Section 1.D. of this Agreement.

4. <u>Additional Insurance Requirements</u>. Contractor shall abide by the following additional insurance requirements: insurance policies (except for any Worker's Compensation Insurance under Subsection 2.C.1 above) shall name the Company as an additional insured. All such insurance policies shall be endorsed to provide that the insurer may not have any right of subrogation against the Company. All such insurance shall be primary and non-contributing with respect to any insurance carried by the Company. All such insurance to be provided by Contractor shall be endorsed to provide that at least 30 days' prior written notice shall be given to the Company in the event of cancellation or material change in the policies. Contractor shall waive any right of recovery against the Company for loss or damage covered by such insurance. Contractor shall provide the Company with a certificate of insurance, properly executed by the insurance carrier, showing all such insurance to be in force and effect

3. **Payment for Services**. Company will pay Contractor upon work completed to the satisfaction of Company and in compliance with the terms of this Agreement as follows:

A. **Detasseling** - Contractor will remove at least 99.5% of the female tassels at a base rate of $175.00/female acre, with deductions from the base rate at $5/acre for each 10% of the acreage that is machine cut/pulled. Example: if 60% of the acre is machine cut/pulled, $30/acre will be deducted from the base rate.

B. **Roguing:**

   (i)   Base rate of $ 7.00 /gross acre for the first pass.

   (ii)  Base rate of $ 6.00/gross acre for second pass.

   (iii) Late Male roguing: $ 3.00

   Base rate of $/gross acre.

All authorizations by Company of Services to be performed shall be narrowly construed. Payment by Company for Services or expenses not previously approved or agreed to by Company in writing (by inclusion in Section 1.A. or otherwise) shall be at Company's sole discretion.

C. **Loan Advances.** Should Company advance to Contractor any loan of funds for start-up expenses in conjunction with Contractor's provision of the Services, such loan shall be documented by the execution by Contractor of a promissory note in substantially the form attached hereto as Exhibit E.

D. **Offset for Amounts Owed to Company.** Contractor understands and agrees that any amounts owed by Contractor to the Company under this Agreement or in connection with the provision of the Services, including without limitation under Sections 1.D.2 or for repayment of a loan advance under Section 3(C), shall be set off against and deducted from any payments due to Contractor under this Section 3. In addition, in the event the amounts due to Company from Contractor exceed the payments due to Contractor under this Section 3, Contractor shall make full payment of any such amounts due to Company by certified check or money order within fifteen (15) days of Contractor's receipt of documentation by Company of the amounts owed by Contractor to Company.

4. **Termination.**

A. If Company determines in good faith that the work required of Contractor hereunder cannot be completed by Contractor on or before the date set forth in Section 1A, Company has the option of terminating this Agreement as to that particular field and assigning that field to another contractor. In such an event, this Agreement will remain in full force and effect as to the remaining Services.

B. Company can terminate this Agreement in its entirety at any time and will be obligated to pay Contractor only the reasonable value of Contractor's services prior to termination.

C. Termination of this Agreement will not relieve a party from any obligation hereunder accrued prior to termination.

D. Contractor may terminate this Agreement upon providing 30 days advance written notice to Company.

5. **Governing Law.** All subject matter and venue will be governed by and subject to the laws of the State of Indiana, without reference to any choice-of-law rules.

6. **Miscellaneous.** This Agreement encompasses all the understandings of the parties as to the subject matter herein and supersedes all prior agreements, whether oral or in writing. Only a writing, signed by both parties, may operate to amend this Agreement. This Agreement and the obligations and rights hereunder are not assignable by the Contractor. Except as specifically authorized in this Agreement, no portion of these Services may be subcontracted out by Contractor for performance by

any third party. A failure to enforce the terms of this Agreement shall not operate as a waiver of any subsequent breach.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the day and year first above written.

