United States District Court
Southern District of Texas
ENTERED

MAR 0 8 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk ⎯⎯⎯⎯

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| ARMANDO ALONSO, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action B-04-005 |
| | § | |
| AGRIGENETICS, INC. | § | |
| D/B/A MYCOGEN SEEDS, ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

BE IT REMEMBERED that on March _7_, 2005, the Court considered defendant Agrigenetics, Inc. d/b/a/ Mycogen Seeds' ("Mycogen") motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue.  Dkt. No. 12.

## I.      INTRODUCTION

Plaintiffs, agricultural migrant workers from Cameron and Hidalgo Counties, Texas, file suit alleging that in 2002 the defendants violated the Agricultural Worker Protection Act ("AWPA"), the Fair Labor Standards Act ("FLSA"), a number of Illinois laws, and the common law.  Defendant Mycogen is a Delaware corporation with its registered agent for service of process located in Chicago, Illinois.  Defendant Eugene Martell ("Martell") is a resident of Weslaco, Texas.  Defendant Pablo Martinez ("Martinez") maintains a residence in Mercedes, Texas, and his AWPA farm labor contractor certificate lists an address for Dade City, Florida.  The defendants are proceeding separately, with the two individuals continuing *pro se*.

Mycogen filed the present motion on April 13, 2004.  Dkt. No. 12.  The plaintiffs filed a response on May 3, Dkt. No. 15, followed by Mycogen's reply on May 24, Dkt. No. 17. After reviewing the briefs and relevant law, the Court **DENIES** Mycogen's motion in its

entirety.

## II.    STANDARD OF REVIEW

When a defendant properly seeks dismissal for lack of personal jurisdiction pursuant to Fed.R.Civ.Pro. 12(b), the plaintiff bears the burden of establishing that jurisdiction over the defendant exists.  Central Freight Lines, Inc. v. APA Transport Corp., 322 F.3d 376, 380 (5th Cir. 2003).  If an evidentiary hearing pertaining to the defendant's motion is not held, the plaintiff need only present sufficient facts to establish a *prima facie* case supporting personal jurisdiction.  Id.  In doing so, the plaintiff may produce affidavits and other documentation recognized as a method of discovery.  Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).  Additionally, "all reasonable inferences . . . are drawn in favor of the prevailing plaintiff."  Felch v. Transportes Lar-Mex SA De CV, 92 F.3d 320, 327 (5th Cir. 1996).  The Court shall accept as true the plaintiff's uncontroverted and non-conclusory allegations.  Freudensprung v. Offshore Tech. Servs., 379 F.3d 327, 343 (5th Cir. 2004); Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001) (finding that conclusory allegations, even if uncontroverted, need not be credited).

## III.    FACTUAL BACKGROUND

Defendant Mycogen owns and operates a cornfield in Henderson and Mercer Counties, Illinois.  Mycogen's Motion to Dismiss, Dkt. No. 12, at Declaration of Allison McDonald.  Defendant Martinez[1] was hired by Mycogen to recruit agricultural workers to detassel corn.  Plaintiff's Response, Dkt. No. 15, at Affidavit of Eugene Martell.  As Defendant Martell, who assisted Martinez in recruiting the plaintiffs, explains:

---

[1] The plaintiffs aver that both Martell and Martinez were Mycogen's employees. Plaintiffs' First Amended Complaint (PFAC), Dkt. No. 20, p.9; see Freudensprung, 379 F.3d at 343 ("[In a personal jurisdiction analysis,] the Court shall accept as true the plaintiff's uncontroverted and non-conclusory allegations.").  The defendants, however, have supplied the record with sufficient evidence to controvert the plaintiffs' assertion. See, e.g., Eugene Martell's Supplemental Answers to Interrogatories, Dkt. No. 30, p.2. The distinction effects no difference in the Court's analysis.  Nonetheless, for sake of clarity and for the purposes of this Order only, the Court will presume that Martell was employed by Martinez and not Mycogen.

2

> I have worked on a seasonal basis with Pablo Martinez
> and Mycogen [] for the last 3 or 4 years. . . .  I am paid a
> weekly salary and I have various job duties.  As part of my
> work duties, I help Pablo Martinez meet with and talk to
> workers in Texas about the employment that they are being
> offered with Mycogen. . . .
> . . .
> Before I worked with Pablo, there was another man from [the
> Rio Grande] Valley who worked with him doing the same thing
> that I now do.  Pablo has worked for Mycogen and Cargill
> [Mycogen's corporate predecessor] for six or seven years.
> Many of the workers recruited here in Texas are people
> that [sic] have previously worked with Pablo for Mycogen.

Id.

