UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| Armando Alonso, et al. § | Civil Action No. B-04-005 |
| § | |
| Plaintiffs, § | |
| § | |
| versus § | Jury Trial Requested |
| § | |
| Agrigenetics, Inc. d/b/a Mycogen Seeds, § | |
| Pablo Martinez and Eugene Martell § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiffs are fifteen migrant agricultural workers from Hidalgo and Cameron Counties, Texas. In the summer of 2002, Defendants Martinez and Martell ("Defendants") recruited Plaintiffs for corn detasseling work for Mycogen Seeds in Illinois. The Plaintiffs were transported by Defendant Martinez ("Martinez") from South Texas to Iowa where they were housed in housing provided by Defendants. Martinez transported Plaintiffs to and from the housing to corn fields in Illinois in buses provided by Martinez. Martinez supervised Plaintiffs in the fields. Martinez employed Defendant Martell ("Martell") to assist him in recruiting and housing workers and to handle Martinez's payroll.

In this action, Plaintiffs seek monetary, declaratory and injunctive relief to vindicate rights guaranteed them by the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq., the Illinois Farm Labor Contractor Certification Act ("IFLCCA"), 225 ILCS 505/1 et seq.,

the Illinois Field Sanitation Act ("IFSA"), 210 ILCS 105/1 et seq., and the common law of breach of contract and negligent misrepresentation. Plaintiffs have filed a Motion for Partial Summary Judgment, seeking partial adjudication of this case. In particular, Plaintiffs request the Court to enter judgment as a matter of law that:

a. Martinez and Martell violated 29 U.S.C. § 1823(a) by providing housing that did not comply with federal and state health and safety standards in that there was not a bed provided for each Plaintiff.

b. Martinez and Martell violated 29 U.S.C. § 1811(a) by housing workers without being registered and authorized to engage in that activity.

c. Martinez violated 29 U.S.C. § 1842 by utilizing Martell to house workers when he was not licensed to do so.

d. Martinez and Martell violated 29 U.S.C. § 1823(b)(1) by housing Plaintiffs without first securing certification that the housing met minimum safety and health standards.

e. Martinez and Martell violated 29 U.S.C. § 1823(b)(1) by failing to post a certificate of compliance with Federal and State health and safety standards.

f. Martinez and Martell violated 29 U.S.C. § 1821(c) by failing to post a statement in the housing that stated the terms and conditions of Plaintiffs' occupancy.

g. Martinez violated 29 U.S.C. § 1821(d)(1) by failing to provide each Plaintiff with adequate pay statements in that they did not show the number of hours worked and the basis on which wages were paid.

h. Martinez and Martell violated 29 U.S.C. § 1821(a) by providing inadequate recruitment disclosures.

  i. Martinez violated 29 U.S.C. § 1822(c) by failing to provide as much work as promised and by failing to comply with housing requirements.

  j. Martinez violated 225 ILCS 505/8(c) by failing to comply with the agreements and arrangements they entered into with Plaintiffs in that they failed to provide the amount of work promised.

  k. Martinez violated 225 ILCS 505/9(a) by failing to file a statement with the Illinois Department of Labor containing details of the employment.

  l. Martinez violated 820 ILCS 115/10 by failing to notify Plaintiffs, in writing at the time they were hired, of time when their wages would be paid and of the place where payment would be made.

**II. Statement of Relevant Facts**

Plaintiffs are migrant agricultural workers from the Rio Grande Valley. Answer at 4.1. Defendant Pablo Martinez is a farm labor contractor. (Answer at 1.1.) Defendant Eugene Martell was employed by Defendant Martinez. (Martinez Int. No. 16.) Plaintiffs were recruited and employed in the summer of 2002 by Defendant Pablo Martinez to perform corn detasseling work in Illinois for Mycogen Seeds. (Answer at 3.6, 4.5, 6.2; Martinez Adm. No. 4.)

