# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| Armando Alonso, Melquiades Rodriguez, § <br> Rogelio Sanchez, Santos Martinez as next § <br> Friend of G. M., Hugo Martinez, § <br> Jose Aguilon, and Higinio Sanchez-Ramos § <br> § <br> Plaintiffs, § <br> § <br> versus § <br> § <br> Agrigenetics, Inc. d/b/a Mycogen Seeds, § <br> Pablo Martinez and Eugene Martell § <br> § <br> Defendants. § | Civil Action No. B-04-005 <br><br><br><br><br><br><br><br> Jury Trial Requested |

### DEFENDANT PABLO MARTINEZ'S SUPPLEMENTAL ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

TO: Plaintiffs, by and through their attorney of record, Nathaniel Norton and Rodolfo D. Sanchez, Texas Rio Grande Legal Aid, Inc., 300 S. Texas Blvd., Weslaco, Texas 78596.

Respectfully submitted,

By: _____
Pablo Martinez, Defendant
620 N. Nevada
Weslaco, TX 78596

DEFENDANT PABLO MARTINEZ'S SECOND SUPPLEMENTAL ANSWERS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES – Page 1


EXHIBIT 7

## INTERROGATORIES

### INTERROGATORY NUMBER 2

Please state your 2002 job title with Agrigenetics and describe the duties that accompanied that job.

### SUPPLEMENTAL ANSWER:

I was an independent contractor and farm labor contractor for Agrigenetics ("Mycogen"). My relationship and duties are reflected in MYC 00243-0036 and DEF 0003-0016. I supervised detasseling pursuant to my contract with Mycogen and this included employing Plaintiffs to detassel corn and supervising their work. Later in the year, I acted as a farm labor contractor for sorting work done at the Congerville facility. However, for that work, Plaintiffs were hourly employees of Mycogen and not my employees. I was paid a recruiting fee and a production bonus by Mycogen for Congerville work.

### INTERROGATORY NUMBER 3

Please identify each document you made, kept, preserved or posted concerning the recruitment, hiring, terms and conditions of employment, labor, earnings, deductions, housing terms and conditions, transportation, rights, benefits or termination of any Plaintiff employed by you or Agrigenetics in 2002.

### SUPPLEMENTAL ANSWER:

I am attempting to obtain returned paychecks from my bank that Plaintiffs received and a copy of the check I used to pay the hotel bill. I will produce these documents once they are obtained. Otherwise, I am unaware of existing document that have not previously been produced by the Defendants in this litigation.

1. **RECRUITMENT DOCS** - I did not make or post any recruitment documents. Any recruitment related documents that I kept or preserved were provided by Agrigenetics or created by Eugene Martell. They can be found at DEF 0001 - 0016, 0039, 0041, 0046, 0047, 0048.

2. **HIRING DOCS** - I did not make or post any hiring documents. Any hiring related documents I kept or preserved were provided by Agrigenetics or created by Eugene Martell. They can be found at DEF 0001-0016, 0039, 0041, 0046, 0047, 0048.

3. **TERMS AND CONDITIONS OF EMPLOYMENT DOCS** - I did not make any documents related to the terms and conditions of employment. Agrigenetics provided and

I posted and/or distributed documents related the terms and conditions of employment, but I did not preserve or keep these documents such that I cannot adequately identify them. I cannot recall their content.

4. **LABOR** - I am not sure what you mean by labor, but I do not think that I created, posted, kept or preserved any documents related to labor.

5. **EARNINGS** - I did not make or post any documents related to earnings. Any documents in my possession, which I kept or preserved, related to earnings were created by my payroll company or Eugene Martell. They can be seen at DEF 0044, 0049, 0054, 0055, 0056, 0057, 0058, 0094-0105.

6. **DEDUCTIONS** - I am not sure what you mean by deductions, but as far as I know I did not make or post any documents related to deductions. Any documents in my possession, which I kept or preserved, related to earnings were created by my payroll company or Eugene Martell. They can be seen at DEF 0044, 0049, 0054, 0055, 0056, 0057, 0058, 0094-0105.

7. **HOUSING TERMS AND CONDITIONS** - I did not make any documents related to housing terms and conditions. I kept and preserved documents which can be seen at DEF 0001, 0036. Agrigenetics posted some documents related to housing terms and conditions, I think, but I do not recall their content.

