UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **Armando Alonso, et al.** | § | **Civil Action No. B-04-005** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| *versus* | § | **Jury Trial Requested** |
| | § | |
| **Agrigenetics, Inc. d/b/a Mycogen Seeds,** | § | |
| **Pablo Martinez and Eugene Martell** | § | |
| | § | |
| **Defendants.** | § | |

## JOINT PRETRIAL ORDER

I.     **Appearance of Counsel**

   A.     **Plaintiffs**

   Plaintiffs are represented by Nathaniel Norton, attorney in charge, Texas

RioGrande Legal Aid, 2201 Post Rd., Ste. 104, Austin Texas 78704, Tel: (512) 447-7707,

Fax (512) 447-3940; and Rodolfo D. Sanchez, co-counsel, Texas RioGrande Legal Aid,

300 S. Texas Blvd., Weslaco Texas 78596, Tel (956) 968-9574, Fax (956) 968-8823. The

named Plaintiffs are: Armando Alonso; Melquidades Rodriguez; Rogelio Sanchez;

Gabino Martinez; Hugo Martinez; Jose Aguilon; Higinio Sanchez-Ramos; Edilberto

Martinez; Jaime Pacheco; Enrique Rodriguez; Rodolfo Rodriquez; Francisco Rodriguez;

Armando Cisneros; Everado Garcia; and Augustin Martinez.

   B.     **Defendants**

   Defendants Pablo Martinez and Eugene Martell are represented by Fernando

Saenz and Julia M. Hernandez of the Law Office of Fernando Saenz 521 East Pike,

Weslaco Texas 78596, Tel (956) 968-3100, Fax (956) 968-3400.

## II.    Statement of the Case

### a.    Plaintiffs' Statement

The plaintiffs in this case are 15 migrant farm workers who travel from south Texas to distant states such as Illinois in order to perform temporary agricultural field work. Their occupation as migrant farm workers requires them to travel far from home in reliance on promises of profitable work and decent housing made to them by Farm Labor Contractors and Agricultural Employers.  This reliance on the promises made by others makes them particularly dependent upon farm labor contractors and upon their employers for housing, employment, and other services.

When this lawsuit was filed the Plaintiffs named 3 defendants. The Defendants are: Agrigenetics Inc., d/b/a Mycogen Seed Company ("Mycogen"); Pablo Martinez; and Eugene Martell.  Plaintiffs have settled their claims with Mycogen, but they have not been able to resolve their dispute with Pablo Martinez or Eugene Martell. What follows is a short summary of the claims and facts alleged by the farm workers in this lawsuit. This summary only touches on some of the issues raised in this lawsuit.

The 15 farm workers allege that in 2002 Pablo Martinez and Eugene Martell recruited them in south Texas to do corn detasseling work in Illinois for Mycogen. Detasseling is unskilled, manual work that involves walking up and down rows of corn plucking tassels from the corn plant so that, instead of it fertilizing itself, the plant is fertilized by a plant of another variety, thus creating a hybrid. Mr. Martinez and Mr. Martell recruited about 60 farm workers, and the plaintiff farm workers allege that when they were recruited by Mr. Martinez and Mr. Martell to do this work, both Mr. Martinez and Mr. Martell violated the recruitment provisions of a federal law that protects migrant

2

and seasonal agricultural workers. This law is called the Agricultural Worker Protection Act. For example, among other things, the farm workers claim that Mr. Martinez and Mr. Martell violated the AWPA because they failed to properly disclose in writing the amount of work that the workers could expect to receive, how much they were going to be paid, and the terms and conditions of the farm worker housing that was going to be provided. The workers also claim that Mr. Martinez and Mr. Martell violated the AWPA because Mr. Martell engaged in farm labor contracting activities without being properly registered with the United States Department of Labor as a either a farm labor contractor or as a farm labor contractor employee. The farm workers also claim that Mr. Martinez and Mr. Martell violated a similar Illinois law called the Illinois Farm Labor Contractor Registration Act (IFLCA).

Mr. Martinez and Mr. Martell housed their farm worker crew at a motel located in Mount Pleasant, Iowa called the Heidelberg Motel. The farm workers claim that this housing situation violated various parts of AWPA health and safety of housing provisions. For example, neither Mr. Martinez nor Mr. Martell were authorized by the USDOL to provide migrant farm worker housing and the housing itself was not inspected or certified by the USDOL as migrant farm worker housing. In addition, the housing was overcrowded and it was not suitable for migrant farm worker housing. In this respect, the workers either had to share a bed with unrelated male co-workers or sleep on the floor; the housing did not have adequate cooking facilities; and a minimum of 4 worker were assigned to each room, and some rooms had as many as 6 occupants.

The farm workers claim that Mr. Martinez and Mr. Martell failed to properly pay them for the work that they performed. In this regard, during the corn detasseling season,

the farm workers were advanced money for the work they did, but they were not actually paid their wages until the season had ended. Based on the pay stubs provided to the workers when they were paid, the amount of money that they were advanced was not based on the hours worked by each worker nor was it based on a per acre detasseled piece-rate amount. Also, instead of being paid while still in Illinois at the end of the detasseling season, the workers did not receive their last paycheck until sometime well after the detasseling crew had returned to South Texas. The farm workers allege that the failure to pay them their wages in a timely fashion, the failure to properly record the number of hours and/or acres of corn detasseled by each worker and wages due each worker, violated the wage payment and record provisions of the AWPA, wage payment provisions of the federal minimum wage law (the Fair Labor Standards Act "FLSA"), and wage payment provisions of several Illinois state laws.

**b.    Defendants' Statement**

The plaintiffs in this case are 15 migrant farm workers who, in 2002, traveled from south Texas to Iowa in order to perform temporary agricultural field work in Illinois for independent contractor, Pablo Martinez. Plaintiffs initially named 3 defendants in this litigation which arose out of the agricultural work they performed in 2002. Of these defendants, Agrigenetics, Inc. d/b/a Mycogen Seed Company ("Mycogen") is no longer part of this lawsuit because it successfully settled its disputes with Plaintiffs. Unfortunately, Plaintiffs have been unable to resolve their claims with the remaining defendants: Pablo Martinez and Eugene Martell.

The Plaintiffs were recruited to do corn detasseling work in Illinois for Mycogen. Pablo Martinez had a contract with Mycogen to do this work so he accordingly recruited

workers to detassel corn in Mycogen's fields. Detasseling is unskilled, manual work that involves walking up and down rows of corn plucking tassels from the corn plant so that, instead of fertilizing itself, the plant is fertilized by a plant of another variety, thus creating a hybrid. The Plaintiffs traveled from their homes in South Texas to Iowa where they were provided with housing at a local hotel for the duration of the job. Martinez rented transportation from Mycogen to transport the workers from the hotel to the fields in Illinois and back on workdays. The work lasted just over three weeks for which the Plaintiffs were paid.

During the course of these events, the Plaintiffs allege that Mr. Martinez and Mr. Martell violated several provisions of federal and Illinois law concerning farm labor recruitment, migrant labor housing and transportation, sanitation, and wages. For example, Plaintiffs contend that Mr. Martinez and Mr. Martell lacked the proper certifications as required by federal and state law to recruit, transport and house them. Plaintiffs allege that the Defendants did not keep records as required by the law. There are questions as to what the Defendants duties were with respect to lodging accommodations and whether such accommodations were adequate. Plaintiffs and Defendants also dispute whether the appropriate sanitation facilities were provided in the fields. Finally, the parties differ on the issue of whether the Plaintiffs were paid according to the requirements of the law.

