**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ARMANDO ALONSO, ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action B-04-005** |
| | § | |
| **PABLO MARTINEZ and** | § | |
| **EUGENE MARTELL** | § | |
| | § | |
| **Defendants.** | § | |

**OPINION AND ORDER**

BE IT REMEMBERED that on July 25, 2005, the Court **GRANTED IN PART** and **DENIED IN PART** Plaintiffs' Motion for Partial Summary Judgment. Dkt. No. 56.

**I.    Introduction**

Migrant agricultural workers from Cameron and Hidalgo Counties, Texas, filed suit with this Court on January 9, 2004, naming Pablo Martinez ("Martinez"), a farm labor contractor, and his employee Eugene Martell ("Martell"), as defendants.[1] Dkt. No. 1. The pleading alleges that in 2002, the defendants' conduct in recruiting, employing, and housing the plaintiffs while working at agricultural fields in Illinois, violated the Agricultural Worker Protection Act ("AWPA"), the Fair Labor Standards Act ("FLSA"), a number of Illinois laws, and the common law.

Plaintiffs filed for partial summary judgment on May 25, 2005. Dkt. No. 56. The motion seeks a determination that the defendants are liable for numerous violations of federal and State statutes in connection with their recruitment of the plaintiffs. Neither defendant

---

[1]The plaintiffs' complaint further sought relief against Agrigenetics, Inc. d/b/a Mycogen Seeds ("Mycogen"). However, on April 19, 2005, this Court granted plaintiffs' unopposed motion to dismiss with prejudice all claims against Mycogen after the two sides reached a settlement. Dkt. No. 54. Consequently, only Martinez and Martell remain as defendants in this case.

1

responded to the plaintiffs' motion.

## II.    Standard of Review

Granting a motion for summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. Rule 56(c). "The substantive law determines which facts are material." Kee v. City of Rowlett, 247 F.3d 206, 210 (5th Cir. 2001). A genuine dispute about a material fact exists "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" In re Cooper/T. Smith, 929 F.2d 1073, 1076 (5th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue is material if its resolution could affect the outcome of the action" under the governing law. Roberts v. Cardinal Services, Inc., 266 F.3d 368, 373 (5th Cir. 2001); Anderson, 477 U.S. at 248. In assessing whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the non-moving party, here the defendants. BP Oil Intern., Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003).

To adequately motion for summary judgment, the moving party must inform the Court of the basis of its motion and demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then "shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue" of material fact. Racal Survey U.S.A., Inc. v. M/V COUNT FLEET, 231 F.3d 183, 187 (5th Cir. 2000).

In this case, the defendants have failed to respond to the plaintiffs' motion for partial summary judgment. The Court may not, however, grant plaintiffs' motion on that basis alone. Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988); see also Fed.R.Civ.Pro. Rule 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."). Nonetheless, the defendants' failure to respond "constitutes an admission . . . that there are no disputed issues of genuine fact warranting a

trial." Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995). Accordingly, the Court accepts as undisputed the description of the facts set forth in the plaintiffs' motion and proceeds to determine whether the plaintiffs have met their initial burden of proving entitlement to summary judgment. Eversley, 843 F.2d at 174 (approving of district court's decision to accept movant's version of the facts in summary judgment when nonmovant failed to respond to the motion); Stults v. Conoco, Inc., 76 F.3d 651, 657 (5th Cir. 1996) ("Because [the nonmovants] filed no timely response, they did not meet their burden to designate specific facts showing that there is a genuine issue for trial." (internal quotations omitted)); United States v. Akhtar, 95 F. Supp. 2d 668, 671 (S.D.Tex. 1999) (Crone, J.); AFD Fund v. Hinton, Inc., 2004 WL 2296983, at *1 n.1 (N.D.Tex. 2004).

## III.    Facts

Mycogen employed Defendant Martinez to supply agricultural labor for its Illinois cornfield. Dkt. No. 56, Ex.5 at 3.6; Ex.7, No.14.[2] Martinez is a farm labor contractor, as defined in AWPA,[3] certified by the Department of Labor ("DOL") to recruit and drive migrant workers, but not to house nor transport[4] them. Ex.1; Ex.5, Nos. 3.6, 4.3. Martinez, in turn, employed Defendant Martell, who was not certified by any State or the federal government to perform any farm labor contracting activities. Ex.8, Nos. 16, 17. Martinez hired plaintiffs, migrant agricultural workers from South Texas. Ex.5, at 1.1, 6.1; Ex.6 at 4. The plaintiffs' employment lasted about sixteen days. Ex.10, p.124.

In the summer of 2002, Martinez and Martell recruited the plaintiffs to detassel corn at Mycogen's Illinois cornfield. Ex.5, at 3.6, 4.5, & 6.2; Ex.6, No.4. Workers met with Martinez

---

[2]All citations to the record within the "Facts" section derive from the plaintiffs' motion for partial summary judgment. Dkt. No. 56.

[3]29 U.S.C. §1802(7) (2004) ("The term 'farm labor contractor' means any person . . . who, for any money or other valuable consideration paid or promised to be paid, performs any farm labor contracting activity."); see also id. at § 1802(6) ("The term 'farm labor contracting activity' means recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker.").

[4]Compare 29 C.F.R. § 500.48(d) (2004) (transporting migrant workers), with id. § 500.48(e) (2004) (driving migrant workers).

at his home in Mercedes, Texas, where he described the work being offered. Ex.13, p.5; Ex.15, p.5; Ex.21, p.5. When speaking with the plaintiffs, Martinez and Martell reviewed two attached documents ("documents" or "recruitment documents"). Ex.3; Ex.10, pp.75-77; Ex.11, pp.142-43. The documents state that the period of employment extended from July 5, 2002, until August 10, 2002, a period of thirty-two days. Ex.3. The documents also disclose that no housing would be provided and the names of two separate workers' compensation carriers are listed. Ex.3; Ex.11, pp.142-43. These documents, the only written disclosures Martinez or Martell reviewed with the plaintiffs at any relevant time in 2002, do not relate when or where the plaintiffs would be paid. Ex.3; Ex.11, p.143.