"COMPANY"

AGRIGENETICS, INC.,
d/b/a Mycogen Seeds

By: _____

Name:       James A Sheriff

Its: Field Activities Work Process Coordinator

"CONTRACTOR"

By: _____
              [Signature]

Name: Pablo Martinez
              [Print Name]

SS or EIN#: 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

# Exhibit A

## [Insert Certificates, as applicable]

## Exhibit B

## [Worker Disclosure Statement]

## Exhibit C

## CONTRACTOR PERSONNEL AGREEMENT

I, _____, in consideration of the opportunity through _____ ("Contractor"), to perform certain services for Agrigenetics, Inc. d/b/a Mycogen Seeds ("Mycogen Seeds"), and the compensation I shall receive from Contractor for performing such services, agree as follows:

1. I understand and acknowledge that I shall not, by reason of my services provided for Mycogen Seeds, become an employee of Mycogen Seeds, except to the extent that Mycogen Seeds is considered to be my "special employer" for purposes of the Occupational Safety and Health Act, and substantially equivalent provisions; and workers' compensation laws.

2. I understand and acknowledge that I shall not, as a result of my performance through Contractor of services for Mycogen Seeds, be entitled to any compensation from Mycogen Seeds or to participate in any benefit plans or programs of Mycogen Seeds or any of its affiliated companies (defined as any company that directly, or through one of its intermediaries, controls, is controlled by, or is under common control with, Company), including, without limitation, pension, 401(k), profit sharing, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, severance pay, and other similar plans, programs, and agreements, whether reduced to writing or not.

3. I will hold Mycogen Seeds and its affiliated companies (as defined above) harmless for any injury, including death or disease, to myself or any damage to my property while providing services under this Agreement unless such injury or damage is caused solely by Mycogen Seeds' negligence or intentional misconduct.

4. Upon completion of my services for Mycogen Seeds or my employment with Contractor, I shall surrender to Mycogen Seeds all property of Mycogen Seeds such as documents, computer programs, files, or data, equipment, samples, cultures, and models.

5. My obligations hereunder shall be binding upon my heirs, spouses, and legal representatives, and the terms of this Agreement are legally enforceable against me by Mycogen Seeds.

6. I understand and acknowledge that my obligations under this Agreement will survive the termination of any particular services I may perform for Mycogen Seeds and my affiliation with Contractor.

7. I understand that, in the event Mycogen Seeds should waive any part of this Agreement or that any part should be determined to be unenforceable, I am not thereby relieved from the remaining provisions of the Agreement nor shall the waiver be deemed or construed as a waiver of any other or subsequent breach. If any provision of this Agreement is held to be unreasonable as to

DEF 0013

time, scope or otherwise, it shall be construed by limiting and reducing it so as to be enforceable under then applicable law. This Agreement shall be governed by and construed in accordance with Indiana law, without regard to conflicts of law provisions.

Dated:_____   Signed:_____

                                Social Security Number:_____

Signature of Parent or Guardian (if under age 18):

Dated:_____   Signed:_____

                                Printed:_____

*Independent Contractor Agreement*

## Exhibit D
### [Insert Terms and Conditions of Leased Buses Letter]

Buses used for contract labor purposes for Mycogen Seeds must have $5,000,000 auto liability insurance. Mycogen Seeds will provide this coverage on buses that are leased to Mycogen Seeds and that are provided to contractors for "permissive use" of the bus. The cost of the bus lease will be deducted from the contractor's payment, but there will no charge for insurance coverage.

Buses leased by Mycogen Seeds that are provided to contractors as "permissive use" under Mycogen Seeds' auto liability insurance shall be available to contractors with the following guidelines for use:

- All State and local laws must be followed, including, but not limited to: drivers being properly licensed, bus maintenance kept within code, and all traffic laws.
- All bus drivers must have a valid license that allows them to drive the bus and in no event may be younger than 18 years In addition, at any time when the bus is carrying passengers, each bus must have an 18 year or older adult supervisor to maintain discipline of passengers.
- Buses shall be turned in at the end of the season in a clean, graffiti and damage free order or the imposed fines to Mycogen Seeds from the bus leasing company will be deducted from the contractor's final payment.
- Contractor shall provide a suitable storage area for the bus when not in use.
- Contractors shall submit to Mycogen a pickup and dropoff route to the plant manager.
- If buses are used in other seed company fields, the contractor must arrange for the exchange of a letter of understanding and certificate of insurance, in a form reasonably acceptable to Mycogen Seeds, between the other seed company and Mycogen Seeds.

DEF 0016