In the summer of 2002, Martell and Martinez recruited the plaintiffs in the present action to work at Mycogen's Illinois cornfield.  PFAC, Dkt. No. 20, p.4.  The recruiting, which occurred at Martinez's home in Mercedes, Texas, consisted of Martell and Martinez discussing the type of work, the terms of employment, and the living arrangements provided for by Mycogen in Mt. Pleasant, Iowa (near the Illinois cornfield).  Plaintiffs' Response, Dkt. No. 15, at Affidavits of Eugene Martell & Jose Aguillon.  Martell and Martinez provided the foregoing information by "using documents and information provided by Mycogen."[2] Id. at p.4; Affidavit of Eugene Martell.  There is no evidence that Martinez worked for, or that the plaintiffs were recruited for, any other company other than Mycogen.  Additionally, a few of the plaintiffs had been recruited by Martinez to work for Mycogen in years past.  PFAC, Dkt. No. 20, p.5.

After the plaintiffs agreed to the offered terms, Martinez coordinated the plaintiffs' transportation to Iowa.  Plaintiffs' Response, Dkt. No. 15, at Affidavit of Eugene Martell.

---

[2]At the initial pretrial conference held on May 24, 2004, plaintiffs' counsel described these documents as, "agricultural protection act disclosures . . . that include information about weeks of work available, hours of work, wages to be paid, [and] type of work."  These documents purported to describe whether housing, transportation, and workmen's compensation were to be provided.  Lastly, plaintiffs' counsel stated that Mycogen sent these materials to Martinez to "describe the forms and conditions of employment in Illinois."  A copy of these documents is not contained in the record.

Upon their arrival, the plaintiffs discovered that the employment terms and living conditions were not as represented. PFAC, Dkt. No. 20, pp.6-9.

When the work was complete, the plaintiffs returned to Texas. Plaintiffs' Response, Dkt. No. 15, p.6. After the plaintiffs complained about not receiving their final paychecks, Mycogen mailed the plaintiffs' checks to Martell to distribute. Id. at Affidavit of Eugene Martell.

## IV.    DISCUSSION

### A.    Personal Jurisdiction over Mycogen

Because the AWPA and FLSA are silent with respect to service of process, this Court may exercise personal jurisdiction over the defendants only to the extent Texas courts are permitted. Aviles v. Kunkle, 978 F.2d 201, 204 (5th Cir. 1992). To determine whether it can exercise personal jurisdiction over a nonresident defendant, this Court must determine:  (1) whether the Texas long-arm statute is satisfied, and (2) whether the exercise of personal jurisdiction comports with due process. Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). Importantly, the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by due process. Panda Brandywine Corp., 253 F.3d at 867 (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990)). Consequently, the Court proceeds directly to the constitutional analysis. Id.

In accordance with due process, this Court may exercise personal jurisdiction over a defendant if minimum contacts exist between the defendant and the forum, and the maintenance of the action would not offend "traditional notions of fair play and substantial justice." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)).

#### 1.    Minimum Contacts

Minimum contacts may be established by a showing of specific or general jurisdiction. Id. Specific jurisdiction is present where the defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Id. (quoting Burger King Corp. v. Rudzewicz, 471

4

U.S. 462, 472 (1985)). "So long as it creates a substantial connection with the forum, even a single act can support jurisdiction." Burger King Corp., 471 U.S. at 475 n.18. Jurisdiction, however, is not proper when a defendant's contacts are fortuitous or result from the unilateral activity of another party. Id. at 475. The contacts must be such as to provide the defendant "clear notice that it is subject to suit" in the forum state. World-Wide Volkswagen, 444 U.S. at 297.

On the other hand, where "a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum . . . a court may exercise general jurisdiction when the defendant has engaged in 'continuous and systematic contacts' in the forum." Freudensprung, 379 F.3d at 343 (quoting Nuovo Pignone, SpA v. Storman Asia M/V, 379 F.3d 327, 378 (5th Cir. 2002)).

### i.    Mycogen's Motion

Litigants are "to exercise great diligence in challenging personal jurisdiction . . . ." Golden v. Cox Furniture Mfg., 683 F.2d 115, 118 (5th Cir. 1982). When motioning a court, the movant "shall state *with particularity* the grounds therefor . . . ." Federal Rules of Civil Procedure ("FRCP") Rule 7(b)(1) (emphasis added). The particularity requirement is meant "to give notice of the basis for the motion to the court and the opposing party so as to avoid prejudice, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 793 (8th Cir. 2003); see also Allen v. Rector, 2001 WL 694035, at *1 (W.D.Tex. 2001) ("The purpose of the particularity requirement in [FRCP Rule] 7(b)(1) . . . is to afford notice and an opportunity to respond."). At least one Circuit Court has held that a defendant's failure "to indicate the grounds for his jurisdictional challenge or to provide the court with facts that would be relevant in determining whether *in personam* jurisdiction was lacking" violates Rule 7(b)(1)'s particularity requirement and constitutes waiver of the personal jurisdiction defense. Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71, 74 (8th Cir. 1988); see also Talano v. Northwestern Med. Faculty Found., 273 F.3d 757, 760-61 (7th Cir. 2001) (concluding the "particularity" requirement of FRCP Rule 7(b)(1) unsatisfied in a Rule 59(e) motion that simply listed "several reasons" as basis for