Workers met at Martinez's house in Mercedes, Texas where he told them about the work. (Aguillon at 5, lines 17-20; Cisneros at 5, lines 6-9; Sanchez-Ramos at 5, lines 8-10.) Martinez failed to properly disclose the amount of work that the workers were going to receive and how much they were going to be paid. In fact, the only document Mr. Martinez and Mr. Martell claim to have used to explain the work being offered, indicates on the first page that workers will be paid $6.50 per hour, and on the second page it mentions a $70 per acre piece rate bonus system. (Exhibit 3; Martinez at 75:2 –

77:2; Martell at 142:24 – 143:21.)  Both Martell and Martinez testified that they told workers that they would be paid by the acre, and in determining how much to pay workers during the season, they apparently did not take into account how many hours each worker actually worked.  (Martell at 130:4-10; Martinez 32:21 – 33:3.)  This caused great confusion among the workers, and some testified they thought they were going to paid by the row, others thought by the acre, and others thought by the hour.  (Aguillon at 5:25 – 6:9; G. Martinez at 6:11 – 7:10, 16:12 – 17:23; Sanchez-Ramos at 5:11 – 6:4, 19:9-25.)  This all came to a head at the end of the season when Mr. Martinez and Martell failed to pay the workers.  Based on several Plaintiffs' previous experiences working with Martinez and Mycogen's predecessor company, the workers expected to be paid on their last day of work.  (Alonso at 41:5-18; Cisneros at 4:17-19, 21:18-21.)  In fact, the workers did not receive their final paychecks until well after they had returned to the Rio Grande Valley.  (A. Martinez at 8:11-14; M. Rodriguez at 20:10-19.)

Martinez arranged transportation to Iowa for Plaintiffs either with other workers who had their own vehicles or with and in vehicles provided by Martinez.  (Aguillon at 8:16-21; A. Martinez at 11:10-21; E. Rodriguez at 8:15 – 9:7; R. Rodriguez at 6:11-14; 19:5-16.)  Upon their arrival in Iowa, some Plaintiffs' had to sleep in their vehicles, as Martinez had not prepared rooms for their arrival.  (Aguillon at 10:7 – 11:18; M. Rodriguez at 13:8 – 16:20.)  The farmworkers were housed by Martinez and Martell at the Heidelberg Motel in crowded conditions that were not suitable to house migrant workers for an extended period of time.  The housing was not inspected by the state or federal government as required by law and Martinez did not receive permission from the United States Department of Labor to house workers at the motel.  The motel rooms only had two beds and had inadequate cooking facilities.  (Martinez at 106:13-14, 164:21-23;

Aguillon at 36:13-24.) In terms of cooking facilities, the workers could cook only on hotplates that some workers brought from Texas, or in small microwaves that were in each room. (Aguillon at 36:13-24.) Recognizing the inadequacy of this situation Mr. Martinez testified that he offered to rent a fishing house across the river in Illinois that the workers could use to cook. (Martinez at 164:21 – 165:12.) Neither Martinez nor Martell has any records of how many workers were in each room, but they testified that they assigned at least four workers to each room, and in some cases more. (Martell at 182:13-15; Martell 2 at 113:7-9; Martinez at 106:11-12; Martinez Int. No. 6.) Similarly, several Plaintiffs testified that there were six workers crowded into in a single room. (Cisneros at 8:25 – 9:20; A. Martinez at 13:20 – 14:16; Sanchez-Ramos at 9:7-22.) Because of this overcrowding, unrelated adults had to sleep in the same bed and others slept on the floor. (Aguillon at 12:2-11; A. Martinez at 14:17 – 15:4.)

### III.  Standard of Review

A party may be granted summary judgment when "there is no genuine issue as to any material fact... and the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56 (c). Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, the opposing party must establish that there is a genuine dispute of material fact; "it must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co v. Zenith Radio Corp, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).