8. **TRANSPORTATION** - I did not make any documents related to transportation. I kept and preserved Agrigenetics created documents related to transportation which can be seen at DEF 0001, 0002, 0003-0016, 0036. I think Agrigenetics may have posted some documents related to transportation, but I cannot recall what was in them.

9. **RIGHTS** - I did not make any documents related to rights. I did not keep or preserve any documents related to rights except DEF 0001, 0002, 0003-0016. I think that Agrigenetics posted some documents related to rights, but I cannot recall their content.

10. **TERMINATION** - I did not make any documents related to termination. I did not keep or preserve any documents related to termination except DEF 0003-0016. I do not recall if any documents related to termination were posted by Agrigenetics.

**INTERROGATORY NUMBER 4**

Please identify every communication you have had with Agrigenetics, its employees, agents, or attorneys, or with Eugene Martell concerning the subject matter of this lawsuit.

**SUPPLEMENTAL ANSWER:**

Francisco told him there was work. Francisco told me that he was going to bring 7 or 8 people, but he did not tell me who. I gave him 7 applications.

- **HIGINIO SANCHEZ-RAMOS** - He did not go to my house. He went with Francisco up north, Francisco told him there was work. Francisco told me that he was going to bring 7 or 8 people, but he did not tell me who. I gave him 7 applications.

-

## INTERROGATORY NUMBER 6

For each individual plaintiff, please identify each specific apartment unit, hotel room, or other housing unit provided by you at any time in 2002 in connection with said Plaintiff's employment with you or Agrigenetics. In your answer, please provide the address of the housing unit, the name of the housing facility if there is one, the type of housing and your relationship to the housing facility in 2002.

## SUPPLEMENTAL ANSWER:

Heidelberg Motel
Hwy. 34-East
Mount Pleasant, Iowa 52641
(319) 385-8968

I don't know the room numbers. The Heidelberg Hotel is owned by a man of Asian descent. I had no connection with the Heidelberg Hotel other than housing workers there and paying for the housing.

## INTERROGATORY NUMBER 7

Please describe each specific housing unit provided by you in 2002 to each Plaintiff. In your answer please state the condition and number of rooms in the apartment, the square footage of each room, the condition and number of beds in the unit, the condition and number of mattresses in the unit, the condition and type of furnishings provided, the condition and type of furnishings provided, the number of lights provided in each room, the identity of each occupant in each housing unit, and whether or not such housing was licensed as migrant farm worker housing by appropriate state and/or federal agencies, and if so, by which agencies.

## SUPPLEMENTAL ANSWER:

I don't know whether the Heidelberg Hotel was licensed by state or federal agencies. I never obtained any such certification. The rooms had two large beds, air conditioner, color TV, towels, soap, toilet, sink, toilet paper, daily room service, a desk. The condition of the mattresses that I saw were good. I never counted the number of lights, but there was adequate lighting. I do not know the square footage. The rooms had desks and chests of drawers and lamp stands. I stayed in the

hotel myself and felt comfortable there.

- I do not know the identity of each occupant in each housing unit. I did not keep records of that.

## INTERROGATORY NUMBER 8

Please describe your role in obtaining housing for any Plaintiff in 2002. If your role included paying for housing for any Plaintiffs please list each payment you made for the housing and the date, amount, and payee for each Plaintiff's housing.

### SUPPLEMENTAL ANSWER:

I obtained housing for Plaintiffs. I do not recall the cost but am looking for a copy of the check to the Heidelberg Hotel and it will be produced located.

## INTERROGATORY NUMBER 10

Please describe how each Plaintiff was transported to, from, and between Agrigenetics' cornfields or other Agrigenetics work sites in 2002. In your response, please state the following: the name of each transportation provider; the name of each person or company who provided any vehicle used to transport any worker, and your relationship, if any, to the vehicle provider; the identity of each person who drove or operated any vehicle used to transport any worker, and your relationship, if any, to the driver or operator; procedures for verifying drivers' certification to provide such transportation; and the amount, kind and dates of payments made for such transportation services.

### SUPPLEMENTAL ANSWER:

I rented a bus from Mycogen and hired Roberto Renderos to drive it. He had a Florida commercial drivers license. I've previously described my relationship to Mycogen. I do not remember what I paid for the bus. It seemed to be in good condition, but I do not recall much more about it. I knew that Roberto Renderos held a Florida commercial drivers license and I required no further certification and did no further investigation on whether additional certification was needed.