## III.    Jurisdiction

The Court has subject matter jurisdiction over this case based on federal question jurisdiction 28 U.S.C. 1331 and 1337, 29 U.S.C. 1854(a) conferring jurisdiction over claims arising under the Agricultural Protection Act, 29 U.S.C. 216(b) conferring

jurisdiction over claims arising under the Fair Labor Standards Act. This Court also has

supplemental jurisdiction pursuant to 28 U.S.C. 1367 over plaintiffs' claims arising under

state law because those claims are so related to the federal claims that they form part of

the same case or controversy.

**IV.    Motions**

The following motion is pending: Plaintiffs' Motion for Partial Summary

Judgment

**V.    Contentions of the Parties**

**A.    Plaintiffs' Contentions**

**<u>Introduction and Coverage</u>**

1.    At all relevant times to this action, Plaintiffs were migrant agricultural

workers protected by the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§

1801 <u>et</u> <u>seq.</u>, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u>, the

Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 <u>et</u> <u>seq.</u>, the

Illinois Farm Labor Contractor Certification Act ("IFLCCA"), 225 ILCS 505/1 <u>et</u> <u>seq.</u>,

the Illinois Field Sanitation Act ("IFSA"), 210 ILCS 105/1 <u>et</u> <u>seq.</u>, and common law.

2.    In this action, Plaintiffs allege violations of AWPA, FLSA, IWPCA,

IFLCCA, IFSA, and the common law of breach of contract and negligent

misrepresentation.

3.    Plaintiffs were farmworkers within the meaning of the IFLCCA and

agricultural workers within the meaning of the IFSA.

4.    Pablo Martinez was a farm labor contractor within the meaning of the

AWPA and the IFLCCA.

5.    Defendant Eugene Martell was a farm labor contractor or a farm labor contractor employee within the meaning of the AWPA and was a farm labor contractor within the meaning of the IFLCCA.

6.    Defendants were farm operators within the meaning of the IFSA.

7.    Pablo Martinez, with the assistance of Eugene Martell, recruited Plaintiffs in Texas for corn detasseling work in Illinois. At this time, Plaintiffs and Defendants entered into contracts that called for Plaintiffs to travel from Texas to Iowa to detassel corn for Defendants.

8.    Aside from assisting with the recruitment, Eugene Martell was primarily in charge of the housing and payroll, but he also occasionally drove workers from the housing to the fields.

9.    Neither Defendant displayed an Illinois farm labor contractor certificate to Plaintiffs at the time of Plaintiffs' recruitment.

10.    At the time of their recruitment, Plaintiffs were not given written disclosures as required by the AWPA and IFLCCA.

11.    Neither Defendant notified Plaintiffs at the time of their hiring of the Plaintiffs' rate of pay, or the time and place of payment of their wages as required by the IWPCA. It was possible for Defendants to make such a notification in writing. It was also possible for this notification to be acknowledged by Pablo Martinez and each Plaintiff. Defendants also failed to post at any worksite, in a position easily accessible to all Plaintiffs, a notice indicating regular pay days and the time and place for payment.

12.     Pablo Martinez arranged for Plaintiffs' transportation to Iowa without ensuring that each vehicle and driver met the standards required by the AWPA.

13.     In Iowa, Plaintiffs were housed in housing arranged for by Pablo Martinez and Eugene Martell.

14.     Defendants owned and/or controlled the housing occupied by Plaintiffs.

15.     Plaintiffs were housed in overcrowded conditions.  Plaintiffs had to share beds or sleep on the floor.

16.     The housing was not properly equipped for Plaintiffs to cook and eat in their rooms.

17.     Defendants did not seek certification that the housing complied with applicable health and safety standards, did not receive such certification, and did not post such certification in the housing.

18.     Defendants did not post a statement of the terms and conditions of the housing, nor did they present such a statement to each individual Plaintiff.

19.     Defendants did not make available to Plaintiffs at their place of employment, a written statement of the conditions of employment.

20.     Before the detasseling work began, Defendants transported Plaintiffs to a shed in Illinois where they attended a mandatory orientation meeting.  Upon information and belief, Plaintiffs were not paid for time spent traveling to or attending this meeting.

21.     Each morning, Pablo Martinez transported Plaintiffs from the housing in Illinois to fields in Iowa in a school bus.  He hired Roberto Renderos to drive the bus. Renderos was not certified by the U.S. Department of Labor to drive agricultural workers.

22.    The bus was overcrowded.  There were not enough seats for all the workers, so some Plaintiffs had to stand, sit on the floor, or attempt to squeeze three into a seat.

23.    Pablo Martinez provided corn detasseling work, which is agricultural employment, to Plaintiffs.

24.    Pablo Martinez did not post each field where Plaintiffs worked, a poster setting forth the rights and protections afforded migrant agricultural workers under the AWPA.

25.    Neither Defendant posted statements, as required by the IFLCCA, regarding the work, their compensation and Plaintiffs' pay in the fields or on the bus or other vehicles used to transport Plaintiffs.

26.    In some fields on some days there no toilet and handwashing facilities provided, there were an insufficient number of toilet and/or handwashing facilities provided, or toilet and handwashing facilities were over ¼ mile away from Plaintiffs in the fields.

27.    The toilets that were provided were not always maintained in a clean and sanitary condition and were not always supplied with toilet paper.

28.    On some days, drinking water ran out before the end of the day and/or drinking water was over ¼ mile away from Plaintiffs in the fields.

29.    No water fountain attachment was provided with the drinking water and single-use drinking cups were not always provided.

30.     Each day, before Plaintiffs began detasseling rows, Pablo Martinez, either directly or through his agents or employees, told Plaintiffs how much he would pay for each row.

31.     When Plaintiffs were paid they found they had not been paid the amounts promised by Pablo Martinez.

31.     Plaintiffs were not paid all of the piece-rate wages they earned during their first week of employment in their first paycheck as required by the IWPCA

32.     On the last day of the season, Defendants told Plaintiffs that they would be paid their final paycheck in Texas.

33.     It was possible for Defendants to pay Plaintiffs their final compensation before Plaintiffs left Illinois.

34.     Plaintiffs returned to Texas.

35.     Plaintiffs were paid their final paycheck at a bank in Mercedes, Texas, fifteen days after they returned to Texas.

36.     Pay statements provided with Plaintiffs' paychecks did not state the number of hours worked or the number of acres, beds, or rows of corn detasseled by each worker.  The statements also did not state a rate of pay per acre, bed, or row of corn detasseled.

37.     Defendants neither made nor preserved records showing the exact number of hours worked by each Plaintiff or the exact number of acres, beds, or rows of corn detasseled by each Plaintiff in each pay period.

38.    Neither Defendant furnished to each Plaintiff, semi-monthly or at the time of each payment of wages, an itemized statement detailing each and every deduction made from Plaintiffs' wages, as required by the IFLCCA.

39.    The working arrangement also called for Plaintiffs to be paid for the time they spent on the bus traveling from the housing to the fields, but Defendants neither made nor preserved records showing the amount of time Plaintiffs did this each day.

40.    Defendants' failed to make and preserve wage and hour records required by the AWPA, FLSA, IFLCCA, IWPCA, and implementing regulations.

41.    Defendants intentionally violated the following provisions of the AWPA:

   a.    § 1811(a) by performing farm labor contracting activities that they were not authorized to perform;

   b.    § 1821(a) by failing to make written disclosures;

   c.    § 1821(b) by failing to post a notification of rights under AWPA;

   d.    § 1821(c) by failing to post or present the terms and conditions of the housing;

   e.    § 1821(d)(1) by failing to make, keep, and preserve the required employment records;

   f.    § 1821(d)(2) by failing to provide adequate pay statements;

   g.    § 1821(f) by providing false and misleading information about the terms and conditions of agricultural employment offered;

   h.    § 1821(g) by failing to make written disclosures in Spanish;

   i.    § 1822(a) by failing to pay wages owed when due;

j.   § 1822(c) by failing to comply with the working arrangement without justification;

k.   § 1823(a) by failing to ensure that the housing complied with applicable health and safety standards;

l.   § 1823(b)(1) by failing to get the housing certified for occupancy;

m.   § 1823(b)(1) by failing to post a certification of occupancy;

n.   § 1841(b)(1)(A) by using or causing to be used substandard vehicles for transportation; and

o.   § 1843 by failing to make available at the place of employment a statement of the terms and conditions of employment.