The recruitment documents twice describe the plaintiffs offered pay. Ex.3. On one page, the information states that a worker would be paid $6.50 an hour. Id. On the other page, however, the reader is told that pay is based upon a rate of $70 per acre. Id. The contradictory information caused confusion among the plaintiffs. Ex.21, pp.5-6, 19; Ex.13, pp.5-6; Ex.17, pp.6-7, 16-17. Nonetheless, both defendants testified that the total number of acres worked defined the plaintiffs' pay. Ex.10, pp.32-33; Ex.11, p.130. No one kept track, however, of the total amount each plaintiff worked in calculating the first of two paychecks. Ex.11, p.130. The second paycheck amounts were based on a $70 per acre rate. Ex.10, p.32. The pay statement of plaintiff Jaime Pacheco, dated July 26, 2002, does not exhibit the number of acres detasseled. Ex.2. Although the pay statement lists a pay rate of 6.5000 (presumably $6.50 per hour), the statement fails to display the number of hours Jaime Pacheco worked. Ex.2. Defendant Martell agreed that Jaime Pacheco's pay statement was the "type given to all the other workers when they received their pay." Id.; Ex.12, pp.58-59. Furthermore, the plaintiffs were not provided with any other document exhibiting the number of acres each detasseled. Ex.12, pp.58-59.

Martinez arranged for the plaintiff's transportation from Texas to Iowa, the location where the plaintiffs were to be housed while working Mycogen's fields in Illinois. Ex.7, No.6; Ex.13, p.8; Ex.16, p.11; Ex.18, pp.8-9; Ex.20, pp.6, 19. Martinez either procured the plaintiffs a ride with another worker or provided the plaintiffs with a vehicle. Ex.13, p.8; Ex.16, p.11; Ex.18, pp.8-9; Ex.20, pp.6, 19. Martinez further organized the plaintiffs' daily transportation

to and from work by renting a bus from Mycogen and hiring a driver. Ex.7, No.10.

Martinez sent Martell to Iowa to locate a motel that would take a large number of migrant workers. Ex.10, pp.25, 26. The two eventually coordinated housing for the plaintiffs at the Heidelberg Motel in Iowa. Ex.7, No.6; Ex.10, pp.25, 26, 164; Ex.11, pp. 45-46. Martinez negotiated a block rate for, paid for, inspected, and assigned the plaintiffs to the motel rooms. Ex.12, pp.11, 78; Ex.10, pp.158-59; Ex.11, p.182. Martinez, furthermore, was monetarily responsible to the motel for any damage the rooms incurred. Ex.10, p.123. Martell, in turn, designated one of the room's occupants liable for any sustained damages. Ex.11, p.51.

Although Martinez directed Martell to act as an intermediary between the motel owner and the plaintiffs, supervise the rooms, and field any complaints from the plaintiffs or from the motel owner, Martinez occasionally performed some of these tasks as well. Ex.10, p.123; Ex.12, pp.113-14; Ex.7, No.15. Specifically, Martinez told a few of the plaintiffs on one occasion, "Please do not make a lot of noise. People need to sleep and work. If you keep on like that, you will have to leave, the hotel owner and neighbors are complaining." Ex.7, No.15. On another occasion, when the manager of the motel called Martinez about some of the plaintiffs who were supposedly destroying a room, Martinez "controlled," paid them what he owed them, and evicted them at dawn. Ex.10, pp.133-34.

Martinez did not acquire certification that the Heidelberg Motel met any applicable health and safety standards. Ex.5, at 4.30. Martinez and Martell did not post a certification of occupancy, nor a statement of the terms and conditions of the occupancy, in any of the plaintiffs' rooms. Id. at 4.21, 4.32. The two defendants further failed to personally present the plaintiffs with a statement of the terms and conditions of the housing. Ex.7 at No.3; Ex.8 at No.3.

The Heidelberg motel rooms contained two beds. Ex.10, pp.160, 164. Martinez avers that he assigned four individuals to each room. Ex.10, p.106.[5] The situation resulted in adults

---

[5]Some plaintiffs testified that a few of the rooms held as many as five or six individuals. Ex.12, p.113; Ex.15, pp.8-9; Ex.16, pp.13-14; Ex.21, p.9. The Court must resolve, however, any factual disputes in favor of the non-moving party, here the

sharing beds or some sleeping on the floor.  Ex.13, p.12; Ex.16, pp.14-15; Ex.21, p.9.  No records exist indicating which plaintiff occupied a particular room.  Ex.7, No.6; Ex.11, p.182.

When Martinez filed a statement of the terms and conditions of the plaintiffs' employment with the Illinois Department of Labor, the submitted form did not state that housing would be provided.  225 ILL. COMP. STAT. 505/9(a); Ex.4.  The form did, however, provide the length of the plaintiffs' employment.  Ex.4.

## IV.    Discussion

### A.    The AWPA Claims

In the first part of the motion before the Court, the plaintiffs move for partial summary judgment on numerous violations of AWPA.  The AWPA provides numerous protective measures for migrant agricultural workers.  Cardenas v. Benter Farms, 2000 WL 1372848, at *4 (S.D.Ind. 2000).  A "migrant agricultural worker" is defined as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence."  29 U.S.C. § 1802(8)(A).  The defendants admit to the plaintiffs' status as agricultural migrant workers under AWPA.  Dkt. No. 56, Ex.5 at 4.1.