motion (citing <u>Davis v. Hill Eng., Inc.</u>, 549 F.2d 314, 325 (5th Cir. 1977))); <u>Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin</u>, 957 F.2d 515, 516 (7th Cir. 1992) ("[A] motion giving no reasons has no effect."); <u>Marrogi v. Howard</u>, 248 F.3d 382, 383 n.1 (5th Cir. 2001) ("Unlike subject matter jurisdiction, personal jurisdiction can be acquiesced in or waived.") <u>Brickwood Contractors, Inc. v. Datanet Eng. Inc.</u>, 369 F.3d 385, 394 (4th Cir. 2004) (finding that unlike subject matter jurisdiction, personal jurisdiction may be waived).

As noted above, two theories exist under which minimum contacts may be satisfied, specific and general jurisdiction. Importantly, these theories are disjunctive. <u>Panda Brandywine Corp.</u>, 253 F.3d at 867 ("Minimum contacts can be established either through contacts sufficient to assert specific jurisdiction, *or* contacts sufficient to assert general jurisdiction." (internal quotations omitted and emphasis added)). In other words, if a Court determines that specific jurisdiction is lacking, the analysis is not complete and a ruling on whether general jurisdiction exists may be required, or vice-versa.

Mycogen's sole argument against the propriety of personal jurisdiction centers upon specific jurisdiction. Mycogen states that it "did not recruit Plaintiffs, had no contact with the Plaintiffs prior to their arrival at the Illinois worksite [sic], and did not enter into any agreement with the labor contractor regarding how or where the labor recruiting was to be conducted." <u>Mycogen's Motion to Dismiss</u>, Dkt. No. 12, at p.5. Nowhere in its motion or reply brief, however, does Mycogen discuss, present facts negating, or even mention general jurisdiction.[3] See <u>Freudensprung</u>, 379 F.3d at 343 ("[A] court may exercise general

---

[3]Not only did Mycogen fail to provide any facts negating the existence of general jurisdiction, it failed to cite related authority or the theory itself. <u>See</u> Local Rule 7.1(B) (requiring all motions to "[i]nclude or be accompanied by authority").

Additionally, at the initial pretrial conference held on May 24, 2004, the Court allowed Mycogen's counsel to argue the motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer. Mycogen's counsel chose to exclusively argue for transfer and never mentioned personal jurisdiction. <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotations omitted)); <u>Hamilton v. Atlas Turner, Inc.</u>, 197 F.3d 58, 61 (2d Cir. 1999) (employing the <u>Olano</u> distinction in the personal jurisdiction context).

6

jurisdiction when the defendant has engaged in *continuous and systematic* contacts in the forum." (internal quotations omitted and emphasis added)). Mycogen furnishes nothing that the plaintiffs or this Court could "reasonably" employ in assessing whether general jurisdiction exists. See Talano, 273 F.3d at 760 ("The standard for [FRCP 7(b)(1)] particularity has been determined to mean reasonable specification." (internal quotations omitted)). This will not do.

Normally, when a defendant motions to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of establishing the sufficiency of the defendant's minimum contacts with the forum. Central Freight Lines, 322 F.3d at 380. However, the plaintiff need not address this query until the issue is suitably raised. The burden of establishing a personal jurisdiction defense is incumbent upon the defendant and cannot be properly raised and preserved without factual support. Neither the plaintiffs, nor this Court for that matter, should have to supply the motion's deficiency. There is no distinction between Mycogen's failure to address general jurisdiction and a party failing to raise the issue of personal jurisdiction all together. Importantly, the Court would not fault Mycogen for omitting the general jurisdiction analysis if it had never entered the State of Texas. However, as explained by the plaintiffs, Mycogen possesses numerous contacts with Texas that argue directly towards a compelling finding of general jurisdiction.