IV.     **Issues for Adjudication at Summary Judgment**

      A.     **Martinez and Martell violated the housing provisions of the AWPA under 29 U.S.C. § 1823(a) by assigning too many workers to each room and by not providing a bed for each worker.**

With respect to housing, the AWPA requires as follows:

> each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

29 U.S.C. § 1823(a).

Federal regulations provide for a bed to be provided to each worker. 29 C.F.R. § 1910.142(b)(3). Iowa's migrant housing law provides that double occupancy beds may only be provided in family accommodations. Iowa Code Ann. § 138.13(2)(g). Each of Plaintiffs' rooms housed at least four workers and every room was equipped with only two beds. (Martinez at 106:11-12.) At least one room housed five workers. (Martell 2 at 113:7-9.) As a result, none of the Plaintiffs were provided with their own bed. As a result some slept on the floor or, on parts of beds set on the floor, or in beds with other men.

AWPA places the responsibility for ensuring the adequacy of migrant housing on "each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers. 29 U.S.C. § 1823(a). The Act's use of the word "person" means that the housing requirements of the AWPA apply even to persons who are not agricultural employers or farm labor contractors. See Castillo v. Case Farms of Ohio, Inc., 96 F. Supp. 2d 578, 613 (W.D. Tex. 1999). Both Defendants Martinez and Martell are liable for the above-referenced violations of the housing regulations because

they each "controlled" Plaintiffs' housing. "Control" means to be "in charge" of the housing or to have "the power or authority to oversee, manage, superintend, or administer" the housing "either personally or through an authorized agent or employee." 29 C.F.R. § 500.130(c). The term is to be given the broadest possible meaning. H. Rep. No. 97-885, at 17-18, reprinted in 1982 U.S.C.C.A.N. at 4563-4564; see also, Castillo, 96 F.Supp. at 614.

Martinez controlled the housing in that he arranged for the housing. (Martinez at 25:8-11.) He negotiated a block rate for the rooms he used. (Martell 2 at 78:15-17.) He paid for the housing. (Martell at 182:15-16.) He inspected each room that workers lived in. (Martinez at 158:25 – 159:3.) He assigned the workers to rooms. (Martell 2 at 11:23-25.) He is responsible for the rooms once workers are in them. (Martinez at 123:6-8.) He assigned Eugene Martell to supervise the rooms and field complaints from workers and from the motel owner. (Martinez at 123:16-19; Martell 2 at 113:16 – 114:16.) Martinez also performed some of these activities himself. For instance, he told a group of Plaintiffs, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave. The hotel owner and neighbors are complaining." (Martinez Int. No. 15.) Also, on an occasion when the manager called Martinez about workers supposedly destroying a room, Pablo "controlled them," paid them what he owed them, and at dawn apparently evicted them. (Martinez at 133:18 – 134:7.) The fact that he could evict workers from the housing shows that he had the power or authority to oversee, manage, superintend, or administer the housing.

Martell controlled the housing in that he arranged for the housing. (Martell at 45:16 – 46:25.) Pablo Martinez sent Martell to Iowa to find the housing. (Martinez at 25:12-16, 26:23-25.) Martell assigned a person in each room to hold responsible for

damage. (Martell at 51:4-13.) Martell acted as a go-between between the owner of the housing and the workers and he took complaints from them. (Martell 2 at 113:7 – 114:16.) Martell also paid the last check to the motel owner. (Martell at 47:19-20.)

### B. Martinez and Martell violated the AWPA under 29 U.S.C. § 1811(a) by engaging in activities that they were not certified to perform.

AWPA states that, "[n]o person shall engage in any farm labor contracting activity, unless such person has a certificate of registration form the Secretary [of Labor] specifying which farm labor contracting activities such person is authorized to perform." 29 U.S.C. § 1811(a).