- Mycogen hired me as an independent contractor to acquire workers to detassel their fields.
- Roberto Randeros is my brother in law. He is married to my sister.
- I also rented a van from Mycogen. Andres Lopez drove drove it. Andres Lopez had a regular drivers license from Texas. The van did not require a special license. I do not remember what I paid him. I think it was $1500.00 or $1800.00. He was paid twice, I think.

DEFENDANT PABLO MARTINEZ'S SECOND SUPPLEMENTAL ANSWERS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES – Page 8

- Payment to Renderos - DEF 0096, 0101, 0104.
- Payment to Mycogen - I do not remember, it was automatically taken from my final payment.
- I do not remember how much Mycogen charged me. I do not remember what date they charged me.
- I paid Renderos with a check. Mycogen automatically deducted the cost for the van and bus from my final pay.

## INTERROGATORY NUMBER 11

Please explain in detail how, why, and when each Plaintiff's employment was terminated in 2002.

## SUPPLEMENTAL ANSWER:

When the detasseling work was completed, the job automatically terminated. I believe that the last day of work was approximately July 29, 2002.

- I told the Plaintiffs in person when the work was done and the job was over.

- Defendant objects to this interrogatory to the extent that it calls for how and when each Plaintiff was terminated. This Defendant has no record he can refer to of the termination of each Plaintiff and no recall or knowledge of how each Plaintiff was terminated. The Plaintiffs' attorneys can more conveniently obtain this information from the plaintiffs themselves. Each plaintiff would have a better recall of his own particular termination especially if he means to make it a basis of this lawsuit. FRCP 26(b)(2)(i).

Julia M. Hernandez, Attorney

## INTERROGATORY NUMBER 12

Please describe in detail your relationship to Agrigenetics, Inc.

## SUPPLEMENTAL ANSWER:

I had no relationship until 2002. For my relationship beginning in 2002, see answer to interrogatory no. 2. I had the same type of arrangement with Mycogen in 2003. I only performed detasseling work for Mycogen in 2004.

## INTERROGATORY NUMBER 13

DEFENDANT PABLO MARTINEZ'S SECOND SUPPLEMENTAL ANSWERS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES – Page 9

came to be associated with him. FRCP 26(b)(2)(I).

*Julia M. Hernandez, Attorney*

**INTERROGATORY NUMBER 14**

Please provide a description of each Plaintiff's job duties with Agrigenetics in 2002.

**SUPPLEMENTAL ANSWER:**

Plaintiffs were employed by me to walk up and down rows of corn and detasseled the female corn. There were 4 rows of female corn and one row of male corn. To enhance fertility, the Plaintiffs pulled the tassel out of the ear and dropped it to the ground.

**INTERROGATORY NUMBER 15**

Please identify each communication you had with any Plaintiff from May 2002 through September 2002. In your response please state the method, date, subject matter of each communication, and whether the communication was in person.

**SUPPLEMENTAL ANSWER:**

My communications with Plaintiffs generally involved the job. Basically, Eugene Martell or I would wake Plaintiffs up in the morning and they would get on the bus and be driven to the fields in Illinois. Plaintiffs would provide their own food. Sometimes, Plaintiffs would indicate that they needed to take a break or have a question and I would communicate directly with them. Mycogen would tell me which fields to detassel and I would communicate with Plaintiffs to transport them to the proper field and get the job done. I communicated with Plaintiffs about safety when there was a concern. Sometimes, Plaintiffs and I chatted as friends, but I do no6t recall any specific conversations at this time.

- **JOSE AGUILON** - I do not remember any specific communication.
- **ARMANDO ALONSO** - I do not remember any specific communication.
- **ARMANDO CISNEROS** - we had conversations like the corn will be high or low. Be careful. But that is it. We did not talk about anything else that I can remember.
- **EVERARDO GARCIA** - he would always ask me for money so he could buy a six pack. We just greeted each other like "How are you?" or "what's going on?"
- **HUGO MARTINEZ** - I talked with him one night that he was drinking outside the hotel with some other men. I told him, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave. The hotel owner and neighbors are complaining." He and the others responded aggressively. They said, "we are outside the house and we can drink if we want." I said, "I am not saying you can't drink, you just have



to be quiet." They went to their rooms. Then they left on a bus out of town. I did not fire him, he left.