42.   Pablo Martinez intentionally violated the following provision of the AWPA:

a.   § 1842 by utilizing Eugene Martell to perform farm labor contracting activities for which he was not authorized.

**43.**   Based upon the foregoing violations of Plaintiffs' rights under AWPA, Plaintiffs have a private cause of action for each separate violation of their rights for either their actual damages (including mental anguish) or up to $500.00 in statutory damages per violation by each Defendant per Plaintiff in order to ensure that (a) Plaintiffs are compensated for their rights under AWPA and (b) that the remedial purposes of AWPA are given effect, by, for example, promoting compliance by deterring violations.

44.   Defendants suffered or permitted the Plaintiffs to work detasseling corn for them.  Defendants violated the minimum wage law by failing to pay Plaintiffs the federal minimum wage for each hour worked in each discrete work week.

45.    Defendants violated the following provisions of the IWPCA:

    a.    820 ILCS 115/3 by failing to pay, semi-monthly, all of the wages earned by Plaintiffs;

    b.    820 ILCS 115/4 by failing to pay wages earned in a pay period by the end of the next pay period;

    c.    820 ILCS 115/5 by failing to pay Plaintiffs, when it was possible to do so, all the wages they were owed immediately upon Plaintiffs' separation from employment, and by failing to pay Plaintiffs all the wages they were owed at the next regularly scheduled payday after Plaintiffs' separation from employment; and

    d.    820 ILCS 115/10 by failing to notify Plaintiffs at the time of their hiring of their rate of pay and of the time and place of payment, by failing to do so in writing and to have it acknowledged by a Defendant and each Plaintiff when it was possible to do so, and by failing to post and keep posted at each regular place of business in a position easily accessible to all Plaintiffs any notice indicating Plaintiffs' regular pay days and the place and time for payment.

46.    Defendants are liable for Plaintiffs' unpaid wages under the IWPCA.

47.    Defendants violated the following provisions of the IFLCCA:

    a.    225 ILCS 505/8(b) by not paying Plaintiffs money entrusted to Defendants by Agrigenetics, Inc.;

    b.    225 ILCS 505/8(c) by not complying with the working arrangement;

    c.   225 ILCS 505/8(d) by not displaying at work sites and in vehicles, a written statement in Spanish showing the rate of compensation the Defendants were receiving and the Plaintiffs' rate of pay;

    d.   225 ILCS 505/8(e) by failing to keep proper payroll records;

    e.   225 ILCS 505/9(a) by failing to file with the Illinois Department of Labor a proper statement including the terms and conditions of the work; and

    f.   225 ILCS 505/9(b) by failing to disclose to Plaintiffs, in writing at the time of their recruitment, the terms and conditions of the work.

48.    Eugene Martell violated the IFLCCA, 225 ILCS 505/3, by acting as a farm labor contractor in Illinois without having a certificate of registration.

49.    Based upon the foregoing violations of Plaintiffs' rights under IFLCCA, Plaintiffs have a private cause of action for each separate violation of their rights for the greater of their actual damages (including mental anguish) or $500.00 in statutory damages per violation by each Defendant per Plaintiff.

50.    Defendants willfully violated the following provisions of the IFSA:

    a.   210 ILCS 105/5 by failing to provide, at all times, clean and sanitary toilet facilities with toilet paper;

    b.   210 ILCS 105/6 by failing to provide, at all times, proper handwashing facilities;

    c.   210 ILCS 105/7 by failing to provide, at all times, drinking water and sanitary cups;

d. 210 ILCS 105/8 by failing to provide, at all times, adequate numbers

of toilets and handwashing facilities and adequate amounts of drinking

water; and

e. 210 ILCS 105/9 by failing to locate these facilities within a quarter-

mile of Plaintiffs.

51. Defendants entered into employment contracts with Plaintiffs that called

for Plaintiffs to receive decent housing and pay at $70 per acre of corn detasseled

52. Defendants breached their employment contracts with Plaintiffs by

providing substandard housing and inadequate pay.

53. Defendants made false false representations to Plaintiffs about the work,

pay, and/or housing.

54. Plaintiffs justifiably relied on the representations made by Defendants in

Texas at the time of their recruitment in deciding to accept detasseling employment and

travel to Iowa and Illinois. Plaintiffs also justifiably relied on representations made by

Pablo Martinez, directly or through his agents or employees, in Iowa about the pay in

deciding whether or not to continue working for him.

55. These representations were made in the course of Defendants' business.

56. These representations made for the Plaintiffs' guidance in their business.

57. Defendants did not use reasonable care in obtaining or communicating this

information and made these representations with malice as the term is defined by Tex.

Civ. Prac. & Rem. Code § 41.001(7).

58. Plaintiffs' justifiable relied upon these representations proximately caused

injury to Plaintiffs.

59.    As a result of Defendants' negligent misrepresentations, Plaintiffs are entitled to actual and exemplary damages.

**B.    Defendants' Contentions**

1.    Defendants admit that Plaintiffs were migrant agricultural workers protected by the Agricultural Worker Protection Act (AWPA), 29 U.S.C. § § 1801 et seq., the Fair Labor Standards Act (FLSA), 29 U.S.C. § § 201 et seq.

2.    In addition, Plaintiffs were not protected by the Illinois Wage payment and Collection Act (IWPCA), 820 ILCS 115/1 et seq., the Illinois Farm Labor Contractor Certification Act (IFLCCA), 225 ILCS 505/1 et seq., and the Illinois Field Sanitation Act (IFSA), 210 ILCS 105/1 et seq. because they all signed contracts that any disputes would be handled under Indiana law.

3.    Defendants contend that they did not violate any provision of the AWPA, FLSA, IWPCA, IFLCCA, IFSA, nor did they violate the common law of breach of contract and negligent misrepresentation.

4.    Defendant Pablo Martinez contends that he recruited the Plaintiffs for corn detasseling work, which is agricultural employment, in Illinois.  Defendant Eugene Martell contends that he only acted as an employee of Defendant, and he did not recruit any agricultural workers.

5.    Defendant Pablo Martinez provided agricultural employment to the Plaintiffs, but Defendant Eugene Martell was only a coworker of the Plaintiffs.

6.    At all times relevant to this action, Plaintiffs were employed by Defendant Pablo Martinez.  At all times relevant to this action Defendant Eugene Martell was a coworker of Plaintiffs.

16

7.      At all times relevant to this action, Defendant Pablo Martinez was a farm labor contractor within the meaning of AWPA.  At no time was Defendant Eugene Martell a farm labor contractor within the meaning of AWPA.

8.      At all times relevant to this action, Plaintiffs were provided migrant housing by Defendant Pablo Martinez.

9.      Defendant Pablo Martinez did not own nor control the migrant housing.


**VI.    Admissions of Fact**

1.      At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A).

2.      At all times relevant to this action, Pablo Martinez was a farm labor contractor within the meaning of 29 U.S.C. § 1802(7).

3.      At all times relevant to this action, Pablo Martinez was obligated to comply with the AWPA.

4.      Pablo Martinez recruited Plaintiffs for agricultural employment in Illinois.

5.      Pablo Martinez did not file with the Illinois Department of Labor, a statement containing all the information required by 225 ILCS 505/9.