### 1.    Claims Requiring Defendants' Control of Plaintiffs' Housing

The plaintiffs initially assert that: (1) both Martinez and Martell housed plaintiffs without first securing the necessary certification, 29 U.S.C. § 1823(b)(1); (2) both Martinez and Martell failed to post a certification that the applicable safety and health standards have been met, 29 U.S.C. § 1823(b)(1); (3) both Martinez and Martell engaged in farm labor contracting activities without procuring the appropriate certification, 29 U.S.C. § 1811(a); (4) Martinez alone failed to take the required reasonable steps in determining whether Martell possessed the appropriate certification when hiring him, 29 U.S.C. § 1842; and (5) both Martinez and Martell failed to ensure that the housing provided to the plaintiffs complied with applicable federal and State safety and health standards, 29 U.S.C. § 1823(a).  As will be seen infra,

_____

defendants, who testified that only four individuals were assigned to each room.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

before the Court can examine whether any of these provisions were violated, the record must first establish that the defendant either owned or controlled the plaintiffs' housing. See 29 U.S.C. §§ 1823(b)(1), 1811(a), 1842, 1823(a). The plaintiffs do not allege that either Martinez or Martell owned the Heidelberg motel, the facility where the plaintiffs stayed in 2002. Rather, the plaintiffs assert that both defendants "controlled" the facility and were required to abide by the applicable provisions. Accordingly, the Court proceeds to determine whether the plaintiffs have met their burden in demonstrating that each defendant "controlled" the plaintiffs' housing.

A person is in "'control' of a housing facility . . . if said person is in charge of or has the power of authority to oversee, manage, superintend or administer the housing facility . . . either personally or through an authorized agent or employee, irrespective of whether compensation is paid . . . ." 29 C.F.R. § 500.130(c) (2004). Courts are to interpret "control" "with the broadest possible meaning to ensure that the person who owns or controls the facility as housing . . . is responsible for maintaining that facility." H.R.Rep. No. 97-885, at 17-18 (1982), reprinted in 1982 U.S.C.C.A.N. 4563, 4564.

In Castillo v. Case Farms of Ohio, Inc., 96 F. Supp. 2d 578, 615-16 (W.D.Tex. 1999), the Court found that the defendant, through an agent, Alvaro Hernandez, controlled the plaintiff migrant agricultural workers' housing as defined under 29 U.S.C. § 1823(a). In particular, Hernandez coordinated with an independent apartment owner to house plaintiffs, assigned the plaintiffs to each room, signed the receipts for payment of rent, signed plaintiffs' rental agreements, paid the plaintiffs' security deposit and first month's rent, and was the person the landlord approached when the plaintiffs failed to pay their rent. Id. at 615.

Here, Martinez coordinated housing for the plaintiffs, negotiated a block rate for the rooms, paid for the housing, inspected each room, assigned the plaintiffs to a room, and was responsible to the motel for any damages the rooms incurred. Furthermore, Martinez sent Martell to Iowa to locate plaintiffs' housing. Martinez also directed Martell to act as an intermediary between the motel's owner and the plaintiffs, supervise the rooms and field any complaints from the plaintiffs or from the motel owner. Martinez, additionally, told a few of the plaintiffs on one occasion, "Please do not make a lot of noise. People need to sleep and

work. If you keep on like that, you will have to leave, the hotel owner and neighbors are complaining." Ex.7, No.15. Then, when the motel manager called Martinez about a few of the plaintiffs who were supposedly destroying a room, Martinez "controlled," paid them what he owed them, and evicted them at dawn. The Court finds Martinez's conduct sufficiently similar to the actions of Hernandez in Castillo to hold, as a matter of law, that Martinez controlled the plaintiffs' housing. See 96 F. Supp. 2d at 615-16.

In support of their argument that Martell also controlled the subject housing, the plaintiffs point out that Martell traveled to Iowa to locate potential facilities where the plaintiffs could stay during 2002, acted as middleman between the motel owner and the plaintiffs, was in charge of supervising the plaintiffs at the motel, and assigned responsibility for damages to one of each room's occupants.[6] The Court in Castillo further held that, during a subsequent growing season, the defendant, through its Human Resources director, Andy Cilona, did *not* control plaintiffs' housing. 96 F. Supp. 2d at 618-19. Importantly, the Court found that Cilona merely acted as a liaison between the plaintiffs and their landlords by locating plaintiffs' housing and occasionally negotiating the plaintiffs' lease terms. Id. at 618-19. The Court emphasized the fact that Cilona did not have the right to assign workers to specific apartments, could not determine what rent would be paid, possessed no keys, and did not collect rent or field complaints. Id. at 619.

Although Martell's conduct exhibits elements of "control," this Court cannot determine from the record before it that, as a matter of law, Martell did in fact control the plaintiffs' housing. In particular, despite Martell's role as the middleman between the motel owner and plaintiffs, Martell exerted absolutely no authority over the motel owner or the motel rooms. See id. at 615-16. Therefore, the plaintiffs do not carry their burden in establishing that Martell controlled the plaintiffs' housing.

Having found that Martinez did control and that Martell did not control the plaintiffs

_____

[6]The plaintiffs, in their motion, state that "Martell also paid the last check to the [Heidelberg] motel owner." Dkt. No. 56, p.8. The citation for this sentence is not contained in the record. See Dkt. No. 56, Ex.11, p.47. Therefore, the assertion is not considered in the analysis.

housing, the Court proceeds to determine whether the plaintiffs have met their burden as to each specific claim where control of the plaintiffs' housing is an element.

### a.    Securing Certification of Housing

The plaintiffs argue that both Martinez and Martell violated 29 U.S.C. § 1823(b)(1) by housing plaintiffs at the Heidelberg motel without first securing certification that the housing met minimum safety and health standards.  The AWPA requires one who owns or controls a migrant agriculture worker's housing to "secure certification from either a state or local health authority, or other appropriate agency, stating that the housing meets applicable safety and health standards."  Castillo, 96 F. Supp. at 2d at 620-21 (citing 29 U.S.C. § 1823(b)).  The "obligation to obtain certification is a separate requirement, in addition to the obligation to comply with housing and safety standards."  Id. at 621 (citing 1892 U.S.C.C.A.N. at 4564).