> Mycogen has used Texas farm labor contractors, including Martinez and Martell for a number of years to recruit Texas migrant workers. In 2002, at a single facility, Mycogen employed approximately 60 migrant workers as part of the crew supervised by Martell and Martinez. Mycogen has also provided seasonal employment to South Texas migrant workers, including several of the Plaintiffs, over the course of several years. Because of its use of Texas migrant workers, Mycogen has been sued in Texas by other Texas migrant workers who have alleged claims similar to the ones at bar. .
> . .
>
> Mycogen also conducts agricultural/operations in Texas and conducts business in Texas. [For example,] Mycogen's [sic] has appointed a registered agent for service of process in Texas . . . . [Furthermore,] as noted in the Federal Register, Mycogen [] seeks to extend an existing experimental use permit (EUP) issued by the [EPA] for the testing and breeding of maize from 2004 through 2006. In pertinent part, the notice

7

> provides that [Mycogen will use property in Texas for testing
> maize]. . . . In addition, as evidenced by a lawsuit filed against
> Mycogen [] in 2000[4] by another group of migrant farmworkers
> [sic], Mycogen has maintained a Texas agricultural presence
> and employed Texas migrant farmworkers [sic] since at least
> 1998.

Plaintiffs' Response, Dkt. No. 15. pp.12-13.[5] Mycogen never addresses these assertions. Rather, in its reply, Mycogen merely inserts a footnote disputing some of plaintiffs' factual allegations concerning specific jurisdiction and reserving its right to subsequently raise the personal jurisdiction issue. Additionally, at the initial pretrial conference, when provided with an opportunity to argue its motion to dismiss, or in the alternative, its motion to transfer, Mycogen chose to exclusively argue for the transfer of the case.

Under the circumstances, the Court finds that Mycogen failed to comply with the particularity requirement of FRCP Rule 7(b)(1) by not addressing and providing facts negating general jurisdiction in its motion to dismiss for lack of personal jurisdiction. Accordingly, the Court concludes that Mycogen has waived the personal jurisdiction defense and denies Mycogen's motion to dismiss.[6]

### ii.    Mycogen's Contacts

Notwithstanding its failure to properly raise the issue, the Court finds that Mycogen's contacts with Texas satisfy the requirements of specific jurisdiction based on the plaintiffs' uncontroverted facts. The Court finds persuasive the decision in Astorga v. Connleaf, Inc.,

---

[4]Martinez v. Agrigenetics, Inc. d/b/a/ Mycogen Seed, DR-00-CA-44 (W.D.Tex. 2000).

[5]It is of no consequence that plaintiffs addressed both specific and general jurisdiction while Mycogen's motion only refers to specific jurisdiction. See Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004) (concluding that inadequately raised personal jurisdiction defense not saved by plaintiff addressing defendant's personal jurisdiction arguments).

[6]The Court is compelled to point out that Mycogen's motion violates Section 7.1(B) of the Local Rules, which requires a motion to contain authority. Because it fails to appropriately cite any case law concerning the general jurisdiction theory of personal jurisdiction, Mycogen's motion violates Rule 7.1(B).

962 F. Supp. 93 (W.D.Tex. 1996). In a fact pattern similar to the present case, Connleaf, an out-of-state employer, utilized a Texas labor contractor to recruit and hire migrant workers from Texas to harvest its crop. Id. at 94. Subsequently, when the migrant workers sued Connleaf in Texas for violations of AWPA and FLSA, Connleaf moved to dismiss for lack of personal jurisdiction. Id. The Court found that specific jurisdiction existed since: (1) Connleaf worked closely with the labor contractor to recruit agricultural workers in 1994; (2) Connleaf sent the labor contractor materials in Texas to aid in recruitment; (3) Connleaf initiated phone calls to the labor contractor; (4) Connleaf sent the labor contractor a fee and additional money for the migrant workers' travel expenses; and (5) that the migrant workers were recruited in Texas. Id. at 95.

Acknowledging the limited amount of discovery conducted between the parties when the related briefs were filed, the Court concludes that Mycogen's contacts are sufficient for a showing of minimum contacts. Hall v. Environmental Chem. Corp., 64 F. Supp. 2d 638, 642 (S.D.Tex. 1999) (noting the limited discovery conducted between parties in assessing minimum contacts). Mycogen and its corporate predecessor, Cargill, have employed Martinez for at least six years to recruit workers in Texas.[7] Mycogen has also employed

---

[7]The Court must emphasize that it is not imputing Martinez's actions (or Martell's for that matter) to Mycogen. In utilizing Mycogen's relationship with Martinez in its analysis, the Court finds the simple act of hiring Martinez, even as an independent contractor, still constitutes a substantial contact with Texas.

Nonetheless, it would be reasonable to infer, without deciding, that Martinez may have acted as Mycogen's agent for two reasons. First, the length and specific nature of the relationship suggests Mycogen exerted a significant amount of control over Martinez. See Burger King Corp., 471 U.S. at 480 n.22 (concluding that activities carried out on the behalf of a party "may sometimes be ascribed to the party"); Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp, 113 S.W.3d 889, 896 (Tex.App.-Dallas 2003) ("One of the elements of an agency relationship is the principal's right to control the agent in carrying our the assigned task."); see also Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1191 (9th Cir. 2002) (finding, in the context of a migrant workers' lawsuit, the existence of ongoing relationship between employer and recruiters as an indication of agency relationship).