Martinez was certified with the Department of Labor ("DOL"), but he was certified only to recruit and drive workers, not to house or transport them. Martinez's farm labor contractor certificate is attached as Exhibit 1. As explained above, Martinez housed workers. Martinez also transported workers in that he "used or cause[d] to be used" the bus that transported Plaintiffs. 29 U.S.C. § 1841(b)(1); 29 C.F.R. § 500.100(a). Martinez rented a bus from Mycogen and hired someone to drive it. (Martinez Int. No. 10.) After Defendants woke up Plaintiffs in the mornings, Plaintiffs would get on the bus and be driven to the fields. (Martinez Int. No. 15.)

Martell was not certified by any state or by the federal government to perform any farm labor contracting activity. (Martell Int. No. 17.) As explained, Martell housed workers.

Defendants have thereby violated 29 U.S.C. § 1811(a).

### C. Martinez violated the AWPA by utilizing the services of Martell, to engage in activities for which he was not certified, in violation of 29. U.S.C. § 1842.

AWPA states, "No person shall utilize the services of any farm labor contractor . . . unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized." 29 U.S.C. § 1842; see e.g. Howard v. Malcolm, 852 F.2d 101, 105-06 (4th Cir. 1988) ("growers who delegate housing responsibilities must verify that the labor contractor is authorized to house the workers at [a] safe, sanitary facility.")

As explained above, Martinez used Martell to house workers in that he hired him and delegated at least partial control of the housing to him. If Martinez had taken the "reasonable steps" required by the AWPA he would have quickly found that Martell was not authorized to house workers.

The fact that Martell was employed by Martinez does not save Martinez. AWPA states that, "[a] farm labor contractor shall not hire, employ, or use any individual to perform farm labor contracting activities unless such individual has a certificate of registration, or a certificate of registration as an employee of the farm labor contractor employer, which authorizes the activity for which such individual is hired, employed, or used." 29 U.S.C. § 1811(b).

> **D.  Martinez and Martell violated the housing provisions of the AWPA under 29 U.S.C. § 1823(b)(1) by housing Plaintiffs without first securing certification that the housing met minimum safety and health standards.**

AWPA provides that:

> no facility or real property may be occupied by any migrant agricultural worker unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable health and safety standards.

29 U.S.C. § 1823(b)(1).

Defendants admit that no housing certification was obtained for Plaintiffs' housing. (Answer at 4.30.)

This requirement is separate from and additional to the requirement comply with Federal and State health and safety standards. See Castillo, 96 F.Supp. at 621.

### E. Martinez and Martell violated the housing provisions of the AWPA under 29 U.S.C. § 1823(b)(1) by housing Plaintiffs without posting a certification of occupancy.

AWPA provides that:

> No person who owns or controls any such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site.

29 U.S.C. § 1823(b)(1).

Defendants admit they failed to post certification of occupancy. (Answer at 4.31.)

This requirement is separate and distinct from the requirement that the housing be inspected and certified. See Barrientos v. Taylor, 917 F.Supp. 375, 384 (E.D.N.C. 1996); contra Howard v. Malcolm, 658 F.Supp. 423, 433-438.

### F. Martinez and Martell violated the housing provisions of the AWPA under 29 U.S.C. § 1821(c) by failing to post or present a statement of the terms and conditions of the housing.

AWPA states:

> Each farm labor contractor . . . which provides housing for any migrant agricultural worker shall post in a conspicuous place or present to such worker a statement of the terms and conditions, if any, of occupancy of such housing.

29 U.S.C. § 1821(c).[1]

Defendants admit that they did not post a statement of the terms and conditions. (Answer at 4.32.)

---

[1] The following terms must be posted or presented: the name and address of the entity providing the housing, the name and address of the person in charge of the housing, the mailing address and phone number where persons living in the facility may be reached, who may live at the facility, the charges made for housing, the meals provided, the utility charges, and any other charges or conditions of occupancy.

Plaintiffs were also not provided with statements containing the terms and conditions. Both Defendants state that they did make any documents relating to the housing terms and conditions. (Martinez Int. No. 3; Martell Int. No. 3.) Defendants also admit that they have no documents that they used to inform Plaintiffs about the terms and conditions of housing. (Defs. RFP Nos. 23 and 24.) The only paperwork Plaintiffs were shown indicated that no housing would be provided. See ¶ H, below.