- **GABINO MARTINEZ** I think I talked with him one night that he was drinking outside the hotel with some other men. I told him, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave. The hotel owner and neighbors are complaining." He and the others responded aggressively. They said, "we are outside the house and we can drink if we want." I said, "I am not saying you can't drink, you just have to be quiet." They went to their rooms. Then they left on a bus out of town. I did not fire him, he left.
- **EDILBERTO MARTINEZ** - I talked with him one night that he was drinking outside the hotel with some other men. I told him, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave. The hotel owner and neighbors are complaining." He and the others responded aggressively. They said, "we are outside the house and we can drink if we want." I said, "I am not saying you can't drink, you just have to be quiet." They went to their rooms. Then they left on a bus out of town. I did not fire him, he left.
- **AGUSTIN MARTINEZ** - I do not remember beyond normal work conversation.
- **JAIME PACHECO** - I do not remember beyond normal work conversation.
- **RODOLFO RODRIGUEZ** - I do not remember beyond normal work conversation.
- **FRANCISCO RODRIGUEZ** - I do not remember beyond normal work conversation.
- **MELQUIADES RODRIGUEZ** - I do not remember beyond normal work conversation.
- **ENRIQUE RODRIGUEZ** -I do not remember beyond normal work conversation.
- **ROGELIO SANCHEZ** I talked with him one night that he was drinking outside the hotel with some other men. I told him, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave. The hotel owner and neighbors are complaining." He and the others responded aggressively. They said, "we are outside the house and we can drink if we want." I said, "I am not saying you can't drink, you just have to be quiet." They went to their rooms. Then they left on a bus out of town. I did not fire him, he left.
- **HIGINIO SANCHEZ-RAMOS** -I do not remember beyond normal work conversation.

- Defendant objects to this interrogatory to the extent that it calls for information more conveniently obtained from the Plaintiffs. This request is overly burdensome because Defendant has not kept records nor does he recall each communication he had with each of the fifteen plaintiffs in 2002. Each plaintiff would have a better recall of communications he has had with Defendant. FRCP 26(b)(2)(i). Defendant also objects to this interrogatory because it is overbroad asking for each and every communication including irrelevant everyday greetings and small talk, and wanting the time of day and all the other specifics of the communications.

Julia M. Hernandez, Attorney

DEFENDANT PABLO MARTINEZ'S SECOND SUPPLEMENTAL ANSWERS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES – Page 12

**INTERROGATORY NUMBER 16**

Please describe in detail the 2002 business structure of your farm labor contracting business or of any business you were associated with in 2002 that performed farm labor contracting activities. In your response, please describe your relationship to each business.

**SUPPLEMENTAL ANSWER:**

I was a Farm Labor Contractor. I have always been a sole proprietor. I hired Eugene Martell to do my paperwork.

**INTERROGATORY NUMBER 17**

Please describe in detail the job title, job duties, rate of pay, and source of pay during 2002, of Eugene Martell and each and every person who worked for your farm labor contracting business.

**SUPPLEMENTAL ANSWER:**

Mr. Martell did paperwork and registration. His rate of pay was approximately $2,000 for the 2002 session. I have produced documents indicating payments made to all employees in 2002.

- Eugene Martell was paid a flat fee of $2000.00 for the 2002 season. I paid him from the money that I got paid by Agrigenetics.
- All Plaintiffs, and every other field laborer/detasseller, were paid by me from the money I was paid by Agrigenetics. Each got paid $70.00 per acre.
- Every one of my employees got paid from the money I was paid from Agrigenetics.
- For Maria Flores, Robert Renderos, and Eusebio Martinez total pay, see DEF 00094, 0096, 0099, 0101, 0104. They were paid a flat fee like Martell.

**INTERROGATORY NUMBER 18**

Please describe in detail what federal and state licensing and/or certification you and Eugene Martell had in 2002 to perform any farm labor contracting activities. In your response please state each specific farm labor contracting activity each person was licensed or certified to perform and whether each person was licensed or certified for each such activity by the federal government, by the State of Illinois or by both.

**SUPPLEMENTAL ANSWER:**

I had a federal and Illinois license as a Farm Labor Contractor. See DEF 0051. I was licensed by the federal government to recruit, solicit, furnish, hire, employee and drive. The state

DEFENDANT PABLO MARTINEZ'S SECOND SUPPLEMENTAL ANSWERS
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES – Page 13