6.      Pablo Martinez transported Plaintiffs between the housing in Iowa and the fields in Illinois.

7.      At all times relevant to this action, Pablo Martinez was not certified by the U.S. Department of Labor to house agricultural workers.

8.      At all times relevant to this action, Pablo Martinez was not certified by the U.S. Department of Labor to transport agricultural workers.

9.    At all times relevant to this action, Eugene Martell was not certified by the U.S. Department of Labor to recruit, solicit, hire, employ, furnish, transport, drive, or house agricultural workers.

10.    The written disclosures given to Plaintiffs in Texas by Defendants stated that no housing would be provided.

11.    When Eugene Martell was recruiting Plaintiffs in Texas, he knew that housing would be provided to Plaintiffs.

12.    When Pablo Martinez was recruiting Plaintiffs in Texas, he knew that housing would be provided to Plaintiffs.

13.    During the Plaintiffs' work in Illinois, housing was provided to them in Iowa.

14.    During the Plaintiffs' work in Illinois, Pablo Martinez provided housing to them in Iowa.

15.    Plaintiffs did not receive five weeks of detasseling work.

16.    Plaintiffs' final wages were due to them on their last day of work in Illinois.

17.    Pablo Martinez arranged for Plaintiffs' housing.

18.    Pablo Martinez paid for Plaintiffs housing.

19.    The housing provided to Plaintiffs was constructed in 1968.

20.    Pablo Martinez assigned Eugene Martell to handle Plaintiffs' complaints about the housing.

21.    Pablo Martinez assigned Eugene Martell to handle the motel manager's complaints and concerns about the workers.

22.    Before Plaintiffs occupied the housing in Iowa, Defendants did not have any state or local health agency, or other appropriate authority, certify that the housing met the health and safety standards required by the AWPA.

23.    Before Plaintiffs occupied the housing in Iowa, Defendants did not post a certification of occupancy.

24.    Defendants did not maintain a certification of occupancy for Plaintiffs housing as required by the AWPA.

25.    Neither Defendant requested, at least forty-five days prior to Plaintiffs' occupancy of the housing, that any state or local health agency inspect the housing.

26.    There were only two beds provided in each room of Plaintiffs' housing.

27.    Neither Defendant posted in Plaintiffs' housing a statement of the terms and conditions of Plaintiffs' occupancy.

28.    Pablo Martinez used Roberto Renderos to drive workers between the housing in Iowa and the fields in Illinois.

29.    Roberto Renderos was not certified by the United States Department of Labor or the Illinois Department of Labor to drive migrant agricultural workers.

30.    Pablo Martinez employed Plaintiffs within the meaning of 29 U.S.C. § 203(g).

31.    When detasseling corn in Illinois, Plaintiffs were engaged in commerce within the meaning of 29 U.S.C. § 203(b).

32.    When detasseling corn in Illinois, Plaintiffs were engaged in the production of goods for commerce within the meaning of 29 C.F.R. § 776.16.

33.    At all times relevant to this action, Plaintiffs were employed in an enterprise engaged in commerce or an enterprise engaged in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

34.    Defendants maintained no record of the amount of time Plaintiffs spent traveling from the housing to the fields each day.

35.    Defendants maintained no record of the amount of time Plaintiffs spent traveling between fields each day.

36.    Defendants maintained no record of the amount of time Plaintiffs spent traveling from the fields to the housing each day.

37.    Pay statements provided with Plaintiffs' paychecks did not state the number of hours worked by each Plaintiff.

38.    Pay statements provided with Plaintiffs' paychecks did not state the number of acres, beds, or rows detasseled by each Plaintiff.

39.    Pay statements provided with Plaintiffs' paychecks did not state a rate of pay per acre, bed, or row detasseled.

40.    At all times relevant to this action, Pablo Martinez was Plaintiffs' employer and Plaintiffs' were his employees within the meaning of the IWPCA.

41.    Plaintiffs were employed with a weekly pay period.

42.    Defendants did not give Plaintiffs their final paycheck until more than seven days after Plaintiffs' employment in Illinois had ended.

43.    No written notification, allegedly given to Plaintiffs at the time of their hiring and notifying them of their rate of pay and the time and place of payment was acknowledged by Plaintiffs.

44.     At all times relevant to this action, Pablo Martinez was a farm labor contractor within the meaning of the IFLCCA.

45.     At all times relevant to this action, Plaintiffs were farmworkers within the meaning of the IFLCCA.

46.     At all times relevant to this action, Eugene Martell did not have a certificate of registration as farm labor contractor issued by the Illinois Department of Labor.

47.     Eugene Martell did not carry the identification with the information required by 225 ILCS 505/5.

48.     Eugene Martell did not file with the Illinois Department of Labor, a statement containing all the information required by 225 ILCS 505/9.

49.     At all times relevant to this action, Plaintiffs were agricultural workers within the meaning of the IFSA.

50.     At all times relevant to this action, Pablo Martinez was a farm operator within the meaning of the IFSA.

51.     There were approximately 52 detasselers in Pablo Martinez's crew.

52.     Over 35 detasselers in Pablo Martinez's crew worked in each field detasseled each day.

53.     The terms of the contracts called for Pablo Martinez to pay each Plaintiff $70 per acre of corn detasseled.

54.     The representations made by Pablo Martinez to Plaintiffs in Texas at the time of their recruitment were made in the course of Pablo Martinez's business.

55.     The representations made by Pablo Martinez to Plaintiffs in Texas at the time of their recruitment were made for the Plaintiffs' guidance.

## VII.    Contested Issues of Fact

1.     At all times relevant to this action, Eugene Martell was a farm labor contractor within the meaning of 29 U.S.C. 1802(7).

2.     At all times relevant to this action, Eugene Martell was obligated to comply with the AWPA.

3.     Eugene Martell recruited Plaintiffs for agricultural employment in Illinois.

4.     At all relevant times to this action, Pablo Martinez "owned" the housing in which Plaintiffs lived in Iowa, as that term is defined by 29 C.F.R. § 500.130(b).

5.     At all relevant times to this action, Pablo Martinez "controlled" the housing in which Plaintiffs lived in Iowa, as that term is defined by 29 C.F.R. § 500.130(e).

6.     At all relevant times to this action, Eugene Martell "controlled" the housing in which Plaintiffs lived in Iowa, as that term is defined by 29 C.F.R. § 500.130(e).

7.     Defendants did not give each Plaintiff, while in Texas, a written disclosure in Spanish stating the terms and conditions of the employment in Illinois.

8.     The written disclosures allegedly given to Plaintiffs in Texas by Defendants informed Plaintiffs that they would receive five weeks of work and only approximately three weeks of work was provided.

9.     When Eugene Martell was recruiting Plaintiffs in Texas, he knew that Plaintiffs would not receive five weeks of detasseling work.

10.     When Pablo Martinez was recruiting Plaintiffs in Texas, he knew that Plaintiffs would not receive five weeks of detasseling work.

11.     Plaintiffs were paid their final paycheck fifteen days after they returned to Texas.

12.     Defendants made no records showing the exact number of hours worked by each Plaintiff each pay period.

13.     Defendants have no records showing the exact number of hours worked by each Plaintiff each pay period.

14.     Defendants made no records showing the exact number of acres, beds, or rows of corn detasseled by each Plaintiff in each pay period.

15.     Defendants have no records showing the exact number of acres, beds, or rows of corn detasseled by each Plaintiff in each pay period.

16.     Defendants did not post in each field where Plaintiffs worked, a poster setting forth the rights and protections afforded migrant agricultural workers under the AWPA.

17.     Eugene Martell arranged for Plaintiffs' housing.

18.     Plaintiffs slept four or five to a room in the housing provided.

19.     There was less than sixty square feet of floor space per Plaintiff in the housing provided.

20.     Pablo Martinez caused vehicles to be used to transport some Plaintiffs from Texas to Iowa without ensuring that each vehicle and driver met the standards of 29 U.S.C. § 1841.