Because Martinez controlled the plaintiffs' housing and admits that no housing certification was obtained, the Court finds that summary judgment is warranted on this claim as to Martinez.  On the other hand, because Martell did not own or control the plaintiffs' housing, summary judgment is not appropriate for this claim with respect to Martell.

### b.    Posting of Certification of Occupancy

The plaintiffs allege that both Martinez and Martell violated 29 U.S.C. § 1823(b)(1) by housing the plaintiffs without posting a certificate of occupancy.  AWPA mandates that no "person who owns or controls [housing] . . . shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site."  29 U.S.C. § 1823(b)(1).  The requirement for posting a certificate of occupancy is separate from the requirement of obtaining certification.  Howard v. Malcolm, 658 F. Supp. 423, 434 (E.D.N.C. 1987).

Martinez admits that no certification of occupancy was posted in the plaintiffs' housing. Therefore, considering the Court's earlier determination that Martinez controlled the plaintiffs' housing, the Court again finds that Martinez violated 29 U.S.C. § 1823(b)(1) and grants

plaintiffs' motion on this claim as to him.[7]  However, due to the plaintiffs' failure to demonstrate that Martell owned or controlled the plaintiffs' housing, summary judgment is not warranted against Martell.

### c.    Martinez's and Martell's Farm Labor Activity Certification

The plaintiffs next argue that both Martinez and Martell violated the AWPA by engaging in activities for which they lacked the requisite certification.  Specifically, the plaintiffs allege that Martinez housed and transported the plaintiffs without certification.  The plaintiffs also assert that Martell housed the plaintiffs while lacking the appropriate certification.

The AWPA prohibits any person from engaging "in any farm labor contracting activity, unless such person has a certificate of registration from the Secretary [of Labor] specifying which farm labor contracting activities such person is authorized to perform."  29 U.S.C. § 1811(a); see also 29 C.F.R. § 500.40 (2004).  Certification is required for such activities as recruiting, soliciting, furnishing, hiring, employing, transporting, driving, and housing migrant agricultural workers.  See 29 U.S.C. § 1802(6) ("The term 'farm labor contracting activity' means recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker."); 29 C.F.R. §§ 500.48(d)–(f) (requiring certification for transporting, driving, and housing migrant agricultural workers).  An individual "transports" a migrant agricultural worker when "us[es], or caus[es] to be used, any vehicle," to transport a migrant agricultural worker.  29 U.S.C. § 1841(b)(1); 29 C.F.R. § 500.100(a).  An individual "houses" migrant agricultural workers when he provides workers with a facility used for housing and "owns or controls" that facility.  See 29 C.F.R. § 500.48(f).

The Court concludes that Martinez housed and transported migrant agricultural workers and needed certification for these activities.  As noted supra, Martinez arranged and controlled the plaintiffs' housing.  Furthermore, Martinez "used or caused to be used" a vehicle to transport migrant agricultural workers in that he arranged for the plaintiffs' transportation from Texas to Iowa and organized the plaintiffs' daily transportation to and from work by bus.

---

[7]The Court expresses no opinion on whether the plaintiffs can recover twice for the violations of 29 U.S.C. § 1823(b)(1) discussed in sections IV,A,1,a and IV,A,1,b.

It is undisputed that Martinez was certified to recruit, solicit, furnish, hire, employ, and drive agricultural workers, but *not* to house or transport them. Accordingly, the Court finds that Martinez violated 29 U.S.C. § 1811(a) by engaging in farm labor contracting activities for which he lacked the appropriate certification.

The only activity the plaintiffs argue Martell partook in that requires certification was housing the plaintiffs. As noted *supra*, an individual "houses" migrant agricultural workers when he provides workers with a facility used for housing and owns or controls that facility. See 29 C.F.R. § 500.48(f). Because Martell did not own or control the plaintiffs' housing, he was not required to obtain certification for the conduct he undertook.[8] Accordingly, summary judgment as to Martell is inappropriate.

### d.    Martinez's Liability for Martell's Lack of Certification

The plaintiffs further contend that Martinez violated 29 U.S.C. § 1842 by engaging Martell to perform farm labor contracting activities, in particular housing the plaintiffs, for which Martell lacked certification. AWPA prohibits a person from utilizing "the services of any farm labor contractor . . . unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized." 29 U.S.C. § 1842. If an individual delegates the housing of migrant agricultural workers to another, that individual must take reasonable steps to ensure that the delegate is authorized to perform that activity. Howard v. Malcolm, 852 F.2d 101, 105-06 (4th Cir. 1988). Because the evidence does not demonstrate that Martell controlled the plaintiffs' housing, he was not required to obtain certification. As such, since Martell did not need to acquire certification to house the plaintiffs, Martinez cannot be held liable for failing to check whether Martell was certified.

In any event, if the Court errs in concluding that Martell did not exert sufficient authority

---

[8]Notwithstanding the Court's finding that Martell did not control the plaintiffs' housing, the Court *infra* determines that Martell "provided" the plaintiffs' with housing. This conclusion is of no consequence to the Court finding Martell did not "house" the plaintiffs since the requirements to "house" a migrant agricultural worker are conjunctive. See 29 C.F.R. § 500.48(f) (defining housing as providing and owning or controlling the facility).

as to control the plaintiffs' housing, summary judgment is, nonetheless, inappropriate on this claim.  The plaintiffs argue that had Martinez taken the requisite reasonable steps to investigate Martell's authorization, he would have quickly discovered that Martell lacked any certification.  The plaintiffs point to no evidence illustrating what Martinez did or did not do in determining whether Martell was properly certified.[9]  The Court cannot determine from the simple fact Martell was unauthorized to perform any farm labor contracting activities that Martinez failed to take reasonable steps in assessing Martell's certification.