Second, Mycogen supplied Martinez with documents providing information such as the amount of work available, the type of work, the wages paid, and whether housing, transportation, and workmen's compensation were furnished. The distribution of these documents would lead a reasonably prudent person to believe that Martinez had the apparent authority to contractually bind Mycogen. Builders Transp. Inc v.

some of the plaintiffs in previous years. There is no evidence that Martinez or Martell recruited for any other company in Texas. It is reasonable to infer from these facts that a close relationship existed between Martinez and Mycogen. See Felch, 92 F.3d at 327 ("[A]ll reasonable inferences from the facts thus established are drawn in favor of the prevailing plaintiff."). In conjunction with recruiting, Mycogen sent materials concerning the offered working and living conditions to Martinez in Texas. Additionally, when the plaintiffs complained about not receiving their final paychecks, Mycogen sent the checks, which were insufficient, to Martell (Martinez's employee) in Texas to distribute to the plaintiffs.[8]

Because Martinez acted as independent contractor rather than an agent, Mycogen argues, specific jurisdiction is lacking since Mycogen "had no contact with the Plaintiffs prior to their arrival at the Illinois worksite [sic], and did not enter into any agreement with the labor contractor regarding how or where the labor recruiting was to be conducted." Mycogen's Motion to Dismiss, Dkt. No. 12, p.5. The Court disagrees. Although a contract or express agreement may not exist between Martinez and Mycogen, it is reasonable to infer that Mycogen intended or directed Martinez to recruit in Texas since it employed him there for at least six years. Additionally, Mycogen at the very least influenced recruitment

---

Grice-Smith, 2004 WL 2474435, at * 6 (Tex.App.-Waco 2004) (finding that a principal may be bound by an agent's conduct if the agent acts with actual or apparent authority (citing Celtic Life Ins. v. Coats, 885 S.W.2d 96, 98 (Tex. 1994)); see also Baptist Meml. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 949 (Tex. 1998) (Apparent authority arises in two situations: (1) where a principal knowingly permits an agent to hold itself out as having authority; or (2) where the principal acts in a manner that "would lead a reasonably prudent person to believe an agent had authority to so act."); Burnside, 113 S.W.3d at 896 ("[A]n agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances."). Furthermore, and again without deciding, because Mycogen sent paychecks to Martell in Texas to distribute to the plaintiffs, Mycogen's relationship with Martell arguably may also satisfy the aforementioned agency analysis.

[8]The Court recognizes the Fifth Circuit's decision in Aviles v. Kunkle, 978 F.2d 201 (5th Cir. 1992). There, the Fifth Circuit dismissed a migrant workers' action for lack of personal jurisdiction since the defendants' "only contact with Texas was one telephone call and one letter which merely advised plaintiffs of the start date of the employment they had already accepted the previous summer . . . ." Id. at 205. Here, Mycogen's contacts easily surpass one phone call and a single letter.

by providing Martinez with documents that contained important information concerning wages and the amount of available work. Accordingly, the Court finds that Mycogen's conduct resulted in sufficient contact with the plaintiffs in Texas to confer specific personal jurisdiction.

These contacts are not fortuitous or random because Mycogen hired Martinez to recruit in Texas. Furthermore, Martinez solely recruited for Mycogen in Texas in previous years. Lastly, a number of the claims derive from Mycogen's contacts with Texas. Specifically, plaintiffs claim that Mycogen violated the AWPA in Texas, *inter alia*, by not taking reasonable steps in determining whether the farm labor contractors possessed a valid certificate of registration. Additionally, plaintiffs allege that Mycogen violated the FLSA in Texas when it mailed deficient paychecks to the plaintiffs in Texas.

Lastly, although the Court recognizes that these contacts are not extensive,[9] certain considerations, *see infra*, "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King Corp., 471 U.S. at 477.


### 2.    Fair Play and Substantial Justice

If minimum contacts exist, the Court must determine whether exercising personal jurisdiction over the defendant would offend traditional "notions of fair play and substantial justice." Burger King Corp., 471 U.S. at 476. In doing so, the Court must consider: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." Gonsalez Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590, 595

---

[9]The Court's decision is nonetheless in accordance with numerous courts presented with similar facts. See Ochoa v. J.B. Martin & Sons Farms, Inc. 287 F.3d 1182 (9th Cir. 2001); Gonsalez Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590 (W.D.Tex. 2002); Villalobos v. N.C. Growers Assoc., 42 F. Supp. 2d 131 (D.P.R. 1999); Astorga v. Connleaf, Inc., 962 F. Supp. 93 (W.D.Tex. 1996) Moncevoir Hyppolite v. Gorday, 1990 WL 80684 (S.D.Fla. 1990); Neizil v. Williams, 543 F. Supp. 899 (M.D.Fla. 1982) (listing numerous unpublished cases); Garcia v. Vasquez, 524 F. Supp. 40 (S.D.Tex. 1981); Aguero v. Christopher, 481 F. Supp. 1272 (S.D.Tex. 1980).