### G. Martinez violated the wage payment provision of the AWPA under 29 U.S.C. § 1821(d)(1) by failing to provide each Plaintiff with adequate pay statements.

AWPA provides that:

Each farm labor contractor . . . which employs any migrant agricultural worker shall - provide to each such worker for each pay period, an itemized written statement of the information required by paragraph (1) of this subsection.

29 U.S.C. § 1821(d)(2). Paragraph (1) lists the following information:

(A) the basis on which wages are paid;
(B) the number of piecework units earned, if paid on a piecework basis;
(C) the number of hours worked;
(D) the total pay period earnings;
(E) the specific sums withheld and the purpose of each sum withheld; and
(F) the net pay; ...

29 U.S.C. § 1821(d)(1).

The pay statements issued to Plaintiffs did not contain all of this information. The statements did not include the basis on which wages were paid, the piecework units earned, or the number of hours worked.

Eugene Martell was in charge of payroll for Martinez's crew. (Martinez at 42:11-15.) Martell admits that the pay statements given to workers did not show the number of hours worked or the number of acres detasseled. (Martell 2 at 58:21 – 59:21.) A copy of

a representative pay statement is attached as Exhibit 2. Id. He further admits that no document given to workers contained this information. Id.

The pay statements do list a rate of pay 6.5000, but this rate was apparently never used to determine anyone's pay. Martell admits that for the first of the two paychecks paid to each worker by Defendants, Defendants did not even know how much each worker had worked. (Martell at 130:4-10.) The amounts paid in the second paychecks were purportedly based on a rate of $70 per acre. (Martinez at 32:23-24.) This pay rate, however, does not appear on the admittedly representative pay statement or on any pay statement provided to Plaintiffs counsel by Defendants. (Exh. 2.)

> H.  **Martinez violated the AWPA by providing Plaintiffs with inadequate disclosures at the time of recruitment in violation of 29 U.S.C. 1821(a).**

AWPA provides, in pertinent part, that:

> Each farm labor contractor . . . which recruits any migrant agricultural worker shall ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment:
>
> (1) the place of employment;
> (2) the wage rates to be paid; . . .
> (4) the period of employment;
> (5) the transportation, housing and any other employee benefit to be provided, if any, and any costs to be charged each of them; . . . [and]
> (8) whether State workers' compensation insurance is to be provided, and, if so, the name of the . . . carrier, [and] the name of the policyholder . . . .

29 U.S.C. § 1821(a). This information must be provided in Spanish. 29 U.S.C. § 1821(g). There may be a fact dispute about whether Plaintiffs were provided with any written disclosures at all.[2] However, there is no dispute that whatever was arguably provided was inadequate.

---

[2] Defendants' testimony is unclear on whether they gave workers the document or if they just explained to the workers the information contained in the document. See Martinez at 75:2 – 80:22; Martell at 142:24 – 143:21.

The only document that Defendants claim they gave to Plaintiffs in Texas is attached as Exhibit 3. (Martinez at 75:2 – 77:2; Martell at 142:24 – 143:21.) This disclosure is defective in at least three ways. First, it discloses the period of employment as from July 5, 2002 to August 10, 2002; a period of thirty-two days. (Exh. 3.) According to Martinez, Plaintiffs' actual period of employment was about sixteen days. (Martinez at 124:6-9.) Second, the document does not disclose, as required by § 1821(a)(5), that housing would be provided. It disclosed that none would be provided. (Exh. 3; Martell at 142:24 – 143:3.) Third, the document does not satisfy § 1821(a)(8) in that it provides contradictory information about the name of the workers' compensation carrier. (Exh. 3.) The first page of the document names the carrier as Acuity Insurance while the second page names the carrier as Ace American Insurance Co. Id.