21.    On the bus that transported Plaintiffs between the housing in Iowa and the fields in Illinois, there was not at all times a seat for each Plaintiff.

22.    Defendants did not make available to Plaintiffs at their place of employment, a written statement of the conditions of employment.

23.    Eugene Martell employed Plaintiffs within the meaning of 29 U.S.C. § 203(g).

24.    Neither Pablo Martinez nor Eugene Martell maintained documents containing all of the information for Plaintiffs that is required by 29 C.F.R. § 516.2.

25.    Neither Pablo Martinez nor Eugene Martell has documents containing all of the information for Plaintiffs that is required by 29 C.F.R. § 516.2.

26.    At all times relevant to this action, Eugene Martell was Plaintiffs' employer and Plaintiffs' were his employees within the meaning of the IWPCA.

27.    Plaintiffs were not paid all of the piece-rate wages they earned during their first week of employment in their first paycheck.

28.    It was possible for Defendants to pay Plaintiffs their final compensation before Plaintiffs left Illinois.

29.    Neither Defendant notified Plaintiffs at the time of their hiring of the time of payment of their wages.

30.    Neither Defendant notified Plaintiffs at the time of their hiring of the place of payment of their wages.

31.    It was possible for Defendants to notify Plaintiffs, in writing at the time they were hired, of the rate of pay and of the time and place of payment.

32.     It was possible for this notification to be acknowledged by Pablo Martinez and each Plaintiff.

33.     No such written notification of the rate of pay and the time and place of payment was given to Plaintiffs.

34.     At all times relevant to this action, Eugene Martell was a farm labor contractor within the meaning of the IFLCCA.

35.     Pablo Martinez did not exhibit his Illinois farm labor contractor certificate to each Plaintiff when he recruited them.

36.     Pablo Martinez did not display prominently at each of Plaintiffs' work sites, a written statement in English and Spanish showing his rate of compensation and the rate of compensation he paid to Plaintiffs.

37.     Pablo Martinez did not display prominently on each vehicle he used to transport Plaintiffs, a written statement in English and Spanish showing his rate of compensation and the rate of compensation he paid to Plaintiffs.

38.     Eugene Martell did not display prominently at each of Plaintiffs' work sites, a written statement in English and Spanish showing his rate of compensation and the rate of compensation he paid to Plaintiffs.

39.     Eugene Martell did not display prominently on each vehicle he used to transport Plaintiffs, a written statement in English and Spanish showing his rate of compensation and the rate of compensation he paid to Plaintiffs.

40.     Pablo Martinez did not keep the payroll records required by 225 ILCS 505/8(e).

41.    Eugene Martell did not keep the payroll records required by 225 ILCS 505/8(e).

42.    Pablo Martinez did not semi-monthly or at the time of each payment of wages, furnish to each Plaintiff the statement required by 225 ILCS 505/8(f).

43.    Eugene Martell did not semi-monthly or at the time of each payment of wages, furnish to each Plaintiff the statement required by 225 ILCS 505/8(f).

44.    All of the information listed in 225 ILCS 505/9 was not disclosed in writing to each Plaintiff at the time each Plaintiff was recruited.

45.    At all times relevant to this action, Eugene Martell was a farm operator within the meaning of the IFSA.

46.    Toilets were not provided in every field in which Plaintiffs worked.

47.    Toilets in the fields were not at all times supplied with toilet paper.

48.    Toilets in the fields were not at all times maintained in a clean and sanitary condition.

49.    Handwashing facilities equipped with potable water, soap, and disposable towels or equivalent drying means were not provided in every field in which Plaintiffs worked.

50.    Potable drinking water with fountain attachments or individual sanitary cups was not provided at all times in each field in which Plaintiffs worked.

51.    At least two toilets were not provided in every field in which Plaintiffs worked.

52.    At least two handwashing facilities were not provided in every field in which Plaintiffs worked.

53.     On occasion, the supply of drinking water ran out before the end of the work day.

54.     A toilet was not at all times located within ¼ mile of every Plaintiff when Plaintiffs were in the fields.

55.     A handwashing facility was not at all times located within ¼ mile of every Plaintiff when Plaintiffs were in the fields.

56.     A drinking water facility was not at all times located within ¼ mile of every Plaintiff when Plaintiffs were in the fields.

57.     In Texas, Plaintiffs entered into contracts with Pablo Martinez.

58.     In Texas, Plaintiffs entered into a contract with Eugene Martell.

59.     The terms of the contracts called for Plaintiffs to travel to Illinois and/or Iowa to detassel corn.

60.     Plaintiffs justifiably relied on the representations made by Pablo Martinez in Texas at the time of their recruitment in deciding to accept detasseling employment and travel to Iowa and Illinois.

61.     The representations made by Eugene Martell to Plaintiffs in Texas at the time of their recruitment were made in the course of Pablo Martinez's business.

62.     The representations made by Eugene Martell to Plaintiffs in Texas at the time of their recruitment were made for the Plaintiffs' guidance.

63.     Plaintiffs justifiably relied on the representations made Eugene Martell in Texas at the time of their recruitment in deciding to accept detasseling employment and travel to Iowa and Illinois.

## VIII.  Agreed Propositions of Law

1.      It is the purpose of the AWPA to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this Act; and to assure necessary protection for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers.  29 U.S.C. § 1801.

2.      AWPA requires that each agricultural employer and farm labor contractor who recruits any migrant agricultural worker shall ascertain and disclose in writing at the time of recruitment the following information:

      (a) the place of employment;

      (b) the wage rates to be paid;

      (c) the crops and kinds of activities on which the worker may be

          employed;

      (d) the period of employment;

      (e) the transportation, housing, and any other employee benefit to be

          provided, if any, and any costs to be charged for each of them; and

     i.      the existence of any arrangement with any establishment under which

          the agricultural employer is to receive a commission or any other

          benefit resulting from sales by such establishment to the workers.

29 U.S.C. § 1821(a).

3.    AWPA requires each agricultural employer who employs any migrant agricultural worker to post in a conspicuous place at the place of employment, a poster setting forth the rights and protections afforded under AWPA.  29 U.S.C. § 1821(b).

4.    AWPA requires each agricultural employer or farm labor contractor who provides housing for any migrant agricultural worker to post in a conspicuous place or present to each worker a statement of the terms and conditions of occupancy of the housing.  29 U.S.C. § 1821(c).

5.    AWPA requires that each agricultural employer and farm labor contractor which employs migrant agricultural make, keep, and preserve for three years records of the following information with respect to each worker:

(a) the basis on which wages are paid;

(b) the number of piecework units earned;

(c) the number of hours worked;

(d) the total pay period earnings;

(e) the specific sums withheld and the purpose of each sum withheld; and

(f) the net pay.

29 U.S.C. § 1821(d)(1).

6.    AWPA requires that each worker be given be given, each pay period, an individualized written wage receipt itemizing the following:

(1) the basis on which wages are paid;

(a) the number of piecework units earned, if paid on a piecework basis;

(2) the number of hours worked;

(3) the total pay period earnings;

(4) the specific sums withheld and the purpose of each sum withheld; and

(5) the net pay. 29 U.S.C. § 1821(d)(2).

7.    Such itemized written statements required to be provided to workers by agricultural employers and farm labor contractors must also include the following information: employer's name, address, and employer identification number assigned by the Internal Revenue Service. U.S. Department of labor Opinion Letter No. 1577 (WH-524), May 9, 1984.