### e.    Compliance of Plaintiffs' Housing with Applicable Law

The plaintiffs argue that both Martinez and Martell violated 29 U.S.C. § 1823(a) by failing to provide each plaintiff with a bed at the Heidelberg motel in Iowa.  That provision states that "each person who owns or controls a facility . . . used as housing for migrant agricultural workers shall be responsible for ensuring that the facility . . . complies with substantive Federal and State safety and health standards applicable to that housing."  29 U.S.C. § 1823(a).

The plaintiffs argue the defendants violated IOWA CODE ANN. §§ 138.13(2)(c), (g) (2005).  As the plaintiffs correctly note, the cited statute requires that each unrelated worker be provided with his or her own bed.  See id. (providing that "[s]leeping facilities shall be provided for each person," and that "[b]eds used for double occupancy may be provided only in family accommodations").  In this case, although the plaintiffs' rooms each contained two beds, at least four individuals were assigned to each room.  As a result, two persons were assigned to one bed.  The plaintiffs fail to point to any evidence establishing that any plaintiff shared a bed with a non-relative.  Although it is entirely possible that all the workers present

---

[9]The Court notes that the plaintiffs cite to, but do not rely on 29 U.S.C. § 1811(b), which states that a "farm labor contractor shall not hire, employ, or use any individual to perform farm labor contracting activities unless such individual has a certificate of registration . . . which authorizes the activity for which such individual is hired, employed, or used."  Because the plaintiffs do not specifically seek liability on the part of Martinez pursuant to 29 U.S.C. § 1811(b), the Court omits its analysis.

at the Heidelberg motel in 2002 were unrelated, the Court will not presume as much.[10] Therefore, summary judgment on this point is inappropriate and the plaintiffs' motion as to this claim is denied.

The plaintiffs further aver that Martinez and Martell violated federal regulation, 29 C.F.R. § 1910.142(b)(3) (2004). The cited provision, entitled "Temporary Labor Camps," states that beds "shall be provided in every room used for sleeping purposes." Id. The plaintiffs contend that the regulation requires a bed be provided to each worker. No case law exists interpreting this regulation. Even assuming the provision requires individual beds be provided to each worker, the Court cannot conclude that it requires anymore of the defendants than the Iowa statute (e.g., that related individuals be supplied with their own bed versus sharing a bed in family accommodations).[11] Therefore, for the reasons discussed above, mainly that plaintiffs fail to point to any evidence establishing that any plaintiff shared a bed with a non-relative, the Court cannot find that the defendants[12] violated the cited federal regulations.**[13]**

---

[10]The Court notes that the cited Iowa statute concerns "migrant labor camps." See generally IOWA CODE ANN. §§ 138.13. In the present case, however, the plaintiffs did not stay at a migrant labor camp, but rather a motel. Because the plaintiffs do not meet their burden in establishing that the defendants violated the Iowa provision, the Court reserves judgment on whether the cited provision applies to the defendants under the circumstances.

[11]The Court finds support in its determination that 29 C.F.R. § 1910.142(b)(3) requires no more than Iowa law in the fact that § 1910.142(b)(3) lacks precise language concerning the sleeping arrangements, while related, but inapplicable, regulation's description of the required sleeping facilities is very detailed. See 20 C.F.R. § 654.407 (2005).

[12]Summary judgment is also inappropriate for this claim as to Martell due to the earlier determination that Martell did not own or control the plaintiffs' housing. See 29 U.S.C. § 1823(a) (requiring that "each person who *owns or controls* a facility . . . used as housing for migrant agricultural workers shall be responsible for ensuring that the facility . . . complies with substantive Federal and State safety and health standards applicable to that housing" (emphasis added)

[13]The Court further notes that the cited federal regulation is entitled "Temporary Labor Camps." 29 C.F.R. § 1910.142(b)(3). As with the Iowa statute, the plaintiffs fail to provide any case law or argument as to why the provision applies to the plaintiffs' motel.

### 2.    AWPA Claims Lacking Control Element

The plaintiffs further seek a determination that: (1) both Martinez and Martell failed to post or present to the plaintiffs a statement of the terms and conditions of housing, 29 U.S.C. § 1821(c); (2) Martinez alone failed to provide the plaintiffs with adequate pay statements, 29 U.S.C. §§ 1821(d)(1)–(2); (3) Martinez alone failed to provide adequate disclosures to the plaintiffs at the time of recruitment, 29 U.S.C. §§ 1821(a)(1)–(8); and (4) Martinez alone and without justification failed to comply with the terms of the working arrangement agreed to by the plaintiffs, 29 U.S.C. § 1822(c).  Unlike the previous analysis, these provisions do not contain an ownership or control element.  See 29 U.S.C. §§ 1821(c), 1821(d)(1)–(2), 1821(a)(1)–(8), 1822(c).

### a.    Terms and Conditions of Occupancy

Plaintiffs aver that both Martinez and Martell violated 29 U.S.C. § 1821(c) by failing to post or present to the plaintiffs a statement of the terms and conditions of housing.  AWPA requires that "[e]ach farm labor contractor . . . which provides housing for any migrant agricultural worker shall post in a conspicuous place or present to such worker a statement of the terms and conditions, if any, of occupancy of such housing." 29 U.S.C. § 1821(c).  "The term 'farm labor contractor' means any person . . . who, for any money or other valuable consideration paid or promised to be paid, performs any farm labor contracting activity."  29 U.S.C. § 1802(7). "The term 'farm labor contracting activity' means recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker."  Id. at § 1802(6).

Here, Martinez admits to his status as a farm labor contractor.  Martell, on the other hand, never made such an admission and the plaintiffs fail to specifically argue why the status should apply to Martell.  Nonetheless, from the record, the Court finds that Martell qualifies as a farm labor contractor.  Id. at §§ 1802(6), (7).  In particular, Martell undertook "farm labor contracting activity" by assisting Martinez with the plaintiffs' recruitment and employment.