11

(W.D.Tex. 2002) (citing Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 113 (1987)). In order to defeat jurisdiction after purposefully directing its activities toward forum residents, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477.

Mycogen does not argue this point and therefore fails to "present a compelling case" against the exercise of personal jurisdiction. Nonetheless, under the circumstances, the Court finds the exercise of jurisdiction over Mycogen reasonable. The plaintiffs should not have to seek redress in another forum when Mycogen's actions in Texas constitute sufficient and purposeful conduct, which allegedly caused injury to the plaintiffs. Furthermore, the burden on Mycogen, a corporation, pales in comparison to that of the plaintiffs. As migrant agricultural workers, it is reasonable to infer that the plaintiffs would be financially precluded from pursing this action unless their claims remain in Texas. Plaintiff's Response, Dkt. No. 15, p.20; Astorga, 962 F. Supp. at 96. Lastly, Texas has a paramount interest in providing its citizens convenient and effective relief against non-resident corporations that recruit residents within its borders. Astorga, 962 F. Supp. at 96 (finding Texas codification of this interest at Tex.Civ.Prac.&Rem. Code § 17.042(3) ("[A] nonresident does business in [Texas] if the nonresident . . . (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.")). Accordingly, the Court finds that the exercise of personal jurisdiction over Mycogen is permissible.

### B.    Venue

In relevant part, 28 U.S.C. § 1404(a) provides that "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." According to Van Dusen v. Barrack, 376 U.S. 612, 616 (1964), the goal of § 1404 "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." When a party motions for a transfer of venue, the heavy burden in establishing the propriety of transfer lies with the movant. See Gonsalez Moreno, 182 F. Supp. 2d at

598 (stating that moving party bears the "burden of demonstrating that the balance of convenience and justice *substantially* weigh in favor of transferring" the action (emphasis added)); see also Islas v. Adams, 1999 WL 893842, at *2 (S.D.Tex. 1999) ("The Plaintiff's choice of forum will not be disturbed unless the Court finds the balance to be *strongly* in favor of the Defendants." (emphasis added)). The decision to transfer a case rests within the district court's sound discretion and will be overturned only for an abuse of that discretion. Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989).

The Court must first determine whether this action originally could have been brought in the Central District of Illinois. In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003). As noted *supra*, jurisdiction for this action is grounded on federal question since the plaintiffs allege violations of the AWPA and FLSA.[10] Thus, unless these two statutes alter the appropriate choice of venue, this Court must adhere to 28 U.S.C. § 1391(b).

AWPA provides that "any person aggrieved by a violation of this chapter . . . may file suit in any district court of the United States having jurisdiction over the parties, . . . without regard to citizenship of the parties." 29 U.S.C. § 1854(a). Therefore, under AWPA, when a court has personal jurisdiction over the parties, the case is properly venued in that court. See Islas, 1999 WL 893842, at *1; Villalobos v. N.C. Growers Ass'n, 42 F. Supp. 2d 131, 141-42 (D.P.R. 1999); Astorga, 962 F. Supp. at 96; Stewart v. Woods, 730 F. Supp. 1096 (M.D.Fla. 1990). There is little question that Mycogen is subject to the jurisdiction of the district court in the Central District of Illinois since Mycogen's field, where the plaintiffs worked, is located within that district. Mycogen's Motion to Dismiss, Dkt. No. 12, p.2. Furthermore, because of Martell and Martinez's extensive involvement with the plaintiffs and Mycogen in Illinois, they too are subject to the Central District's jurisdiction.

The FLSA is silent as to venue. Therefore, the Court must decide whether § 1391(b) would allow this cause of action to be brought in the Central District of Illinois. In relevant part, § 1391(b) provides that a federal question civil suit may

be brought only in (1) a judicial district where any defendant

---

[10]The state law claims are within this Court's supplementary jurisdiction. See 28 U.S.C. § 1367(a).

> resides, if all defendants reside in the same State, (2) a judicial
> district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or (3) a judicial district in
> which any defendant may be found, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(b).

      The plaintiffs allege that the defendants violated FLSA by not paying the plaintiffs' appropriate wages for their work at the Illinois field. Additionally, the plaintiffs claim, *inter alia*, that the Mycogen violated AWPA in the Central District of Illinois by failing to: (1) comply with the terms of the working agreement, (2) pay each plaintiff owed wages, (3) to make, keep, and preserve pay records, and (4) to conspicuously post a poster setting forth the plaintiffs' rights and remedies in their place of employment. The Court finds these allegations to constitute a "substantial part of the events" that led to the current lawsuit. 28 U.S.C. § 1391(b). Accordingly, this case could have been brought in the Central District of Illinois.