I.  **Martinez violated the AWPA and IFLCCA by violating the terms of the working arrangement in violation of 29 U.S.C. § 1822(c) and 225 ILCS 505/8(c) in that they failed to provide as much work as was promised and they failed to comply with housing requirements.**

AWPA provides that " No farm labor contractor . . . shall, without justification, violate the terms of any working arrangement made by that contractor . . . with any migrant agricultural worker." 29 U.S.C. § 1822(c).

The disclosures that Martinez contends he gave to Plaintiffs in Texas state that the length of employment would be thirty-two days. (Martinez at 76:9 – 77:2; Exh. 3.) By Martinez's own admission, Plaintiffs' actual period of employment was about sixteen days. (Martinez at 124:6-9.) The period of employment is a required term in every working arrangement. Colon v. Casco, 716 F.Supp. 688, 694 (D. Mass. 1989); see also, 29 U.S.C. § 1821(a)(4). As such, Martinez violated the terms of the working arrangement he entered into with Plaintiffs in Texas.

These facts also show a violation of 225 ILCS 505/8(c) which requires every farm labor contractor to "[c]omply with the terms and provisions of agreements and arrangements entered into in the course of doing business as a farm labor contractor with farmworkers and farm operators."

Martinez also violated the working arrangement under the AWPA by failing to provide housing that met applicable health and safety standards, as outlined above. The AWPA working arrangement includes, by operation of law, terms that are required to be offered by regulation. See Salazar-Calderon v. Presidio Valley Farmers Assoc., 765 F.2d 1334, 1341 (5th Cir. 1985); see also Elizondo v. Podgorniak, 100 F.Supp. 2d 459, 462 (E.D. Mich. 2000). As noted above, federal and state regulations required that if housing were provided, a bed needed to be provided for each worker. As each Plaintiff was not provided with a bed, Martinez violated the housing standards that were required terms of the working arrangement.

J.  **Martinez violated the IFLCCA, 225 ILCS 505/9(a), by failing to file a statement with the Illinois Department of Labor containing details of the employment.**

IFLCCA prohibits the recruitment of farmworkers by any farm labor contractor unless the contractor first files with the Illinois Department of Labor, a statement containing "the transportation, housing, and insurance to be provided farmworkers" and "the period of employment" among other information. 225 ILCS 505/9(a)(3) and (5).

The form submitted by Martinez did not state that housing would be provided and did not contain any period of employment. (Martinez at 107:8-19.) This form is attached as Exhibit 4. As housing was provided, as explained above, Martinez failed to file a statement containing all the required details of the employment.

**K.     Martinez violated the IWPCA, 820 ILCS 115/10, by failing to notify Plaintiffs, in writing at the time they were hired, of the time when their wages would be paid and of the place where payment would be made.**

The only documents arguably given to Plaintiffs in Texas before they traveled to Iowa were the disclosure statements (Exh. 3) mentioned in ¶ H, above. (Martinez at 76:9 – 77:2; Martell at 142:24 – 143:3.) These disclosures do not state either the time for payment of Plaintiffs' wages or the place where payment would be made. (Exh. 3.) The IWPCA requires employers, such as Martinez, to give this information to employees, such as Plaintiffs, at the time the time they are hired. 820 ILCS 115/10. Whenever possible, this information is to be given to workers in writing and acknowledged by both the employer and the employee. Id. It was possible for Martine to give this information in writing to Plaintiffs and have it acknowledged since he purportedly was able to give deficient written disclosures to Plaintiffs in Texas.

**V.     Conclusion**

For the reasons stated in Plaintiffs' Motion for Partial Summary Judgment and argued above, Plaintiffs respectfully pray that their Motion be, in all things, granted.