8.    AWPA requires agricultural employers and farm labor contractors to provide the information required by § 1821(a) through (c) in written form in English or, as necessary and reasonable, in Spanish or other language common to migrant agricultural workers who are not fluent or literate in English. 29 U.S.C. § 1821(g); De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225 (7th Cir.1983); Espinoza v. Stokely-Van Camp, Inc., 641 F.2d 535, 539 (7th Cir. 1981).

9.    In recruitment disclosures, the name and place of the employer must be disclosed with as much specificity as possible because the place of employment is important to the worker's decision. Opinion Letter of Wage & Hour Administrator No. 1577 (May 9, 1984).

10.    AWPA prohibits agricultural employers and farm labor contractors knowingly providing false or misleading information to migrant agricultural workers

concerning the terms, conditions, or existence of agricultural employment and housing required to be disclosed by the Act or regulations. 29 U.S.C. § 1821(f).

11.    AWPA prohibits that agricultural employers and farm labor contractors violating, without justification, the terms of any working arrangement made by that contractor or employer with any migrant agricultural worker. 29 U.S.C. § 1822(c); Williams v. Tri-County Growers, Inc., 747 F.2d 121 (3rd Cir. 1984); Espinoza v. Stokely-Van Camp, Inc., 641 F.2d 535 (7th Cir. 1981); Colon v. Casco, 716 F.Supp 688 (D.Mass. 1989).

12.    AWPA requires that agricultural employers and farm labor contractors who employ agricultural workers pay the wages owed to the workers when due. 29 U.S.C. § 1822(a); Donaldson v. U.S. Dept. of Labor, 930 F.2d 339 (4th Cir. 1991).

13.    AWPA requires that any person who owns or controls a facility or real property which is used as housing for migrant agricultural workers and their families ensure that the housing complies with substantive Federal and State safety and health standards applicable to that housing. 29 U.S.C. § 1823(a).

14.    AWPA requires that any person utilizing the services of any farm labor contractor take reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized. 29 U.S.C. § 1842.

15.    Reasonable steps pursuant to 29 U.S.C. § 1842 include examining the contractor's certificate of registration or confirming such registration through the Department of Labor. 29 U.S.C. § 1842.

16.     AWPA prohibits any person from engaging in a farm labor contracting activity, unless such person has a certificate of registration permitting participation in said activity.  29 U.S.C. § 1811(a).

17.     The AWPA requires that a farm labor contractor who owns or controls migrant farm worker housing must have authorization for the U.S. Department of Labor to engage in that activity.  29 U.S.C. §§ 1811, 1812.

18.     If a farm labor contractor hires, employs or uses an individual to perform farm labor contracting activities for which he or she is unauthorized by the U.S. Department of Labor, the farm labor contractor is responsible for any violations of the AWPA or its regulations regardless of whether the employee possesses a certificate of registration based on the contractor's certificate of registration.  29 U.S.C. §1811(b).

64.     As used in the AWPA "farm labor contractor" means any person who for any money or other valuable consideration paid or promised to be paid, performs any farm labor contracting activity.  29 U.S.C. 1802(7).

20.     As used in the AWPA, "Farm labor contracting activity" means recruiting, soliciting, hiring, employing, furnishing or transporting of any migrant or seasonal worker. 29 U.S.C. §1802(6).

21.     The Court may award actual or statutory damages for each intentional violation of AWPA or any regulation under AWPA. 29 U.S.C. § 1854(c)(1).

22.     AWPA allows Plaintiffs to elect to seek either statutory damages or prove up actual damages as to each alleged violation of the Act.  If Plaintiffs elect to

seek statutory damages as to any violation, the Court may award up to $500.00 per person per violation. 29 U.S.C. 1854(c)(l).

23.    A party may be held responsible for the acts of its purported agent under two agency theories. The first theory requires that the principal have endowed its agent with actual authority, express or implied, to carry out his wishes.

24.    To create an agency relationship based on actual authority, such authority must have been delegated to the agent either by words that expressly authorize him to do a delegable act, or by authority which may be implied from the facts and circumstances surrounding the transaction in question.

25.    The second method by which a third party can become bound by the acts of its agent is based on apparent authority. Apparent authority arises when the principal, either intentionally or by lack of ordinary care, induces third persons to believe an individual is his agent even though no actual authority, express or implied has been granted to such individual.

26.    To hold a principal liable under the doctrine of apparent authority, a party must show that when dealing with the supposed agent, he has relied on the agent's authority in good faith, in the exercise of reasonable prudence.

27.    AWPA requires each agricultural employer or farm labor contractor who provides housing for any migrant agricultural worker to post in a conspicuous place or present to each worker a statement of the terms and conditions of occupancy of the housing, including:

(a) the name and address of the agricultural employer providing the housing;

(b) the name and address of the individual in charge of the housing;

(c) the mailing address and phone number where persons living in the housing facility may be reached;

(d) who may live at the housing facility;

(e) the charges to be made for housing;

(f) the meals to be provided and the charges to be made for them;

(g) the charges for utilities; and

(h) any other charges or conditions of occupancy.

29 U.S.C. § 1821(c); 29 C.F.R. § 500.75(f).

28.    A farm labor contractor who controls any facility used to house migrant agricultural workers must have authorization from the Department of Labor to engage in that activity.  29 U.S.C. § 1811 and 1812(3); Howard v. Malcolm, 852 F.2d 101 (4th Cir. 1988).

29.    Under AWPA, an "agri cultural employer" means any person who owns or operates a farm, ranch or packing shed and who either recruits, solicits, hires, employs, furnishes, or transports any migrant agricultural worker.  29 U.S.C. § 1802(2).

30.    As used in AWPA, "recruit" includes recruitment through an agent. H.R. Rep. No. 97-885, 97th Cong., 2d Sess. 14, *reprinted in* 1982 U.S. Code Cong. and Admin. News 4560.

31.    As used in AWPA, to "provide" housing means to make housing available, procure housing, or furnish housing.  H.R. Rep. No. 97-885, 97th Cong., 2d Sess. 15, *reprinted in* 1982 U.S. Code Cong. and Admin. News 4561.

32.    As used in AWPA, to "own" housing means to have a legal or equitable interest in the housing.  29 C.F.R. § 500.130(b).

33.    As used in AWPA, to "control" housing means to be in charge of the housing, or to have the authority to oversee, manage, superintend, or administer the housing either personally or through an agent.  29 C.F.R. § 500.130(c).

34.    Each person who owns or controls a facility or real property which is used as housing for any migrant agricultural worker must ensure that the facility or real property complies with all substantive Federal and State safety and health standards applicable to such housing.  If more than one person is involved in providing the housing (for example, when an agricultural employer owns it and a farm labor contractor or any other person operates it), both persons are responsible for ensuring that the facility or real property meets the applicable Federal and State housing standards.  29 C.F.R. § 500.130(a).

35.    In determining an award of statutory damages, the court may consider a variety of factors set forth in Beliz v. McLeod & Sons Packing Co. 765 F.2d 1317, 1332-1333 (5th Cir. 1985).  Separate statutory damages may be awarded for similar AWPA violations occurring in successive seasons.  Leach v. Johnson, 812 F.Supp 1198, 1211 (M.D. Fla 1992).

36.    In order to be properly licensed, housing furnished to migrant agricultural workers must be certified to have met both federal and state safety and health standards.  29 U.S.C. § 1823(a) and (b); 29 C.F.R. § 500.134; Howard v. Malcolm, 658 F.Supp. 423, 432 (E.D.N.C. 1987).

37.    Federal regulations require 60 square feet of space per occupant if workers will cook, live, and sleep in that space.  29 C.F.R. § 654.407(c)(3).

38.    In a migrant housing unit where workers are permitted or required to cook, a space shall be provided and equipped for cooking and eating.  Such space must be equipped with, inter alia, a cookstove or hotplate with at least two burners and a table and chairs or equivalent seating and eating arrangements.  29 C.F.R. § 654.413(a).