---

Nonetheless, because the plaintiffs do not meet their burden in establishing that the defendants violated the federal regulation, the Court reserves judgment on whether the cited provision applies to the defendants under the circumstances.

The next issue before the Court, then, is whether Martinez and Martell "provided" the plaintiffs with housing. See id. at § 1821(c). The Court is to construe the term "provides" more expansively than "owns and controls." See Castillo, 96 F. Supp. 2d at 621-22. Because the Court has already determined that Martinez "controlled" the plaintiffs' housing, there is no question that Martinez "provided" the plaintiffs' housing. The Court must further discuss, however, Martell's actions.

"'To provide housing within the meaning of the AWPA, means to make housing available, procure housing or furnish housing.'" Id. at 622 (quoting 1982 U.S.C.C.A.N. at 4561). "One may certainly 'obtain' or 'secure' housing without having to 'own' or 'control' that housing." Id. In Castillo, the Court found that an individual "provided" housing for migrant agricultural workers when he "assisted in arranging for housing to be available" when the workers arrived. Id. at 622. This is precisely what Martell did in this case. The evidence shows that Martell proceeded to Iowa and, with Martinez's help, procured housing for the plaintiffs at the Heidelberg motel in 2002. Therefore, both defendants were required "to post in a conspicuous place or present to such worker a statement of the terms and conditions, if any, of occupancy of such housing." 29 U.S.C. § 1821(c).

With respect to posting or presenting the terms and conditions of housing, although § 1821(c)'s use of "if any" suggests that a farm labor contractor is not required to post the terms and conditions if none exist, federal regulations require the posting or presentation of certain information (e.g., the mailing address and phone number where the workers staying at the facility may be reached) to the housed migrant workers. 29 C.F.R. §§ 500.75(e)(1)–(8) (2004); see Sancehz v. Overmyer, 845 F. Supp. 1183, 1191 (N.D.Ohio 1993); Cruz v. Vel-A-Da, Inc., 1993 WL 659255, at *4 (N.D.Ohio 1993). Martinez and Martell admit that they failed to post a statement of the terms and conditions of plaintiffs' occupancy in the housing facility. Although Mycogen may have posted some documents relating to the plaintiffs' housing terms and conditions, it is of no consequence. See Ex. 7, No. 3, at 7. Section 1821(c) specifically requires *each* farm labor contractor to post or present a relevant statement. 29 U.S.C. § 1821(c). Therefore, simply because Mycogen may have posted terms concerning the plaintiffs' occupancy, Mycogen's act did not exonerate Martinez, an independent contractor

of Mycogen's, and Martell, Martinez's employee, from the need to post the conditions of the housing.

The plaintiffs further present evidence that Martinez and Martell both failed to generate and do not possess any documents containing the terms and conditions of the housing or all of the information required by 29 C.F.R. §§ 500.75(f)(1)–(8). The record reveals that the only paperwork the defendants reviewed with the plaintiffs indicates that no housing would be provided at all. Furthermore, although the reviewed documents do contain some of the information required by federal regulations, obligatory information is missing (e.g., an address and telephone number where the plaintiffs could be reached while staying at the provided housing, see § 500.75(f)(3)). Therefore, the defendants also failed to present the plaintiffs with the required statement of information. The Court concludes that by failing to post or present the plaintiffs with the terms of housing, both Martinez and Martell violated 29 U.S.C. § 1821(c).

**b.     Adequacy of Pay Statements**

The plaintiffs next allege that Martinez violated AWPA by failing to provide each plaintiff with an adequate pay statement. In relevant part, AWPA states that each farm labor contractor employing migrant agricultural workers shall provide each worker "for each pay period, an itemized written statement" containing the following information: "(A) the basis on which wages are paid; (B) the number of piecework units earned, if paid on a piecework basis; (C) the number of hours worked; (D) the total pay period earnings; (E) the specific sums withheld and the purpose of each sum withheld; and (F) the net pay . . . ." 29 U.S.C. §§ 1821(d)(1)–(2).

In support of their argument, the plaintiffs present the pay statement of plaintiff Jaime Pacheco. Ex.2. The plaintiffs further provide Martell's deposition testimony agreeing that Jaime Pacheco's pay statement was the "type given to all the other workers when they received their pay." Ex.12, pp.58-59. Although Martinez and Martell testified that the total number of acres worked defined the plaintiffs' pay, neither the pay statement, nor any other document provided to the plaintiffs, list the total number of acres detasseled. Additionally, notwithstanding the fact that the pay statement lists a pay rate of 6.5000, it fails to display the number of hours Jaime Pacheco worked. The Court finds, therefore, that the proffered

16

evidence is sufficient to prove Martinez violated 29 U.S.C. §§ 1821(d)(1)–(2) as to Jaime Pacheco.

The Court does not conclude, however, that the evidence establishes that Martinez violated §§ 1821(d)(1)–(2) as to any other plaintiff.  The plaintiffs fail to demonstrate each of their pay statements lacked the requisite information.  Although Martell agreed that Jaime Pacheco's pay statement was "the type given" to all the plaintiffs, the is record devoid of evidence that every other pay statement failed to list the number of acres detasseled or hours worked.  The Court will not assume based on Martell's limited testimony and Jaime Pacheco's pay statement, without more, that all of the plaintiffs' pay statements were defective.

### c.    Adequacy of Recruitment Disclosures

The plaintiffs next contend that Martinez violated the AWPA by providing inadequate disclosures at the time of recruitment.  AWPA requires that at the time of the worker's recruitment, each "farm labor contractor . . . shall ascertain and disclose in writing" to each worker, *inter alia*, the period of employment; "the transportation, housing, and any other employee benefit to be provided, if any, and any costs to be charged for each of them"; and whether "State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier . . . ."  29 U.S.C. 1821(a)(1)–(8); 29 U.S.C. § 500.75(b)(1)–(8).