      The Court next considers "all the relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different [venue]." Peteet, 868 F.2d at 1436; Laitram Corp. v. Hewlett-Packard Co., 120 F. Supp. 2d 607, 608 (E.D.La. 2000). Besides examining the convenience of the parties and material witnesses, the determination of transfer turns on the analysis of a number private and public factors. In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).

> The private concerns include: (1) the relative ease of
> access to sources of proof; (2) the availability of compulsory
> process to secure the attendance of witnesses; (3) the cost of
> attendance for willing witnesses; and (4) all other practical
> problems that make trial of a case, easy, expeditious and
> inexpensive.

Id. The public factors include:

> (1) administrative difficulties flowing from court congestion; (2)
> the local interest in having localized interests decided at home;
> (3) the familiarity of the forum with the law that will govern the
> case; and (4) the avoidance of unnecessary problems of

conflict of laws of the application of foreign law.

Id. Importantly, the "general rule is that the plaintiff's choice of forum is not to be disturbed unless the balance weighs strongly in the defendant's favor." Sabre Inc. v. Northwest Airlines, Inc., 2004 WL 2533867, at *5 (N.D.Tex. 2004) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)); Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. 'Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.'" (quoting Rodriguez v. Pan American Life Ins., 311 F.2d 429, 434 (5th Cir. 1962) rev'd on other grounds, 376 U.S. 779 (1964))).

### i.    Convenience of the Parties and Material Witnesses, and Cost of Attendance for Willing Witnesses

When determining whether to grant a motion to transfer, the Court is to consider the convenience of all the parties – not just the party filing the motion. See 28 U.S.C. § 1404(a) ("For the convenience *of parties and witnesses*, in the interest of justice, a district court may [grant a motion to] transfer . . . ." (emphasis added)); see also Int'l Union, U.A.W. v. Aluminum Co. of Am., 875 F. Supp. 430, 433 (N.D. Ohio 1995) (In analyzing the propriety of transfer of venue, "this Court must consider the convenience of *all* parties . . . ." (emphasis in original)).

Mycogen argues that transfer is proper since most of its employees and witnesses live in either Illinois or Indianapolis and that the cost of travel will be especially inconvenient. Although these costs are an obvious inconvenience to Mycogen, they do not persuade the Court. Continental Airlines, Inc. v. Am. Airlines, Inc., 805 F. Supp. 1392, 1397 (S.D.Tex. 1992) (The convenience of the defendant's employees is "entitled to less weight" since the defendant "will be able to compel their testimony at trial."). First, the plaintiffs, migrant agricultural workers, will not be able to financially pursue this litigation if transferred to Illinois. Plaintiff's Response, Dkt. No. 15, p.20; see also Flores v. Triumph Seed Co., 2004 WL 1950325, at *1 (S.D.Tex. 2004) ("[V]enue is proper in the Southern

15

District of Texas [because] it is far less burdensome on the [corporate] defendant to defend this action in the Southern District than it would be for migrant laborers to prosecute this claim many miles from their homes." (citing Aguero, 481 F. Supp. at 1275)). Furthermore, although suit in Texas is inconvenient for Mycogen, it is arguably much more suitable for defendants Martell, who resides in Texas, and Martinez, who owns a residence in Texas. Additionally, the plaintiffs intend to call other workers allegedly recruited to work for Mycogen and family members to testify, all who reside in South Texas. Mycogen simply wishes to transfer its inconvenience to the plaintiffs, and this the Court will not allow. See Int'l Union, U.A.W., 875 F. Supp. at 433 ("[T]ransfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other."). Therefore, Mycogen fails to convince the Court that trial in Illinois versus in Texas would be more convenient for all of the parties and witnesses.

### ii.    Relative Ease of Access to Sources of Proof

Mycogen avers that because all relevant documents it possesses are located in Illinois or Indiana, and that the alleged sub-standard housing is located in Iowa, that trial should be held in Illinois. Documents must be transported wherever the trial is held, and such being the case, the location of the documents is a mutual consideration. The number of documents allegedly found in Illinois versus Texas favors the transfer of this case. Additionally, the proximity of the Rock Island Division of the Central District of Illinois to Mycogen's field further favors transfer.

### iii.    Availability of Compulsory Process

Because its "key witnesses and almost all of the relevant non-party witnesses live outside Texas and outside this Court's [Fed.R.Civ.Pro. 45(b)(2)] 100-mile subpoena range," Mycogen contends that transfer to Illinois is appropriate. Mycogen's Motion to Dismiss, Dkt. No. 12, p.9. Mycogen, however, fails to even hint at who these unwilling witnesses are. This Court is not willing to transfer a suit because Mycogen may at some undisclosed point in the future call an unidentified and potentially unwilling witness. Furthermore, the only other witnesses Mycogen refers to in its brief are its own employees.