Respectfully submitted,

Nathaniel Norton
Texas Bar No. 24037196
S.D. No. 33422
TEXAS RIOGRANDE LEGAL AID, INC.
2201 Post Rd., Ste. 104
Austin, TX 78704
Tel.  512-447-7707
Fax.  512-447-3940
Attorney-in-Charge for Plaintiffs

Rodolfo D. Sanchez

        Texas Bar No. 17572100
        S.D. No. 12600
        TEXAS RIOGRANDE LEGAL AID, INC.
        300 South Texas
        Weslaco, TX 78596
        Tel. 956-968-9574
        Fax. 956-968-8823
        Co-Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2005, a true and correct copy of this document was mailed via CM/RRR to Defendants Martinez and Martell's attorneys as listed below:

Julia Hernandez       7004 2510 0003 4385 5979
Fernando Saenz
Law Offices of Fernando Saenz
521 E. Pike Blvd.
Weslaco, TX 78596

                                    _/s/ Nathaniel Norton_
                                    Nathaniel Norton

## SUMMARY JUDGMENT EVIDENCE

The following is a list of the summary judgment evidence attached to Plaintiffs' Motion for Partial Summary Judgment.

| Exhibit | Abbreviated Reference |
|---|---|
| 1. Pablo Martinez's farm labor contractor certificate | Exh. 1 |
| 2. Representative pay statement | Exh. 2 |
| 3. Employment disclosure from Pablo Martinez | Exh. 3 |
| 4. Employment statement to Illinois Deptartmet of Labor | Exh. 4 |
| 5. Defendants' Answer to 1st Amended Complaint | Answer at __ |
| 6. Pablo Martinez's Answers to 1st Request for Admission | Martinez Adm. No. __ |
| 7. Pablo Martinez's Supplemental Answers to 1st Set of Interrogatories | Martinez Int. No. __ |
| 8. Eugene Martell's 2nd Supplemental Answers to 1st Set of Interrogatories | Martell Int. No.__ |
| 9. Defendants' Responses to 1st Request for Production | Defendants RFP No. __ |
| 10. Excerpts from the deposition of Pablo Martinez | Martinez at page:line |
| 11. Excerpts from vol. 1 of the deposition of Eugene Martell | Martell at page:line |
| 12. Excerpts from vol. 2 of the deposition of Eugene Martell | Martell2 at page:line |
| 13. Excerpts from the deposition of Jose Aguillon | Aguillon at page:line |
| 14. Excerpts from the deposition of Armando Alonso | Alonso at page:line |
| 15. Excerpts from the deposition of Armando Cisneros | Cisneros at page:line |
| 16. Excerpts from the deposition of Agustin Martinez | A. Martinez at page:line |
| 17. Excerpts from the deposition of Gabino Martinez | G. Martinez at page:line |
| 18. Excerpts from the deposition of Enrique Rodriguez | E. Rodriguez at page:line |
| 19. Excerpts from the deposition of Melguiades Rodriguez | M. Rodriguez at page:line |
| 20. Excerpts from the deposition of Rodolfo Rodriguez | R. Rodriguez at page:line |
| 21. Excerpts from the deposition of Higinio Sanchez-Ramos | Sanchez-Ramos at page:line |

## CITATION LOCATOR

This list is provided to the Court in order to facilitate the location of depositions, interrogatories, admissions, and requests for production cited within the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment.

| Citation | Exhibit |
|---|---|
| Answer at __ | Exh. 5 |
| Martinez Adm. No. __ | Exh. 6 |
| Martinez Int. No. __ | Exh. 7 |
| Martell Int. No.__ | Exh. 8 |
| Defendants RFP No. __ | Exh. 9 |
| Martinez at page:line | Exh. 10 |
| Martell at page:line | Exh. 11 |
| Martell2 at page:line | Exh. 12 |
| Aguillon at page:line | Exh. 13 |
| Alonso at page:line | Exh. 14 |
| Cisneros at page:line | Exh. 15 |
| A. Martinez at page:line | Exh. 16 |
| G. Martinez at page:line | Exh. 17 |
| E. Rodriguez at page:line | Exh. 18 |
| M. Rodriguez at page:line | Exh. 19 |
| R. Rodriguez at page:line | Exh. 20 |
| Sanchez-Ramos at page:line | Exh. 21 |