39.    As used in AWPA, "recruit" means to hire or otherwise obtain to perform services.  H.R. Rep. No. 97-885, 97th Cong., 2d Sess. 13-14, *reprinted in* 1982 U.S. Code Cong. and Admin. News 4559-60, (the term "recruit" should be given its ordinary meaning); Soliz v. Plunkett, 615 F.2d 272, 276 (5th Cir. 1980)(Webster's New International Dictionary may be used as reference for ordinary meaning); Contreras v. Mt. Adams Orchard Corp., 744 F. Supp. 1007 (E.D. Wash. 1990) (for AWPA purposes, the term "recruit" includes "all pre-employment discussions that relate to a worker's employment.")

40.    Intentional within the meaning of 29 U.S.C. § 1854(c)(1) means "conscious or deliberate" and does not require a specific intent to violate the Act.  The standard for an intentional violation is the common civil standard which holds a person

liable for the natural consequences of his or her acts. <u>Castillo v. Givens</u>, 704 F.2d 181, 197-98 (5th Cir. 1983).

41.    Agency is a fiduciary relation which results when one person (the principal) consents to have another (the agent) act on behalf of the principal and subject to his control, and the agent consents to so act. <u>Republic Banker Life Insurance Co. v. Wood</u>, 792 S.W.2d 768 (Tex. App. 1990).

42.    An agency agreement may be express or may be implied from words, conduct, or circumstances. <u>Orozco v. Sander</u>, 824 S.W.2d 555 (Tex. 1992).

43.    Acts done by an agent, whenever they are within the scope of the agent's actual or apparent authority, are binding on the principal. <u>Hedley Feedlot, Inc. v. Weatherly Trust</u>, 855 S.W.2d 826 (Tex. App. 1993).

44.    An agent's authority may be actual, either express or implied, or apparent. <u>Polland & Cook v. Lehmann</u>, 832 S.W.2d 729 (Tex. App. 1992).

45.    An employment contract can be oral provided it is to be performed within one year from the date of making the agreement. <u>Winograd v. Willis</u>, 789 S.W.2d 307, 310-311 (Tex. App. 1990).

46.    An employment contract may be express or implied from actions and conduct. <u>United Transportation Union v. Brown</u>, 694 S.W.2d 630, 632-33 (Tex. App. 1985).

47.    Where an employment contract provides for a definite term of employment, an employer may not prematurely discharge an employee absent good cause. <u>Lone Star Steel Co. v. Wahl</u>, 636 S.W.2d 217, 220 (Tex. App. 1982).

48.    Damages available to an employee for breach of an employment contract by an employer include recovery of the wages contracted for less any amounts of money received. Watts v. St. Mary's Hall, Inc., 662 S.W.2d 55, 58 (Tex. App. 1983).

49.    At all times relevant to this action, the federal minimum wage was $5.15 per hour. 29 U.S.C. §206(a).

50.    FLSA requires employers to pay employees employed in agriculture the minimum wage in effect at the time of the employment. 29 U.S.C. § 206(a); Williams v. Tri-County Growers, Inc., 747 F.2d 121, 127 (3rd Cir. 1984).

51.    The federal minimum wage must normally be paid free and clear; that is, FLSA guarantees an employee a "cash-in-hand" payment of the minimum wage. Brennan v. Veterans Cleaning Services, Inc., 482 F.2d 1362, 1369 (5th Cir. 1973); Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974). This guarantee aims to fulfill the goal of the FLSA which is to correct conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. Veterans Cleaning, 482 F.2d at 1368.

52.    A migrant agricultural worker may recover under AWPA's § 1822(a) for wages owed under an independent legal obligation. Donaldson v. U.S. Dept. of Labor, 930 F.2d 339, 350 (4th Cir. 1991).

53.    Under FLSA, employment "is as much a matter of circumstance as it is of consensual agreement. A relationship my exist between two parties whether or not

either or both of them give express recognition." <u>Gulf King Shrimp Co. v. Wirtz</u>, 407 F.2d 508, 512 (5th Cir. 1969).

54.    Under FLSA, waiting time is compensable where the employee is "engaged to wait" for the benefit of the employer. <u>Skidmore v. Swift & Co.</u>, 65 S.Ct. 161, 163 (1944); <u>Vega v. Gaspar</u>, 36 F.3d 417, 425 (5th Cir. 1994)

55.    Waiting time benefits the employer where it is requested or required by the employer. <u>Vega</u>, 36 F.3d at 425.

56.    In particular, in the farm worker context, waiting time is compensable where the farm worker, prior to beginning a task, must wait in the field for conditions to be right to perform the task–such as waiting for the sun to rise, for the dew to dry, or for trailers to arrive in the fields. <u>Vega</u>, 36 F.3d at 425; <u>Mireles v. Frio Foods, Inc.</u>, 899 F.2d 1407, 1414 (5th Cir. 1990); <u>Sedano v. Mercado</u>, 124 Lab.Cas. (CCH) ¶ 35,756 (D.N.M. 1992).29 C.F.R. § 785.15.

57.    Time spent traveling between fields during the course of the day is compensable time. <u>Alba v. Gonzales</u>, 124 Lab. Cas. ¶ 35,755 (D.N.M. 1992).

58.    Time spent attending required meetings and trainings is compensable time. 29 C.F.R. § 785.27.

59.    Every employer subject to the provisions of the Fair Labor Standards Act is required to make, keep, and preserve such records of the persons employed by him of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for three years. 29 U.S.C. 211(c), 29 C.F.R. § 516.5.

60.    The purpose of these record keeping regulations is to ensure the each employee at least receives the minimum wage rate for each hour worked. Williams v. Tri-County Growers, Inc., 747 F.2d 121, 127 (3rd Cir. 1984). The workweek - seven consecutive 24 hour periods - is the basis for determining the worker's hourly earnings, and the workweek is the standard for computing all wage and hour violations; if the worker's total earnings for the workweek divided by the number of compensable hours is less than the minimum wage, a minimum wage violation has occurred. See Overnight Motor Transp. Co. v. Missel, 316 US. 572 (1942); Dove v. Coupe, 759 F.2d 167, 171-72 (D.C.Cir. 1985); 29 C.F.R. §§ 778.105 and 778.107-111.

61.    The duty of keeping records of hours worked by employees is the primary duty of the employer, and this duty cannot be delegated to the employees so as to excuse the employers for any neglect or default in connection with the record keeping. Castillo v. Givens, 704 F.2d 181, 194 (5th Cir. 1983); Wirtz v. Mississippi Publishers Corp., 364 F.2d 603, 607 (5th Cir. 1966).

62.    The employer has the duty of keeping accurate, not merely estimated, records of the hours worked by employees. Williams v. Tri-County Growers, Inc., 747 F.2d 121, 128 (3rd Cir. 1984).

63.    An employer fails to fulfill its duty to keep accurate wage and hour records where the an agent of the employer records the employees' working hours based upon that agent's partial observation of the employees' labor. Williams v. Tri-County Growers, Inc., 747 F.2d 121, 1226-28 (3rd Cir. 1984).

64.    Under FLSA, the following burden-shifting scheme applies where the court must determine how many hours a worker worked.  An employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to disprove the reasonableness of the inference to be drawn from the employee's  evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.  In particular, where the employer's  records are inaccurate or inadequate and the employee cannot offer convincing substitutes, the solution is <u>not</u> to penalize the employee by denying him any recovery.  <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 686-88 (1946); <u>Castillo v. Givens</u>, 704 F.2d 181, 194 (5th Cir. 1983); <u>Williams v. Tri-County Growers, Inc.</u>, 747 F.2d 121, 128 (3rd Cir. 1984).