The record reveals that Martinez provided only two documents to the plaintiffs at recruitment.  These documents fail the requirements of § 1821(a) in two aspects.  First, § 1821(a)(5) requires the listing of certain benefits that will be provided, namely housing.  As discussed *supra*, the record demonstrates that Martinez coordinated and provided the plaintiffs with housing and that the documents shown to the plaintiffs at recruitment state that housing would not be provided.  Second, the documents state that the plaintiffs' period of employment would last from July 5, 2002, until August 10, 2002, a period of thirty-two days.  Ex.3.  However, the work lasted only sixteen days.  Because the disclosures provided by Martinez lack any language identifying the offered dates as tentative, the documents' description of the period of employment violates § 1821(a)(4).  See Villalobos v. North

Carolina Growers Ass'n, 252 F. Supp. 2d 1, 21-22 (D.P.R. 2002).

The plaintiffs argue that the documents further violate § 1821(a) since two separate workers' compensation carriers are listed. Disclosures provided at the time of recruitment must detail whether "State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier, the name of the policyholder of such insurance, the name and the telephone number of each person who must be notified of an injury or death, and the time period within which such notice must be given." 29 U.S.C. 1821(a)(8); 29 U.S.C. § 500.75(b)(8). On the first of the two pages provided to the plaintiffs, Acuity Insurance is listed as the workers' compensation insurance carrier. In addition, the names and addresses of the policy holder and contact person are supplied. Lastly, the term in which to make a claims is defined as "immediately."[14] On the bottom of the second page, however, another entity, Ace American Insurance Company, is listed as the worker's compensation provider. Importantly, no additional information concerning this provider is furnished.

Under the circumstances, the Court does not find that the documents' listing of two insurance carriers violates § 1821(d)(8). Even if confused about which carrier to contact when injured, a worker was only provided with contact information for one company – Acuity. The plaintiffs do not allege that Acuity was not the actual carrier or that the provided information was inadequate in some manner. Furthermore, the plaintiffs do not argue or provide evidence that Martinez "knowingly provided false or misleading information." See 29 U.S.C. § 1821(f) (emphasis added). Although the addition of the second carrier's name could cause confusion, the Court does not find its inclusion violates § 1821(a)(8).

### d.    Adherence to Working Arrangement

By failing to provide as much work as promised and not complying with certain housing requirements, the plaintiffs argue that Martinez breached the terms of their working arrangement and, therefore, violated federal law. AWPA mandates that "[n]o farm labor

---

[14]As with the rest of the first page of the discussed document, everything is provided in Spanish. See 29 U.S.C. § 1821(g). The first page of the documents describe the term of filing a claim as "Inmediatamente."

contractor . . . shall, without justification, violate the terms of any working arrangement made by that contractor . . . ." 29 U.S.C. § 1822(c); 29 C.F.R. § 500.72 (2004). The "term 'working arrangement' includes those aspects of the working relationship that are required by law." Elizondo v. Podgorniak, 100 F. Supp. 2d 459, 463 (E.D.Mich. 2000). Therefore, because a farm labor contractor must disclose in writing the period of employment to each worker, this information is "a required term in every working arrangement" between a contractor and migrant agricultural worker. Colon v. Casco, Inc., 716 F. Supp. 688, 694 (D.Mass. 1989) (interpreting 29 U.S.C. § 1831(a)(1)(D) containing identical language to 29 U.S.C. § 1821(a)(4)). Importantly, federal regulations exclude from the definition of "without justification" those situations where "failure to comply with the terms of any working arrangements was directly attributable to acts of God, due to conditions beyond the control of the person or to conditions which he could not reasonably foresee." 29 C.F.R. § 500.72(a); Avila v. A. Sams & Sons, 856 F. Supp. 763, 773 (W.D.N.Y. 1994).

The documents Martinez reviewed with the plaintiffs at recruitment constitute the only evidence in the record describing the plaintiffs' period of employment. As the documents relate, the plaintiffs were to be provided with thirty-two days of employment. The plaintiffs' actual period of employment, however, lasted only sixteen days. Although the plaintiffs received less work than offered, the plaintiffs fail to argue or point to any evidence demonstrating that Martinez's breach was "without justification." 29 U.S.C. § 1822(c). The record provides the Court with nothing to discern whether the violation of the employment terms was caused by either foreseen or unforeseen factors. See Cruz, 1993 WL 659255, at *4. Therefore, summary judgment is inappropriate.

The plaintiffs further allege that Martinez violated the terms of the working arrangement, and therefore 29 U.S.C. § 1822(c), by not providing each plaintiff with a bed. Assuming, without deciding, that providing each plaintiff a bed was part of the working arrangement, the plaintiffs' argument suffers from the same defect as their assertion concerning Martinez's violation of the period of employment since the plaintiffs fail to present evidence that Martinez breached the agreement "without justification." Therefore, the Court finds that summary judgment is unwarranted as to this claim as well.

19

**B.    State Law Claims**

The plaintiffs' motion for partial summary judgment also seeks a determination that Martinez violated Illinois law in that he: (1) did not adhere to the working arrangement by failing to provide the offered number of workdays, 225 ILCS 505/8(c); (2) failed to file a statement containing the appropriate details of the plaintiffs' employment with the Illinois Department of Labor, 225 ILCS 505/9(a)(1)–(8); and (3) failed to notify the plaintiffs in writing at the time of hiring when and where the plaintiffs would be obtain payment, 820 ILCS 115/10.