16

Mycogen does not explain why it would be unable to procure trial or deposition testimony from these employees. Therefore, Mycogen's argument is unpersuasive and the Court finds this factor to encourage not transferring the case.

### iv.    Court Congestion

Mycogen argues that this Court's congested civil and criminal dockets counsel transfer of this case. The Court disagrees. First, Mycogen fails to provide any docket statistics from the Rock Island Division. This Court, therefore, has no way of knowing whether the Rock Island Division's docket is any less congested than this Court's. Second, although courts have analyzed this factor by citing the dire criminal load our dockets bear, this Court believes that it should only consider its civil docket. Morales v. Ford Motor Co., 313 F. Supp. 2d 672, 685 (S.D.Tex. 2004). In short, this Court's civil docket is manageable. Hence, maintaining the present action is encouraged.

### v.    Local Interest, Familiarity with the Law, and Avoidance of Unnecessary Conflict of Law Problems with Foreign Law

Mycogen fails to argue any of these points. Nonetheless, the Court finds that South Texas has a paramount interest in providing its citizens convenient and effective relief against nonresident corporations that recruit its resident migrant workers. Furthermore, this Court is quite able and willing to apply Texas, Illinois, or federal law as the circumstances dictate. Action Indus. v. U.S. Fidelity & Guaranty Co., 358 F.3d 337, 340 (5th Cir. 2004) (finding that in weighing familiarity with law factor, the defendant failed to establish that federal court in Mississippi was either "unable or unwilling to apply Tennessee law"). Lastly, consideration of complications arising from the application of foreign law is inapplicable under the circumstances.

### vi.    Where the Events at Issue took Place

The Court must also consider where the events leading up to the present litigation took place. See, e.g., Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 729 (S.D.Tex. 2002). Mycogen argues that its alleged wrongful activity occurred only in Illinois. Even

assuming the plaintiffs did not allege misconduct by Mycogen in Texas, which they have, Mycogen's argument is ineffectual – it does not address Martell and Martinez's alleged misdeeds in Texas (i.e., engaging in farm labor contracting activities without being properly registered and authorized to engage in such activities in violation of 29 U.S.C. § 1811(a)). Considering all of the plaintiffs' claims, the Court finds that a number of the alleged misdeeds occurred in both Illinois *and* Texas. Mycogen offers nothing to persuade this Court that the alleged unlawful conduct in Illinois some how supercedes the actions in Texas. Therefore, this factor also suggests denying transfer.

### vii.    The Interests of Justice in General

Lastly, the Court must consider whether, "in the interest of justice," transfer is appropriate under the circumstances. 28 U.S.C. § 1404(a). Mycogen argues that this case has little or no factual connection with South Texas. The Court, again, disagrees. Defendants Martell and Martinez have strong ties to this forum, a number of the alleged wrongs occurred here, and all the plaintiffs and a majority of their witnesses hail from South Texas. Mycogen offers nothing to convince this Court that this case's factual connection with Illinois is so strong that the interests of justice counsel transfer.

As mentioned earlier, requiring these migrant workers to return to the forum where the defendant resides would eviscerate these claims. This result would subvert congressional effort in AWPA to protect migrant workers. See, e.g., Flores, 2004 WL 1950325, at * 1; Islas, 1999 WL 893842, at *2 ("This Court finds that requiring [migrant worker] Plaintiffs to prosecute their claims in [a different venue] would seriously dilute the Congressional effort to protect migrant workers, as set forth in [AWPA]."); see also Gonsalez Moreno, 182 F. Supp. 2d at 597-99 (denying motion to transfer in non-AWPA migrant worker action); Moncevoir Hyppolite, 1990 WL 80684; Villalobos, 42 F. Supp. 2d at 142; Aguero, 481 F. Supp. at 1272; Gurrola v. Griffin & Brand Sales Agency, Inc., 524 F. Supp. 115 (S.D.Tex. 1980). Additionally, in this particular case, the plaintiffs are less able to bear the burden of trial in a foreign forum than Mycogen. Therefore, the Court finds that the interest of justice are served by maintaining jurisdiction in this Court.

Accordingly, the Court concludes that Mycogen has failed to demonstrate that the

balance of the above factors strongly favors transfer.

## V.    CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES IN ITS ENTIRETY** Mycogen's motion to dismiss for lack of personal jurisdiction, and, in the alternative to transfer venue. Dkt. No. 12. Additionally, the Court concludes that Mycogen has waived its personal jurisdiction defense.

DONE at Brownsville, Texas, this _7_ day of March, 2005.

Hilda G. Tagle
United States District Judge

19