65.    Testimony from the employee regarding the number of hours worked may be sufficient evidence to shift the burden onto the employ to disprove the reasonableness of the employee's  evidence.  <u>Williams v. Tri-County Growers, Inc.</u>, 747 F.2d 121, 128 (3rd Cir. 1984).

66.    Under FLSA, any employer who violates 29 U.S.C. § 206 is liable to the employees affected in the amount of their unpaid minimum wages, an additional

equal amount as liquidated damages, a reasonable attorney's  fee and costs of the action.  29 U.S.C. § 216(b).[1]

67.    Under Illinois law, every employer is required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period.  820 ILCS 115/3.

68.    Under Illinois law, all wages earned by any employee during a semi-monthly or bi-weekly pay period must be paid to the employee no later than thirteen days after the end of the pay period in which the wages were earned.  820 ILCS 115/4.

69.    Under Illinois law, all wages earned by any employee during a weekly pay period must be paid to the employee no later than seven days after the end of the pay period in which the wages were earned.  820 ILCS 115/4.

70.    Under Illinois law, an employee's  final compensation must be paid, in full, at the time of separation, if possible.  If this is not possible, the final compensation must be paid no later than the next regularly scheduled payday for the employee. 820 ILCS 115/5.

71.    Under Illinois law, employers must notify employees at the time they are hired of the rate of pay and of the time and place of payment.  Whenever possible, this notification must be in writing and must be acknowledged by both parties.  820 ILCS 115/10.

72.    Under Illinois law, employers must post and keep posted at each regular place of business in a position easily accessible to all employees one or more notices indicating the regular pay days and the place and time for payment.  820 ILCS 115/10.

_____

[1]Plaintiffs are not seeking attorney's fees.

73.    Under Illinois law, a "f arm labor contractor" means any person who for valuable consideration recruits, supplies or hires, or transports into or within the state any farmworker and directs, supervises or controls all or any part of the work of such farmworkers or who disburses wages to such farmworkers.  225 ILCS 505/2(a).

74.    Under Illinois law, a "f armworker" means any person who moves seasonally from one place to another for purpose of obtaining employment related to the planting, raising or harvesting of any agricultural commodities.  225 ILCS 505/2(f).

75.    Under Illinois law, no person may act as a farm labor contractor unless that person has in his immediate possession a certificate of registration issued by the Illinois Department of Labor.  225 ILCS 505/3.

76.    Under Illinois law, every full-time or regular employee of a farm labor contractor is required to obtain and carry an Employees Farm Labor Identification Card when engaging in activities for the farm labor contractor.  225 ILCS 505/5.

77.    Under Illinois law, farm labor contractors must do all of the following:

a.    carry a certificate of registration with them at all times and exhibit the certificate to all persons with whom they intend to deal as a farm labor contractor prior to dealing with them;

b.    pay promptly to farmworkers all money entrusted to the contractor by any third person for such purpose;

c.    comply with the terms and provisions of agreements and arrangements entered into with farmworkers;

    d.   display prominently in every field and on all vehicles used by the contractor to transport farmworkers, a written statement in English and Spanish showing the rate of compensation the contractor is receiving and the rate of compensation the contractor is paying to farmworkers;

    e.   keep payroll records which show for each farmworker the total and net earnings per pay period, all withholdings from wages, the number of units of time employed and the rate per unit of time, for farmworkers employed on a time basis, and the piece rate basis, the number of units of work performed, and the rate per unit, for farmworkers employed on a piece rate basis; and

    f.   furnish to each farmworker with their pay, an itemized statement, in writing, detailing each and every deduction made from their pay.

225 ILCS 505/8.

    78.   Under Illinois law, a farm labor contractor may not recruit farmworkers unless he first files with the Illinois Department of Labor a statement containing all of the following information:

    a.   the location of employment;

    b.   the crops and operations involved;

    c.   the transportation, housing, and insurance to be provided farmworkers;

    d.   rates of compensation or wages;

 e. the period of employment;

 f. the existence of any strike, work stoppage, etc.;

 g. all charges to be made by the farm labor contractor for his services; and

 h. the existence of any arrangements with any owners, establishments, etc., under which the farm labor contractor is to receive a commission on sales to farmworkers recruited by the farm labor contractor.

225 ILCS 505/9(a).

 79. Under Illinois law, farm labor contractors must disclose to every farmworker at the time of recruitment, the same information required to be filed under 225 ILCS 505/9(a). This disclosure must be written in a language in which the farmworker is fluent and written in a manner understandable to farmworkers. 225 ILCS 505/9(b).

 80. Plaintiffs have a private cause of action for each separate violation of their rights under the IFLCCA for the greater of their actual damages (including mental anguish) or $500.00 in statutory damages per violation by each Defendant per Plaintiff. 225 ILCS 505/14.

 81. Under Illinois law, a "f arm operator" includes any person, or any officer or agent acting on behalf of such person, who is the employer of agricultural workers. 210 ILCS 105/2(a).

82.    Under Illinois law, the terms "agricultural worker" and "worker" mean any individual who is engaged in employment involving the harvesting, planting or cultivating of food or nursery products by manual labor.  210 ILCS 105/2(b).

83.    Under Illinois law, the term "far m operation" means activities relating to planting, cultivating or harvesting of food or nursery products.  210 ILCS 105/2(c).

84.    Under Illinois law, every farm operation must provide toilet, handwashing, and drinking water facilities when ten or more workers are employed. 210 ILCS 105/4.

85.    Under Illinois law, toilets must be provided with toilet paper and must be maintained in a clean and sanitary condition.  210 ILCS 105/5.

86.    Under Illinois law, handwashing facilities must include a supply of potable water, soap, and disposable towels or equivalent drying means.  210 ILCS 105/6.

87.    Under Illinois law, drinking water must be provided in covered containers with either drinking fountain attachments or with individual sanitary drinking cups.  210 ILCS 105/7.

88.    Under Illinois law, at least one toilet and one handwashing facility must be provided for every 35 agricultural workers or fraction thereof.  Drinking water must be provided in sufficient quantity for all workers for their entire work days.  210 ILCS 105/8.

89.    Under Illinois law, a toilet, a handwashing facility and a drinking water facility must be located within ¼ of mile of every worker at all times.  210 ILCS 105/9.

IX.    **Contested Propositions of Law**

Defendants contest:

A.    those propositions of law only to the extent which they may be incorrectly propounded in section VIII; and

B.    that Illinois law applies in this case because the Contractor Personnel Agreement signed by all Plaintiffs provides that Indiana law applies to any disputes arising out of the relationship between Defendants and Plaintiffs.

X.    **Exhibits**

The parties' exhibit lists are attached.

XI.    **Witnesses**

The parties witness lists are attached.

XII.    **Settlement**

Settlement efforts are ongoing; however, it does not appear that this case will be settled. Thus, it appears that this case will have to be tried.

XIII.    **Trial**

The parties estimate that it will take 3 to 5 days to try this case. This time estimate will be adjusted downward if the Court grants all or a substantial portion of Plaintiffs' Motion for Partial Summary Judgment. Also, Plaintiffs are migrant farm workers who migrate to rural areas inside and outside the state of Texas. Because of possible logistical problems contacting Plaintiffs and arranging transportation to Brownsville, Texas, the parties request as much advance notice of the start of trial as possible.

## XIV. Other Attachments

The parties' proposed voir dire questions and proposed charges are attached.


APPROVED AND FILED this _____ day of _____, 2005, at

Brownsville, Texas.

                          _____
                          U.S. DISTRICT JUDGE HILDA G. TAGLE



Approval Recommended

_____
Nathaniel Norton
Attorney for Plaintiffs


_____
Julia Hernandez
Attorney for Defendants