**1.    Adherence to Working Arrangement**

Illinois law provides that "[e]very farm labor contractor . . . shall . . . [c]omply with the terms and provisions of agreements and arrangements entered into in the course of doing business as a farm labor contractor with farmworkers." 225 ILCS 505/8(c) (2005).  Illinois law defines "Farm labor contractor" as "any person who for a fee or other valuable consideration recruits, . . . hires, or transports in connection therewith . . . any farmworker . . . ." 225 ILCS 505/2(a) (2005).  Here, Martinez recruited and transported the plaintiffs for a fee, thereby qualifying as a farm labor contractor under the statute.

Importantly, Illinois law under the Illinois Farm Labor Contractor Certification Act ("IFLCCA"), like federal law, requires the farm labor contractor to disclose certain terms of employment. Cf. 225 ILCS 505/9(a)(1)–(8) (2005), with 29 U.S.C. 1821(a)(1)–(8); 29 U.S.C. § 500.75(b)(1)–(8).  In particular, the farm labor contractor is required to communicate the period of employment.  225 ILCS 505/9(a)(5).  As such, the Court finds that like federal law, Illinois law views the period of employment as "a required term in every working arrangement." See Colon, 716 F. Supp. at 694.  As noted above, Martinez's disclosures to the plaintiffs stating that the length of employment would last thirty-two days is the only evidence with respect to this term.[15]  In contrast to the related federal statute analyzed *supra*, the IFLCCA

---

[15]The Court does not find material the fact that Illinois law requires the disclosures to be filed only with the Illinois Department of Labor, 225 ILCS 505/9, while federal law mandates that the disclosures be provided to the worker, 29 U.S.C. 1821(a).  If anything, the fact that a farm labor contractor has to submit the terms and conditions of the employment with a governmental entity only furthers the argument that such disclosures are to be considered required terms of the agreement entered into between the contractor and

contains no "without justification" or similar phrase. Rather, the statute's requirement for complying with the terms of the arrangement is absolute. See 225 ILCS 505/8(c). The statute's only prerequisite to requiring a farm labor contractor to abide by the terms of the arrangement is that contractor must have entered into "the terms and provisions of agreements and arrangements . . . in the course of doing business as a farm labor contractor." Id. The plaintiffs offer evidence that Martinez discussed the subject disclosures with the plaintiffs at the time of their recruitment. See 225 ILCS 505/2(a) (defining farm labor contractor as "any person who for a fee . . . recruits . . . farmworkers"). Therefore, Martinez was required to give the plaintiffs thirty-two days of work. However, as already discussed, the period of employment lasted for only sixteen days. Because Martinez's obligation to provide the workers with thirty-two days of work was absolute under Illinois law, and the plaintiffs provide evidence that their employment tenure lasted half that time, the plaintiffs meet their burden in proving that Martinez violated the Illinois statute.

### 2.    Statement of the Details of Employment

The plaintiffs declare that Martinez violated the IFLCCA by failing to file a statement containing the appropriate details of the plaintiffs' employment with the Illinois Department of Labor. The IFLCCA requires that each farm labor contractor, before recruiting workers, file with the Department of Labor a statement describing, *inter alia*, "the transportation, housing and insurance to be provided farmworkers," and "the period of employment." 225 ILCS 505/9(a)(1)–(8). Martinez did file a statement with the Illinois Department of Labor.[16] Ex. 4.

The plaintiffs initially argue that the filed statement omits the plaintiffs' period of employment. The submitted statement, however, clearly provides a start date, June 15, and

---

worker.

[16]The plaintiffs do not contest that Martinez filed the document prior to recruiting the plaintiffs.

end date, July 31.[17]  In any event, the plaintiffs correctly note that the submitted form fails to state that housing would be provided in contravention of 225 ILCS 505/9(a).  Therefore, Martinez's failure to report that housing would be provided violates 225 ILCS 505/9(a).

### 3.    Notification of Time and Place of Payment

Pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), an employer shall notify employees, "at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible, such notification shall be in writing and shall be acknowledged by both parties."  820 ILCS 115/10 (2005).  Martinez and the plaintiffs qualify as an employer and employees, respectively, under the Act.  See 820 ILCS 115/2 (2005).

The plaintiffs do not offer evidence or allege that Martinez failed to provide this information.  Rather, the plaintiffs offer the two documents Martinez reviewed during recruitment and note that they fail to communicate the required information.  The plaintiffs argue, therefore, because Martinez was able to provide the plaintiffs with some documents, it was possible for him to supply the required information in writing and have it acknowledged by both parties.  The plaintiffs fail to meet their burden.

The IWPCA requires that "the rate of pay and of the time and place of payment" be provided to the plaintiffs "at the time of hiring . . . ."  820 ILCS 115/10 (emphasis added).  The plaintiffs do not allege or provide evidence that the plaintiffs were offered and accepted employment at the close of the recruitment session held at Martinez's home.[18]  As such, Martinez was not required to disclose that information at that point in time.  The plaintiffs offer nothing illustrating the circumstances of the time Martinez hired the plaintiffs.  The Court will not presume that Martinez could have provided the plaintiffs with written notification at the time

_____

[17]The Court notes that the listed dates on the Illinois Department of Labor ("IDL") filing, Ex.4, differ from those on the recruitment documents, Ex.3 (stating that the period of employment commenced on July 5, 2002 and finished on August, 10, 2002).  The plaintiffs do not allege that Martinez is liable for the incorrectness of the dates of the IDL filing. Rather, the plaintiffs only allege that the dates were not provided.

[18]The Court notes that the plaintiffs do offer evidence that they were hired at some unidentified point by Martinez.  Dkt. No. 56, Ex.5 at 6.1; Ex.6 at 4.

of hiring when the record is devoid of any evidence depicting when and where Martinez offered and the plaintiffs accepted employment.   Therefore, summary judgment is inappropriate for this claim.

## V.   Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the plaintiffs' partial motion for summary judgment.  Dkt. No. 56.

DONE at Brownsville, Texas, this 25th day of July, 2005.

_____

Hilda G. Tagle
United States District Court

23